### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| **WC BRAKER PORTFOLIO, LLC,** | Case No. 22-10293 (TMD) |
| Debtor.[1] | |

### MOTION OF ATX BRAKER SR, LLC FOR AN ORDER DISMISSING THE DEBTOR'S CHAPTER 11 CASE OR, IN THE ALTERNATIVE, GRANTING RELIEF FROM THE AUTOMATIC STAY

> **THIS PLEADING REQUESTS RELIEF THAT MAY BE ADVERSE TO YOUR INTERESTS.**
>
> **MOVANT HAS REQUESTED EXPEDITED CONSIDERATION OF THIS MOTION AND HAS REQUESTED THE HEARING ON THIS MOTION BE SET FOR MAY 23, 2022 AT 2:45 P.M.**
>
> **TO THE EXTENT EXPEDITED CONSIDERATION IS NOT GRANTED, THEN IF NO TIMELY RESPONSE IS FILED WITHIN 14 DAYS FROM THE DATE OF SERVICE, THE RELIEF REQUESTED HEREIN MAY BE GRANTED WITHOUT A HEARING BEING HELD.**
>
> **A TIMELY FILED RESPONSE IS NECESSARY FOR A HEARING TO BE HELD.**

ATX Braker SR, LLC ("ATX Braker SR" or "Mortgage Lender"), by and through its undersigned counsel, hereby submits this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) dismissing the above-captioned chapter 11 case (the "Chapter 11 Case") of WC Braker Portfolio, LLC (the "Debtor") pursuant to section 1112(b) of title 11 of the United States Code (the "Bankruptcy Code") or, in the alternative, granting relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code to allow Mortgage Lender to exercise its rights and remedies with respect to the collateral securing its claims against the Debtor; and (ii) waiving the 14-day stay provided for

---

[1]    The last four digits of the Debtor's federal employer identification number are 2115. The Debtor's address is 814 Lavaca Street, Austin, Texas 78701.

in Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").
In support of this Motion, Mortgage Lender respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Debtor is in default under the Mortgage Loan Agreement and commenced this Chapter 11 Case with no viable restructuring plan and a single objective: to stall Mortgage Lender's legitimate efforts to foreclose on the Properties through a public sale that was scheduled for the day immediately following the Petition Date. This Chapter 11 Case is only one of more than 30 bankruptcy cases commenced in the past three years as part of an elaborate scheme orchestrated by Mr. Nate Paul, the beneficial owner of the Debtor and guarantor of the Debtor's Mortgage Obligations, to hinder and delay creditors' enforcement of their state law rights and remedies. In fact, this Court has recognized what can only be characterized as Mr. Paul's abuse of the protections afforded by the Bankruptcy Code and has appointed a chapter 11 trustee in each of the Affiliated Cases that are currently pending before this Court.

2.      As a gating issue, the Debtor's face sheet filing contains no evidence of the Debtor's authority to file for bankruptcy protection, likely because the Debtor has not obtained such authority. Under the limited liability company agreement that governs the Debtor, authority to file for bankruptcy protection requires the unanimous consent of the Debtor's sole member and two independent managers. The Debtor failed to abide by the United States Trustee guidelines requiring the filing of resolutions authorizing a bankruptcy filing, likely because no such resolutions were ever obtained. Unless the Debtor can show that the bankruptcy filing was authorized, dismissal of this Chapter 11 Case is mandatory and the Court need not perform any further analysis.

83430766.4

3.      Even if the Debtor overcomes the authorization hurdle, the circumstances of this Chapter 11 Case and Mr. Paul's track record of bad faith bankruptcy filings—including before this Court and in the District of Delaware—evidence a lack of good faith here, which provides an independent basis for dismissal. The commencement of this Chapter 11 Case is just like all of the others filed by Mr. Paul—purely a delay tactic, with no other legitimate or rehabilitative purpose under the Bankruptcy Code. This tactic constitutes a repeated and ongoing abuse of the judicial process and the reorganization provisions of the Bankruptcy Code that should not be countenanced by this Court. As courts in this Circuit have uniformly held, the lack of good faith evident from the circumstances leading up to the Debtor's face sheet bankruptcy filing mandates either dismissal of the Chapter 11 Case or relief from the automatic stay for "cause" pursuant to sections 1112(b) and 362(d)(1) of the Bankruptcy Code, respectively.

4.      To the extent the Court does not dismiss this Chapter 11 Case as a bad faith filing, "cause" nevertheless exists to grant Mortgage Lender relief from the automatic stay based on the lack of adequate protection of its security interests in the Properties. Given the Debtor's historical negative cash flow based on monthly rental income generated from the Properties, which has been insufficient to satisfy the Debtor's debt service obligations under the Mortgage Loan Agreement for at least the past three months, and the deterioration of the Properties while Mr. Paul continues to abuse the bankruptcy system purely as a litigation tactic, the Debtor will almost certainly be unable to provide adequate protection, which warrants relief from the automatic stay for "cause."

5.      This Chapter 11 Case simply has no place in bankruptcy and is only the latest chapter in Mr. Paul's continuing saga of using litigation to stymie creditors' legitimate state law and contractual rights. Accordingly, Mortgage Lender respectfully requests that the Court

3

grant the Motion and enter an order dismissing this Chapter 11 Case or, alternatively, granting relief from the automatic stay to allow Mortgage Lender to proceed with its scheduled foreclosure sale and to otherwise exercise its rights and remedies with respect to the Properties.

## JURISDICTION, VENUE, AND BASES FOR RELIEF

6.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

7.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The bases for the relief requested herein are 11 U.S.C. §§ 1112(b) and 362(d); Fed. R. Bankr. Proc. 4001 and 9014; and Bankr. W.D. Local Rules 4001, 9013, and 9014.

## BACKGROUND

### I.      The Debtor, the Property, and the Mortgage Loan and Mortgage Loan Guaranty

9.      On February 28, 2019, the Debtor, as borrower, and Mortgage Lender's predecessor-in-interest, JPMorgan Chase Bank, National Association ("JPMorgan"), as lender, entered into that certain Loan Agreement (the "Mortgage Loan Agreement") and the Debtor, as borrower, executed that certain Promissory Note (the "Mortgage Promissory Note"), pursuant to which JPMorgan agreed to make a loan in the principal amount of $71 million (the "Mortgage Loan") to the Debtor.[2] The Debtor used the proceeds of the Mortgage Loan to refinance 13 low-rise office buildings and a nearby retail center that it owned, all located in Austin, Texas (collectively, the "Properties").[3] The obligations under the Mortgage Loan Agreement, the other

---

[2]      True and correct copies of the Mortgage Loan Agreement and the Mortgage Promissory Note are attached as **Exhibits A** and **B**, respectively, to the *Declaration of Navid Moshtaghi in Support of the Motion of ATX Braker SR, LLC for an Order Dismissing the Debtor's Chapter 11 Case or, in the Alternative, Granting Relief From the Automatic Stay* (the "Moshtaghi Decl.") filed concurrently herewith.

[3]      Specifically, the Properties include: 1836 Kramer, Austin, Texas; 1908 Kramer Lane, Austin, Texas; 1901 W Braker Lane, Austin, Texas; 1909 W Braker Lane, Austin, Texas; 1817 W Braker Lane, Austin, Texas; 11109 Metric Blvd, Austin, Texas; 11101 Metric Blvd, Austin, Texas; 11009 Metric Blvd, Austin, Texas; 11500 Metric Blvd, Austin, Texas; 1910 W Braker Lane, Austin, Texas; and 2100 Kramer Lane, Austin, Texas.

83430766.4

Loan Documents (as defined in the Mortgage Loan Agreement), and the Mortgage Promissory Note (the "Mortgage Obligations") are secured by first priority liens recorded against the Properties. The Mortgage Obligations are also personally guaranteed by Mr. Paul pursuant to that certain Guaranty Agreement, dated as of February 28, 2019, by and between Mr. Paul, as guarantor, and JPMorgan, as lender (the "Mortgage Guaranty").[4]

10.     As of May 2, 2022 (the "Petition Date"), the aggregate principal amount outstanding under the Mortgage Loan Agreement, together with all other amounts due under the Loan Documents, including the amount of accrued and unpaid interest, is not less than approximately $73 million, which amounts will continue to accrue and/or increase during the Chapter 11 Case.

## II.     The Mezzanine Loan and the Mezzanine Loan Guaranty

11.     On February 28, 2019, WC Braker Portfolio B, LLC ("Mezzanine Borrower"), as borrower, and JPMorgan, as lender, entered into that certain Mezzanine Loan Agreement (the "Mezzanine Loan Agreement") and Mezzanine Borrower, as borrower, executed that certain Mezzanine Promissory Note (the "Mezzanine Promissory Note"), pursuant to which JPMorgan agreed to make a loan in the principal amount of $29 million (the "Mezzanine Loan") to Mezzanine Borrower.[5] The obligations under the Mezzanine Loan Agreement, the other Loan Documents (as defined in the Mezzanine Loan Agreement), and the Mezzanine Promissory Note (the "Mezzanine Obligations") are secured by a first priority lien on substantially all of Mezzanine Borrower's assets, including 100% of the membership interests in the Debtor held by Mezzanine Borrower. As with the Mortgage Obligations, the Mezzanine Obligations are personally

---

[4]     A true and correct copy of the Mortgage Guaranty is attached as **Exhibit C** to the Moshtaghi Declaration.

[5]     True and correct copies of the Mezzanine Loan Agreement and the Mezzanine Promissory Note are attached as **Exhibits D** and **E**, respectively, to the Moshtaghi Declaration.

guaranteed by Mr. Paul pursuant to that certain Mezzanine Guaranty Agreement, dated as of February 28, 2019, by Mr. Paul, as guarantor, and JPMorgan, as lender (the "Mezzanine Guaranty").[6]

12.    On March 19, 2019, JPMorgan transferred its interest in the Mezzanine Loan to Forethought Life Insurance Company. *See* Mezzanine Assignment and Assumption Agreement, dated as of March 19, 2019, by and between JPMorgan Chase Bank, National Association, as assignor, and Forethought Life Insurance Company ("Mezzanine Assignment 1").[7] On September 21, 2021, Forethought Life Insurance Company transferred its interest in the Mezzanine Loan to ATX Braker, LLC ("Mezzanine Lender" and such assignment, "Mezzanine Assignment 2").[8]

### III.    The Debtor's Default and the Lenders' Attempts to Enforce Their Rights

13.    The "Maturity Date" under both the Mortgage Loan Agreement and the Mezzanine Loan Agreement was March 9, 2021, which was extended to March 9, 2022. Prior to the extended Maturity Date, the Debtor had an opportunity to further extend maturity for another year by making an approximately $37 million combined payment under the Mortgage Loan and Mezzanine Loan, but failed to do so.

14.    On March 9, 2022, the Debtor and Mezzanine Borrower both failed to pay the outstanding principal balance of the Mortgage Loan and Mezzanine Loan, respectively, and all other amounts due under the Loan Documents on the Maturity Date, which failure resulted in Events of Default (as defined in the Mortgage Loan Agreement and Mezzanine Loan Agreement) under the Mortgage Loan Agreement and the Mezzanine Loan Agreement (each, a

---

[6]    A true and correct copy of the Mezzanine Guaranty is attached as **Exhibit F** to the Moshtaghi Declaration.

[7]    A true and correct copy of Mezzanine Assignment 1 is attached as **Exhibit G** to the Moshtaghi Declaration.

[8]    A true and correct copy of Mezzanine Assignment 2 is attached as **Exhibit H** to the Moshtaghi Declaration.

"Maturity Date Default"). *See* Mortgage Loan Agreement §§ 2.3.3, 8.1(i); Mezzanine Loan Agreement §§ 2.3.3, 8.1(i).

15.     In connection with the Maturity Date Default under the Mezzanine Loan Agreement, Mezzanine Lender sought to exercise its rights and remedies under the Mezzanine Loan Agreement by foreclosing on and selling the membership interests in the Debtor held by Mezzanine Borrower in a Uniform Commercial Code ("UCC") auction that was scheduled to take place on April 14, 2022. On April 12, 2022, the Debtor filed an action (the "NY Action") in the Supreme Court of the State of New York (the "New York Court"), seeking a temporary restraining order and preliminary injunction to delay the UCC auction and arguing that Mezzanine Borrower was "in the process of refinancing which will result in the lenders, including Mezz Lender, being paid all amounts they are owed under the Loans with interest in the next 30 days." *See WC Braker Portfolio, LLC et al., v. ATX Braker, LLC*, Index No. 651792/2022, NYSCEF 12 at 9.[9] Notwithstanding its representations to the New York Court, and more than 30 days after making those statements, Mezzanine Borrower has yet to provide any evidence or other assurance that it is, in fact, "in the process of refinancing." Nevertheless, the New York Court granted the request for a temporary restraining order and, on April 24, 2022, entered a preliminary injunction.

16.     On April 11, 2022, more than a month after the Maturity Date Default under the Mortgage Loan Agreement, JPMorgan scheduled a foreclosure sale of the underlying Properties for May 3, 2022. Given that Mezzanine Lender could not foreclose on Mezzanine Borrower's membership interests in the Debtor due to the preliminary injunction issued by the New York Court, Mezzanine Lender's security interests were compromised because the Debtor

---

[9]     A true and correct copy of the Debtor's *Memorandum of Law in Support of Temporary Restraining Order and Preliminary Injunction* is attached as **Exhibit A** to the *Declaration of Keith R. Martorana in Support of Motion of ATX Braker SR, LLC for an Order Dismissing the Debtor's Chapter 11 Case or, in the Alternative, Granting Relief from the Automatic Stay* filed concurrently herewith.

would be an empty shell if JPMorgan foreclosed on the Properties, rendering Mezzanine Borrower's membership interests in the Debtor worthless. Thus, ATX Braker SR, an affiliate of Mezzanine Lender, purchased the Mortgage Loan from JPMorgan on April 29, 2022, and, thereafter, maintained the already-scheduled May 3, 2022 foreclosure sale as JPMorgan's successor-in-interest. *See* Assignment and Assumption Agreement (Mortgage Loan), dated as of April 29, 2022, by and between JPMorgan Chase Bank, National Association, as assignor, and ATX Braker SR, LLC, as assignee (the "Mortgage Assignment").[10]

IV.     **The Debtor's Bankruptcy Filing and the Affiliated Cases**

17.     On May 2, 2022, on the eve of the scheduled foreclosure sale, the Debtor commenced this Chapter 11 Case through a face sheet filing solely to hinder and delay Mortgage Lender's scheduled foreclosure sale. The only documents that the Debtor filed on the Petition Date are the *Voluntary Petition for Non-Individuals Filing for Bankruptcy* [Docket No. 1] (the "Petition") and the *Verification of Creditor Matrix* [Docket No. 2] (the "Creditor Matrix"). The Debtor did not file any first day motions or any resolutions or similar document evidencing its authority to commence this Chapter 11 Case, as is customary for non-individual debtors. *Cf.* Office of the United States Trustee Southern and Western District of Texas, Region 7, Guidelines for Debtors-in-Possession at 8 ("5. If a debtor in possession is a corporation, provide a copy of a corporate resolution authorizing the filing of the Chapter 11 petition and designating an individual to sign pleadings. 6. If a debtor-in-possession is a partnership, provide a copy of the written agreement to the filing of the bankruptcy case signed by all partners, or by all general partners if the debtor-in-possession is a limited partnership.") (emphasis in original).

---

[10]     A true and correct copy of the Mortgage Assignment is attached as **Exhibit I** to the Moshtaghi Declaration.

18.     While the Debtor has yet to file its schedule of assets and liabilities, the Petition only lists the Properties as the Debtor's principal assets. *See* Petition at 5.

19.     The Petition also lists the following affiliated bankruptcy cases (collectively, the "<u>Affiliated Cases</u>"), the majority of which were commenced in the United States Bankruptcy Court for the Western District of Texas and currently are pending before this Court:

- ***In re WC South Congress Square LLC*, Case No. 20-11107 (TMD) (Bankr. W.D. Tex.)** – CRO appointed on March 28, 2022 [Docket No. 185]; chapter 11 trustee appointed on April 20, 2022 [Docket No. 198]

- ***In re WC 3rd and Trinity, LP*, Case No. 21-10252 (TMD) (Bankr. W.D. Tex.)** – CRO appointed on March 28, 2022 [Docket No. 101]; chapter 11 trustee appointed on April 21, 2022 [Docket No. 115]

- ***In re WC Culebra Crossing SA, LP*, Case No. 21-10360 (TMD) (Bankr. W.D. Tex.)** – Converted to a case under chapter 7 of the Bankruptcy Code on March 7, 2022 [Docket No. 307]

- ***In re Arboretum Crossing, LLC*, Case No. 21-10546 (TMD) (Bankr. W.D. Tex.)** – CRO appointed on March 28, 2022 [Docket No. 105]; chapter 11 trustee appointed on May 2, 2022 [Docket No. 119]

- ***In re WC 717 N. Harwood Property, LLC*, Case No. 21-10630 (TMD) (Bankr. W.D. Tex.)** – Chapter 11 trustee appointed on April 4, 2022 [Docket No. 128]

- ***In re WC Met Center, LLC*, Case No. 21-10698 (TMD) (Bankr. W.D. Tex.)** – Chapter 11 trustee appointed on March 31, 2022 [Docket No. 78]

- ***In re 6th and San Jacinto, LLC*, Case No. 21-10942 (TMD) (Bankr. W.D. Tex.)** – Chapter 11 trustee appointed on March 31, 2022 [Docket No. 58]

- ***In re WC 511 Barton Blvd, LLC*, Case No. 21-10943 (TMD) (Bankr. W.D. Tex.)** – Chapter 11 trustee appointed on March 31, 2022 [Docket No. 56]

- ***In re GVS Texas Holdings I, LLC*, Case No. 21-31121 (MVL) (Bankr. N.D. Tex.)**

- ***In re WC Manhattan Place Property, LLC*, Case No. 22-10047 (TMD) (Bankr. W.D. Tex.)** – Chapter 11 trustee appointed on March 31, 2022 [Docket No. 77]

- ***In re WC Alamo Industrial Center, LP*, Case No. 22-10226 (TMD) (Bankr. W.D. Tex.)** – Chapter 11 trustee appointed on May 2, 2022 [Docket No. 55]

83430766.4

20. Notably, in each of the Affiliated Case pending before this Court, the Court issued orders to show cause as to why a chapter 11 trustee should not be appointed and, thereafter, did appoint a chapter 11 trustee to administer the cases. Similarly, in this Chapter 11 Case, the Court issued an *Order to Show Cause* [Docket No. 4] (the "OSC"), directing the Debtor to appear and show cause as to why a chapter 11 trustee should not be appointed "to ensure that no unauthorized transfers are made by the Debtor, and to ensure that monthly operating reports are timely filed." OSC at 2. A hearing on the OSC is scheduled for May 23, 2022.

21. While the Petition identifies only the above-listed 11 Affiliated Cases, from the beginning of 2020 to present, more than 30 affiliates of the Debtor and entities controlled by Mr. Paul commenced bankruptcy proceedings in the Western District of Texas. Upon information and belief, each of these more than 30 cases were filed on the eve of foreclosure and otherwise evidence a scheme by Mr. Paul to abuse the bankruptcy system as a means to delay or otherwise hinder creditors' rights with respect to their collateral. This scheme has not gone unnoticed, as demonstrated by the appointment of a chapter 11 trustee in the Affiliated Cases and as reflected in statements made by this Court, the Office of the United States Trustee, and others in those cases. *See*, *e.g.*, *In re WC Manhattan Place Property*, Case No. 22-10047 (TMD) (Bankr. W.D. Tex.), March 23, 2022 Hr'g Tr. at 5:18-19 (Court) ("I don't want Mr. Paul to have control of the cash, period."); *In re WC 717 N. Harwood Property, LLC*, Case No. 21-10630 (TMD) (Bankr. W.D. Tex.), March 23, 2022 Hr'g Tr. at 3:9-18 (United States Trustee) ("Your Honor, we believe that in this case, like the other seven cases in which the Court entered a show cause order, there is sufficient cause for conversion of the case to Chapter 7, including gross mismanagement in the form of the continued pattern of failing to file, timely file MORs that have meaningful information, as well as the payment of quarterly fees."); *In re 6th and San Jacinto, LLC*, Case No. 21-10942

10

(TMD) (Bankr. W.D. Tex.), *Motion of Security State Bank and Trust for Appointment of Trustee Pursuant to Section 1104 of the Bankruptcy Code* [Docket No. 43] at 2 (seeking appointment of a chapter 11 trustee based on "Debtor's gross mismanagement of the Debtor's estate and the Property, in conjunction with the misfeasance of the Debtor's principal in other cases").

22.     In fact, many of these more than 30 cases, unsurprisingly, have been dismissed for the same reasons this Chapter 11 Case should be dismissed. *See*, *e.g.*, *In re WC 1st and Trinity GP LLC*, Case No. 20-10886 (TMD) (Bankr. W.D. Tex.), Order Granting Motions to Dismiss [Docket No. 51] (the "<u>WC 1st and Trinity Dismissal Order</u>") at 1 (dismissing Case Nos. 20-10885, 20-10887, 20-10886, and 20-10888 based on the debtors' lack of authority to file bankruptcy); *In re GVS Portfolio 1 B, LLC*, 2021 WL 2285285, at *8-9 (Bankr. D. Del. June 4, 2021) (dismissing chapter 11 case as a bad faith filing pursuant to section 1112(b) of the Bankruptcy Code).

## RELIEF REQUESTED

23.     Mortgage Lender seeks entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>**, dismissing the Chapter 11 Case pursuant to section 1112(b) of the Bankruptcy Code. In the alternative, Mortgage Lender seeks relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code to allow Mortgage Lender to exercise its rights and remedies with respect to the Properties securing its claims against the Debtor.

## BASIS FOR RELIEF

I.     **The Debtor's Chapter 11 Case Should Be Dismissed for "Cause" Pursuant to Section 1112(b) of the Bankruptcy Code**

A.     *The Debtor has provided no evidence of authorization for its bankruptcy filing*

24.     "It is well-settled that a bankruptcy filing is a specific act requiring specific authorization." *In re Nica Holdings, Inc.*, 810 F.3d 781, 789 (11th Cir. 2015) (internal quotations

11

and citations omitted). As this Court has recognized, "state law governs who has authority to file a bankruptcy case on behalf of an entity debtor." WC 1st and Trinity Dismissal Order at 2 (citing *Price v. Gurney*, 324 U.S. 100, 106 (1945) and *Franchise Servs. of N. Am., Inc. v. U.S. Trustee (In re Franchise Servs. of N. Am., Inc.)*, 891 F.3d 198, 203 (5th Cir. 2018)).

25.     A bankruptcy case commenced by a debtor who lacked authority under applicable state law to file a bankruptcy petition requires dismissal for "cause" pursuant to section 1112(b) of the Bankruptcy Code. *See Franchise Servs. of N. Am.*, 891 F.3d at 202-03 (affirming bankruptcy court's dismissal of a bankruptcy filed by the debtor without putting the matter to a vote in contravention of Delaware's General Corporation Law); *In re 167 W. 133rd St. Housing Dev. Fund Corp.*, 2018 WL 4637460 (Bankr. S.D.N.Y. Sept. 25, 2018) ("It is settled that the lack of authority file a voluntary chapter 11 bankruptcy petition by the party filing it constitutes an independent ground for "cause" for relief under § 1112(b) of the Bankruptcy Code.") (citations omitted).

26.     The Debtor is a limited liability company formed under the laws of the State of Delaware.[11] "Under Delaware law, a limited liability company is a creature of contract." *Faulkner v. Kornman (In re Heritage Org., LLC)*, 2008 WL 5215688, at *18 (Bankr. N.D. Tex. Dec. 12, 2008) (citing *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1007 (Del. Ch. 2007)). Accordingly, a Delaware limited liability company's "operating agreement, as a contract, governs, except where applicable state law overrides the agreement." *In re K.G. IM, LLC*, 620 B.R. 469, 479 (Bankr. S.D.N.Y. 2020) (citing *Obeid v. Hogan*, 2016 WL 3356851, at *5 (Del. Ch. June 10, 2016)). The filing of a bankruptcy case by a Delaware limited liability company that does not

---

[11]     A true and correct copy of the Debtor's certificate of formation filed with the Delaware Secretary of State on November 21, 2016 is attached as Exhibit A-1 to the Manager Certificate, delivered in connection with the Mortgage Loan (the "Manager Certificate"), which is attached as **Exhibit J** to the Moshtaghi Declaration.

comport with the requirements set forth in its limited liability company agreement warrants dismissal. *See In re 3P Hightstown, LLC*, 631 B.R. 205, 209 (Bankr. D.N.J. 2021) (*sua sponte* dismissing bankruptcy case of Delaware limited liability company after finding that "the Debtor did not have the proper authority commence the instant bankruptcy proceeding" under its limited liability company agreement).

27.     The Debtor is governed by that certain Amended & Restated Limited Liability Company Agreement of WC Braker Portfolio, LLC (the "LLCA"),[12] entered into by Mezzanine Borrower, as the sole member, and Colleen DeVries and Karen Redman, as the independent managers (in such capacities, the "Independent Managers") and potentially special members. Under the plain terms of the LLCA, the Debtor is not authorized to commence a bankruptcy case absent the unanimous written consent of Mezzanine Borrower and the Independent Managers. *See* LLCA § 9(d)(iii), (v)(G). Specifically, section 9(d)(iii) of the LLCA provides, in relevant part, that

> [n]otwithstanding any other provision of this Agreement or any provision of law that otherwise so empowers the Company, . . . the Member or any other Person shall not be authorized or empowered on behalf of the Company to, nor shall they permit the Company to, and the Company shall not, ***without the prior unanimous written consent of the Member and the Independent Managers***, take any Material Action.

*Id.* § 9(d)(iii) (emphasis added). Section 9(d)(v)(F) similarly provides that, unless and until "that certain loan . . . from JPMORGAN CHASE BANK, NATIONAL ASSOCIATION" (*i.e.*, the Mortgage Loan) "has been paid in full . . . the Company . . . shall not take any Material Action and shall not cause or permit the members or managers of such entity to take any Material Action ***unless two (2) Independent Managers*** then serving as managers of the company shall have

---

[12]     A true and correct copy of the LLCA is attached as Exhibit A-2 to the Manager Certificate, which is attached as **Exhibit J** to the Moshtaghi Declaration.

participated and consented in writing to such action." *Id.* § 9(d)(v)(F) (emphasis added). The defined term "Material Action" explicitly includes "the Company filing a voluntary petition under the Bankruptcy Code, or any other Federal, state, local or foreign bankruptcy or insolvency law." *See id.*, Schedule A.

28.     Despite Mr. Paul having signed the Petition under penalty of perjury that he was authorized to file the Petition on behalf of the Debtor, the Debtor's first day filings are devoid of any indication that the Debtor actually obtained both Independent Managers' consents to file the Petition.[13] Accordingly, as is apparent from the Debtor's face sheet filing, the Debtor lacks the requisite authority under the LLCA to commence this Chapter 11 Case. The Debtor's lack of proper authority to commence this Chapter 11 Case requires dismissal for "cause" pursuant to section 1112(b) of the Bankruptcy Code.

**B.     *The Debtor's bad faith bankruptcy filing constitutes "cause" to dismiss the Chapter 11 Case***

29.     Even if the Debtor is capable of producing evidence of authority to file for bankruptcy protection, independent grounds exist to dismiss this Chapter 11 Case as a bad faith bankruptcy filing. The sole purpose of the Debtor's commencement of the Chapter 11 Case is to obstruct and delay Mortgage Lender's legitimate enforcement of its rights and remedies under the Mortgage Loan Agreement and to hinder Mortgage Lender's efforts to proceed with its foreclosure sale. Such malintent is evident from Mr. Paul's track record of filing on the eve of foreclosure and using bankruptcy as a vehicle merely to delay foreclosure or otherwise interfere with creditors'

---

[13]     Indeed, this would not the first time that an entity controlled by Mr. Paul commenced a bankruptcy case without the authority to do so under state law. In fact, in at least four other affiliated cases, this Court entered an order of dismissal on the basis that Mr. Paul "lacked authority to file for bankruptcy on the Debtors' behalf." *See* WC 1st and Trinity Dismissal Order at 1 (dismissing Case Nos. 20-10885, 20-10887, 20-10886, and 20-10888). The United States District Court for the Western District of Texas affirmed the WC 1st and Trinity Dismissal Order on appeal. *See In re WC 1st and Trinity GP, LLC*, 2021 WL 6750934 (W.D. Tex. Mar. 18, 2021).

enforcement rights and remedies. This Chapter 11 Case is only one of more than 30 bankruptcy proceedings commenced by entities controlled by Mr. Paul, a serial bankruptcy filer, for no reason other than delay.

30.     In fact, Mr. Paul is no stranger to the possibility of dismissal of a bad faith bankruptcy filing, yet he continues to unabashedly employ the same delay tactic *ad nauseum*. Less than a year ago, the Honorable Christopher S. Sontchi of the United States Bankruptcy Court for the District of Delaware dismissed a bankruptcy case commenced by yet another entity indirectly owned by Mr. Paul for the same reasons that require dismissal of this Chapter 11 Case:

> [T]he Court is troubled by the Debtor's filing. . . . [T]his is a single asset case, by the Debtor's own admission, there are (on the date hereof) three potential *de minimis* unsecured creditors; there is no ongoing business or employees; the petition was filed on the eve of foreclosure; the Debtor has no cash or income (other than the cash management waterfall); and there is no pressure from non-moving parties. . . . Here, the fact that this case filed immediately before foreclosure in order to obtain the automatic stay coupled with the two-party nature of the dispute between the Debtor and RREF, support the finding that this case was filed by the Debtor for a tactical advantage against RREF in the New York state court litigation that resulted in a foreclosure sale.

*In re GVS Portfolio 1 B, LLC*, 2021 WL 2285285, at *8-9.

31.     The circumstances surrounding this Debtor's bankruptcy filing similarly evidence bad faith and warrant dismissal of this Chapter 11 Case for "cause" pursuant to section 1112(b)(1) of the Bankruptcy Code.

      i.     <u>Application of the Little Creek Factors mandates dismissal</u>

32.     Section 1112(b) of the Bankruptcy Code provides that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b). The term "cause" is "not defined in the statute so

as to afford flexibility to the bankruptcy courts." *Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986) (citation omitted).

33.     It is well established that the lack of good faith constitutes "cause" for dismissing a bankruptcy case pursuant to section 1112(b) of the Bankruptcy Code. *See Little Creek Dev*, 779 F.2d at 1072 (observing that "[n]umerous cases have found a lack of good faith to constitute 'cause' for lifting the stay to permit foreclosure or for dismissing the case" and collecting cases); *Elmwood Dev. Co. v. Gen. Elec. Pension Tr. (Matter of Elmwood Dev. Co.)*, 964 F.2d 508, 511 (5th Cir. 1992) ("Lack of good faith in the filing of a Chapter 11 bankruptcy petition constitutes cause for dismissal under 11 U.S.C. § 1112(b).") (citing *Little Creek Dev.*, 770 F.2d at 1072, 1074); *Humble Place Joint Venture v. Fory (In re Humble Place Joint Venture)*, 936 F.2d 814, 817 (5th Cir. 1991) ("The Bankruptcy Code provision that a Chapter 11 case may be dismissed 'for cause' has been interpreted to include the lack of good faith in its filing.").

34.     While determining whether or not a debtor's bankruptcy filing lacks good faith requires a case-by-case analysis that depends on a court's "on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities," the Fifth Circuit Court of Appeals has observed that courts typically have found a lack of good faith where several, but not all, of the following conditions exist:

- The debtor has one asset, such as a tract of undeveloped or developed real property;

- The secured creditors' liens encumber this tract;

- There are no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments pursuant to sections 361, 362(d)(1), 363(e), or 364(d)(1) of the Bankruptcy Code;

- There are only a few, if any, unsecured creditors whose claims are relatively small;

- Either (i) the property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the

16

foreclosure in state court or (ii) the debtor and one creditor may have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;

- Bankruptcy offers the only possibility of forestalling loss of the property;

- There are allegations of wrongdoing by the debtor or its principals; and

- A one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors (collectively, the "Little Creek Factors").

*See Little Creek Dev.*, 770 F.2d at 1072-73. Under these circumstances, "[r]esort to the protection of the bankruptcy laws is not proper . . . because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's 'terminal euphoria.'" *Id.* Here, all but one of the Little Creek Factors weigh in favor of dismissing the Debtor's Chapter 11 Case "for cause" pursuant to section 1112(b) of the Bankruptcy Code.

35. ***First***, the only primary assets identified in the Debtor's Petition are the Properties, which are comprised of adjacent parcels of land that were acquired by the Debtor simultaneously and managed by the same property manager. The fact that the Properties are comprised of several separate parcels does ***not*** weigh against a finding that the Properties constitute a single asset. *Cf. In re Club Golf Partners, L.P.*, 2007 WL 1176010, at *5 (E.D. Tex. Feb. 15, 2007) (recognizing that, in the context of determining whether a debtor's real property constitutes "single asset real estate," "real estate development is often done in separate projects that may each comprise several tracts or parcels of land that may not be contiguous" and that the "several tracts" may constitute "a single property"); *In re Yishlam, Inc.*, 495 B.R. 328, 331 (Bankr. S.D. Tex. 2013) (establishing that "two or more separate properties" may constitute a "single project" within the definition of "single asset real estate" if the multiple parcels were "purchased,

17

developed, or sold pursuant to a 'common plan or scheme,' linked together by 'common usage' or in pursuit of a 'common purpose'") (citations omitted).[14]

36. **Second**, all of the Properties are encumbered by first priority recorded liens in favor of Mortgage Lender to secure the Mortgage Obligations.

37. **Third**, on information and belief, and as made apparent from the lack of first-day motions that would accompany the chapter 11 filing of any entity with actual business operations, the Debtor has no employees except for its principals and no available sources of income to sustain a plan of reorganization or to make adequate protection payments other than from the fully encumbered Properties.

38. **Fourth**, the Petition reflects that the Debtor has only 1-49 creditors (*see* Petition at 3), all of whom, other than Mortgage Lender, appear to be unsecured creditors based on the list of creditors set forth in the Debtor's Creditor Matrix. Other than Mortgage Lender, the Debtor's creditors likely hold relatively small claims given that the Petition reflects aggregate estimated liabilities of $50,000,001–$100,000,000 and Mortgage Lender alone holds a secured claim in the amount of at least $73 million. Accordingly, by the Debtor's own admission, there are only a few unsecured creditors that hold relatively small claims.[15]

---

[14] For the avoidance of doubt, Mortgage Lender reserves the right to seek to re-designate this Chapter 11 Case as a single asset real estate case on this basis in the event that the Court permits this Chapter 11 Case to proceed.

[15] On May 11, 2022, Seth Kretzer, as receiver for another Nate Paul-owned entity, Great Value Storage LLC, filed a proof of claim for what appears to be a fraudulent transfer claim in the amount of $12,199,642.30. *See* Claims Register 3. Mr. Kretzer's proof of claim, however, contains no evidentiary support that the asserted claim relates in any way to the Debtor. Moreover, identical proofs of claim have been filed in all but two of the Affiliated Cases. *See In re W.C. S. Congress Square LLC*, Case No. 20-11107 (TMD) (Bankr. W.D. Tex.) (Claims Register 6-2); *In re WC 3rd and Trinity, LP*, Case No. 21-10252 (TMD) (Bankr. W.D. Tex.) (Claims Register 6); *In re Arboretum Crossing, LLC*, Case No. 21-10546 (TMD) (Bankr. W.D. Tex.) (Claims Register 7); *In re WC 717 N. Harwood Property, LLC*, Case No. 21-10630 (TMD) (Bankr. W.D. Tex.) (Claims Register 15); *In re WC Met Center, LLC*, Case No. 21-10698 (TMD) (Bankr. W.D. Tex.) (Claims Register 11); *In re 6th and San Jacinto, LLC*, Case No. 21-10942 (TMD) (Bankr. W.D. Tex.) (Claims Register 6); *In re WC 511 Barton Blvd, LLC*, Case No. 21-10943 (TMD) (Bankr. W.D. Tex.) (Claims Register 6); *In re WC Manhattan Place Property, LLC*, Case No. 22-10047 (TMD) (Bankr. W.D. Tex.) (Claims Register 2); *In re WC Alamo Industrial Center, LP*, Case No. 22-10226 (TMD) (Bankr.

18

39. **Fifth**, prior to the Petition Date, JPMorgan, Mortgage Lender's predecessor-in-interest, commenced foreclosure proceedings against the Properties and scheduled a foreclosure sale for May 3, 2022, which was maintained by Mortgage Lender. The Debtor did not commence any defending actions against the foreclosure in state court, thereby failing to secure an injunction or other relief to successfully block the foreclosure sale commenced by JPMorgan.

40. **Sixth**, this Chapter 11 Case offers the Debtor the only possibility of forestalling its loss of the Properties through the foreclosure sale. The Debtor filed its Petition the day before the scheduled foreclosure sale solely for the purpose of blocking the sale and avoiding its loss of the Properties.

41. **Lastly**, as is evident from the records of the Affiliated Cases, this Court has serious concerns about wrongdoing by the Debtor's principal, Mr. Paul, and has resorted to appointing a chapter 11 trustee in all of the Affiliated Cases currently pending before the Court.

      ii. <u>The Chapter 11 Case is effectively a two-party dispute that can be resolved outside of bankruptcy</u>

42. In addition to the Little Creek Factors, courts in this Circuit have held that the commencement of a bankruptcy case that essentially amounts to a two-party dispute that can be resolved in state court is indicative of a bad faith filing. *See In re 1701 Com., LLC*, 477 B.R. 652, 658 (Bankr. N.D. Tex. 2012) ("The Fifth Circuit has also made clear that the bankruptcy court should not retain a case to become a venue for the resolution of a state court dispute.") (citing *Humble Place Joint Venture*, 936 F.2d at 818 and *Little Creek Dev.*, 779 F.2d at 1074); *In re Anderson Oaks (Phase I) Ltd. P'ship*, 77 B.R. 108, 112 (Bankr. W.D. Tex. 1987) ("Two party disputes such as this simply have no place in bankruptcy. . . . Many courts have found that such

---

W.D. Tex.) (Claims Register 5). In any event, a claim for fraudulent transfer, particularly one against an entity other than this Debtor, may be pursued outside of bankruptcy in state court.

filings violate the 'good faith' prerequisite to invoking the bankruptcy court's equitable jurisdiction.").

43.     Dismissal for lack of good faith is appropriate, particularly where the bankruptcy process is used as a litigation tactic to gain an unfair advantage in a two-party dispute. *E.g.*, *In re Sherwood Enters., Inc.*, 112 B.R. 165, 170 (Bankr. S.D. Tex. 1989) ("The court concludes that the bankruptcy process has been used as a litigation tactic in what is essentially a two-party dispute. Dismissal of the petition of Sherwood Enterprises, Inc. is thus appropriate on the basis of a lack of good faith in the filing of the case pursuant to 11 U.S.C. § 112(b)."); *In re Antelope Techs., Inc.*, 2010 WL 104556, at *3 (Bankr. S.D. Tex. Jan. 7, 2010), *aff'd*, 2010 WL 2901017 (S.D. Tex. July 21, 2010), *aff'd*, 431 F. App'x 272 (5th Cir. 2011) ("This court has generally found cause to dismiss cases in which it appeared that the debtor was attempting to use the provisions of the Bankruptcy Code to gain an unfair advantage in a two party dispute."). In other words, "a Chapter 11 petition is not filed in good faith unless it serves a valid bankruptcy purpose." *In re Nat'l Rifle Assoc. of Am.*, 628 B.R. 262, 270-71 (Bankr. N.D. Tex. 2021) (citing *In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999)).

44.     Here, given that the Debtor did not list any significant unsecured creditors with its Petition and the paucity of the Debtor's Creditor Matrix, Mortgage Lender undoubtedly holds the vast majority of outstanding claims by dollar amount. Given the sheer size of Mortgage Lender's claim relative to the universe of all claims contemplated by the Debtor itself, there is no question that this Chapter 11 Case is a two-party dispute between the Debtor and Mortgage Lender. *See In re Ozcelebi*, 2022 WL 990283, at *32 (Bankr. S.D. Tex. Apr. 1, 2022) (finding that bankruptcy case amounted to a two-party dispute where a single creditor's claim accounted for 99.6% of the aggregate amount of remaining claims); *In re Triumph Christian Ctr., Inc.*, 493 B.R.

479, 495 (Bankr. S.D. Tex. 2013) (finding that bankruptcy case was "overwhelmingly a dispute between [secured creditor] and the Debtor over the Property, on which [secured creditor] holds its lien" where secured creditor was owed "ninety-seven percent of the Debtor's total debt and over ninety-nine percent of the secured debt").

iii.     <u>The burden of proof and weight of the evidence requires dismissal</u>

45.     Given that nearly all of the Little Creek Factors weigh in favor of a finding of lack of good faith, and because this Chapter 11 Case serves no purpose other than to forestall Mortgage Lender's foreclosure efforts and to gain an unfair litigation advantage in what is effectively a two-party dispute, the Debtor cannot meet its heavy burden of proving that the Chapter 11 Case was filed in good faith. *See In re Stephens*, 2022 WL 534011, at *7 (Bankr. N.D. Tex. Feb. 22, 2022) ("Where the debtor's good faith in filing is called into question, while the movant for dismissal has the initial burden of making out a prima facie case of lack of good faith on the part of the debtor, once that initial burden is satisfied the burden shirts to the debtor to prove by a preponderance of the evidence that the case was filed in good faith."); *In re Nat'l Rifle Assoc. of Am.*, 628 B.R. at 270-71 ("After the movant satisfied the initial burden of making a prima facie showing of a lack of good faith in filing, the burden shifts to the debtor to demonstrate good faith.") (citation omitted). The only fair and appropriate remedy is dismissal of this Chapter 11 Case pursuant to section 1112(b) of the Bankruptcy Code.

**II.**     **In the Alternative, "Cause" Exists for the Court to Grant Relief from the Automatic Stay to Allow Mortgage Lender to Exercise Its Rights and Remedies**

    **A.**     ***The Debtor's bad faith bankruptcy filing constitutes "cause" to grant relief from the automatic stay***

46.     In the event the Court does not dismiss the Chapter 11 Case, the Debtor's bad faith bankruptcy filing constitutes "cause" to grant Mortgage Lender relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code to allow it to proceed with the

21

foreclosure sale and to otherwise exercise its rights and remedies under the Mortgage Loan Agreement in connection with the Maturity Date Default.[16]

47.     Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "[o]n request of a party in interest and after notice and a hearing, the court . . . shall grant relief from the stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). As with dismissal of a bankruptcy case pursuant to section 1112(b) of the Bankruptcy Code, lack of good faith warrants relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code "for cause." *See Little Creek Dev.*, 779 F.2d at 1072 (observing that "[b]oth of these provisions allow relief to be granted 'for cause'" and that "[n]umerous cases have found a lack of good faith to constitute 'cause' for lifting the stay to permit foreclosure or for dismissing the case"); *In re Alexandra Tr.* 526 B.R. 668, 680 (Bankr. N.D. Tex. 2015) ("it is well established that a debtor's lack of good faith may constitute 'cause' for relief from the automatic stay") (citations omitted); *In re 1701 Commerce, LLC*, 477 B.R. 652, 657 (Bankr. N.D. Tex. 2012) ("courts in this and other circuits have long recognized that bad faith constitutes 'cause' for purposes of dismissal under section 1112(b) or relief from stay under section 362(d)(1)").

48.     Determining whether cause exists to grant relief from the automatic stay based on the lack of good faith is identical to the analysis required for dismissal of a bankruptcy case that was commenced in bad faith. *See Little Creek Dev.*, 779 F.2d at 1072; *In re Alexandra*

---

[16]     As more fully set forth in the accompanying *Motion of ATX Braker, LLC for Entry of Order Declaring That the Automatic Stay Does Not Bar the NY State Action*, the automatic stay imposed in this Chapter 11 Case does not prohibit the resolution of the NY Action to permit foreclosure of the non-debtor Mezzanine Borrower's collateral and the Debtor's actions to the contrary should not be sanctioned. Accordingly, for the reasons more fully set forth therein, Mezzanine Lender requests relief in the form of a declaration by the Court that the automatic stay does not apply to the NY Action or, alternatively, to the extent that the Court believes the automatic stay prevents Mezzanine Lender from pursuing its enforcement remedies against Mezzanine Borrower (and it does not), relief from the automatic stay.

*Trust*, 526 B.R. at 681-62 (applying Little Creek Factors, finding that the debtor's bankruptcy petition was not filed in good faith, and granting relief from the automatic stay); *In re 1701 Commerce*, 477 B.R. at 658 (applying the Little Creek Factors in concluding that the debtor had filed its chapter 11 petition in bad faith as part of bankruptcy case dismissal and stay relief analysis).

49.     Accordingly, for the reasons set forth above in Section I.B of this Motion, the circumstances surrounding the commencement of this Chapter 11 Case evidence the Debtor's lack of good faith and, in the absence of dismissal, warrant relief from the automatic stay for "cause" pursuant to section 362(d)(1) of the Bankruptcy Code.

**B.**     ***The lack of adequate protection of Mortgage Lender's interests in the properties constitutes "cause" to grant relief from the automatic stay***

50.     To the extent this Court were to conclude that the Chapter 11 Case was not filed in bad faith, the lack of adequate protection of Mortgage Lender's security interests in the Properties requires relief from the automatic stay for "cause."

51.     Under section 362(d)(1) of the Bankruptcy Code, "cause" for relief from the automatic stay expressly includes the lack of adequate protection. *See* 11 U.S.C. § 362(d)(1) ("On request of a party in interest and after notice and a hearing, the court . . . shall grant relief from the stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest."). If the Debtor cannot establish that Mortgage Lender's interests in the Properties are adequately protected, Mortgage Lender is entitled to relief from the automatic stay as a matter of law. *See* 11 U.S.C. § 362(g) ("In any hearing under subsection (d) . . . of this section concerning relief from the stay . . . (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and (2) the party opposing such relief has the burden of proof on all other issues."); *U.S. Savings Ass'n. of Tex. v. Timbers of Inwood Forest Assocs.,*

23

*Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 793 F.2d 1380, 1388 (5th Cir. 1986), *on reh'g*, 808 F.2d 363 (5th Cir. 1987), *aff'd sub nom. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988) ("If a creditor files a compliant seeking relief from the stay under § 362(d), the burden of proof, or the risk of non-persuasion, is on the debtor for all issues except the issue of the debtor's equity in the property[.]").

52.     A debtor's inability to make debt service or adequate protection payments is sufficient "cause" for relief from the automatic stay. *Compare In re WGMJR, Inc.*, 435 B.R. 423, 433-34 (Bankr. S.D. Tex. 2010) (finding lack of adequate protection where the debtor's revenue was "insufficient to pay the Debtor's expenses and also provide funds to make adequate protection payments to" its secured creditor), *with In re Omni Lion's Run, L.P.*, 578 B.R. 394, 398 (Bankr. W.D. Tex. 2017) (recognizing that relief from stay is appropriate "where the Debtors lack a source of income to effect the reorganization or make adequate protection payments" and denying stay relief because, among other things, the secured lenders were receiving "substantial adequate protection payments, in excess of $20,000 a month for each property"); *see also Little Creek Dev.*, 779 F.2d at 1073 (establishing lack of "available sources of income to sustain a plan of reorganization or to make adequate protection payments" as indicative of a bad faith bankruptcy filing that warrants dismissal or stay relief).

53.     Here, the Debtor is not—and has not been for many months—generating sufficient revenue to satisfy its debt service obligations under the Mortgage Loan Agreement. Upon information and belief, the Debtor's monthly rental income, which is the Debtor's primary—if not only—source of revenue, is estimated to be approximately $600,000.00, whereas interest of more than $620,000 is accruing per month under the Mortgage Loan, not including attorneys' fees and other charges owed under the Mortgage Loan Agreement and not including interest and other

fees and costs under the Mezzanine Loan. Given the Debtor's negative cash flow, the Debtor's ability to generate sufficient revenue for debt service on a go-forward basis is highly questionable.

54.     Accordingly, the Debtor cannot meet its heavy burden of proving that Mortgage Lender's security interests in the Properties are adequately protected and the Court should grant Mortgage Lender relief from the automatic stay for "cause" pursuant to section 362(d)(1) of the Bankruptcy Code.

### RESERVATION OF RIGHTS

55.     Mortgage Lender expressly reserves all of its rights with respect to this Motion, including the right to amend or supplement this Motion at any time prior to the hearing thereon.

### NOTICE

56.     Notice of this Motion will be provided to (i) the Debtor, (ii) counsel for the Debtor, (iii) any party that has requested notice pursuant to Bankruptcy Rule 2002, and (iv) any other party entitled to notice pursuant to Local Rule 9013-1(d).

### WAIVER OF BANKRUPTCY RULES 4001(a)(3)

57.     Bankruptcy Rule 4001(a)(3) provides that "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3). Mortgage Lender respectfully requests that the Court waive the 14-day stay contemplated by Bankruptcy Rule 4001(a)(3) and requests that any order granting relief from the automatic stay become effective immediately upon entry to enable Mortgage Lender to immediately resume its foreclosure sale and otherwise enforce its rights and remedies with respect to the Properties.

83430766.4

## NO PRIOR REQUEST

58.     No previous request for the relief sought herein has been made by Mortgage

Lender to this or any other court.

## CONCLUSION

WHEREFORE Mortgage Lender respectfully requests that the Court grant the

relief requested herein and such other and further relief as it deems just and proper.

Dated: May 13, 2022                     Respectfully submitted,
       Dallas, Texas

**POLSINELLI PC**

*/s/ Liz Boydston*
Liz Boydston (SBN 24053684)
2950 N. Harwood Street, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
lboydston@polsinelli.com

-and-

**GIBSON, DUNN & CRUTCHER LLP**

Mitchell A. Karlan (admitted *pro hac vice*)
Keith R. Martorana (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone:   (212) 351-4000
Facsimile:    (212) 351-4035
MKarlan@gibsondunn.com
KMartorana@gibsondunn.com

Matthew G. Bouslog (admitted *pro hac vice*)
3161 Michelson Drive
Irvine, California 92612
Telephone:   (949) 451-4030
Facsimile:    (949) 475-4640
MBouslog@gibsondunn.com

*Attorneys for ATX Braker SR, LLC and ATX*
*Braker, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was electronically filed with the Court and served through the CM-ECF system to all counsel of record registered to receive a Notice of Electronic Filing for this case and to the following parties in the manner notated, as follows:

*/s/ Liz Boydston*

DEBTOR
by First Class Mail to:
WC Braker Portfolio, LLC
814 Lavaca Street
Austin, TX  78701

DEBTOR'S COUNSEL
Todd Brice Headden theadden@haywardfirm.com

UNITED STATES TRUSTEE
ustpregion07.au.ecf@usdoj.gov
John C. Roy casey.roy@usdoj.gov, gary.wright3@usdoj.gov

**<u>Exhibit A</u>**
**Proposed Order**

83430766.4

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **In re** | **Chapter 11** |
| **WC BRAKER PORTFOLIO, LLC,** | **Case No. 22-10293 (TMD)** |
| **Debtor.[1]** | |

## ORDER DISMISSING THE DEBTOR'S CHAPTER 11 CASE

Upon the motion (the "Motion"),[2] dated May 13, 2022, of ATX Braker SR, LLC ("Mortgage Lender") for entry of an order (this "Order") dismissing the Chapter 11 Case pursuant to section 1112(b) of the Bankruptcy Code or, in the alternative, granting relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court having the authority to enter a final order consistent with Article III of the United States Constitution; and upon consideration of the entire record of the Chapter 11

---

[1] The last four digits of the Debtor's federal employer identification number are 2115. The Debtor's address is 814 Lavaca Street, Austin, Texas 78701.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

3

Case; and due and sufficient notice of the Motion having been given under the circumstances; and it appearing that no other or further notice need be provided; and after due deliberation, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED, as set forth herein.

2.      The Chapter 11 Case is hereby dismissed for cause pursuant to section 1112(b) of the Bankruptcy Code.

3.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

4.      Mortgage Lender is authorized to take all steps necessary or appropriate to carry out the relief granted in this Order.

5.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

6.      Notwithstanding entry of this Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

###

4

Respectfully submitted,

**POLSINELLI PC**

*/s/ Liz Boydston*

Liz Boydston (SBN 24053684)
2950 N. Harwood Street, Suite 2100
Dallas, Texas 75201
Telephone: (214) 397-0030
Facsimile: (214) 397-0033
lboydston@polsinelli.com

-and-

**GIBSON, DUNN & CRUTCHER LLP**
Mitchell A. Karlan (admitted *pro hac vice*)
Keith R. Martorana (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone:     (212) 351-4000
Facsimile:     (212) 351-4035
MKarlan@gibsondunn.com
KMartorana@gibsondunn.com

Matthew G. Bouslog (admitted *pro hac vice*)
3161 Michelson Drive
Irvine, California 92612
Telephone:     (949) 451-4030
Facsimile:     (949) 475-4640
MBouslog@gibsondunn.com

**Attorneys for ATX Braker SR, LLC and**
**ATX Braker, LLC**

5

83430766.4