

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: December 21, 2022.**

_____
**TONY M. DAVIS**
**UNITED STATES BANKRUPTCY JUDGE**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **In re** | **Chapter 11** |
| **WC BRAKER PORTFOLIO, LLC,** | **Case No. 22-10293 (TMD)** |
| **Debtor.[1]** | |

**ORDER (A) APPROVING BID PROCEDURES IN CONNECTION WITH THE SALE OF THE DEBTOR'S PROPERTY, (B) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (C) APPROVING STALKING HORSE BIDDER (D) SCHEDULING AN AUCTION AND HEARING TO APPROVE SALE OF PROPERTY, (E) APPROVING FORM AND MANNER OF NOTICES RELATED THERETO, AND (F) GRANTING RELATED RELIEF**

Before the Court is the *Chapter 11 Trustee's Motion For Entry Of (I) An Order (A) Approving Bid Procedures In Connection With The Sale Of The Debtor's Property, B) Approving Procedures For The Assumption And Assignment Of Executory Contracts And Unexpired Leases, (C) Approving Stalking Horse Bidder (D) Scheduling An Auction And Hearing To Approve Sale Of Property, (E) Approving Form And Manner Of Notices Related Thereto, And (F) Granting*

---

[1]     The last four digits of the Debtor's federal employer identification number are 2115. The Debtor's address is 814 Lavaca St, Austin, TX 78701.

*Related Relief; And (II) An Order Authorizing And Approving (A) The Sale Of The Debtor's Property Free And Clear Of Liens, Claims, Rights, Encumbrances, And Other Interests, And (B) Related Relief* (the "Motion")[2] for entry of an order authorizing or approving, among other things, (a) the proposed sale process and bidding procedures (in the form attached hereto as **Exhibit 1**, the "Bid Procedures"), by which the Trustee will solicit and select the highest or otherwise best offer for the sale (the "Sale") of the Debtor's properties (as described further in the Motion, the "Property"); (b) approving procedures for the assumption and assignment of executory contracts and unexpired leases; (c) approving the Trustee's selection of the stalking horse bidder; (d) scheduling an auction if necessary and final hearing to approve the proposed sale; and (e) approving the form and manner of notices related thereto.

The Court, having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157; and the Court having found that venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that it may enter a final order consistent with Article III of the United States Constitution; and the Court having found that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no other or further notice need be given except as set forth herein with respect to the Auction and the Sale Hearing; and a reasonable opportunity to object to or be heard regarding the relief provided herein has been afforded to parties-in-interest pursuant to Bankruptcy Rule 6004(a); and upon the record of the hearing and all of the proceedings had before the Court; and the Court having found that the relief sought in the Motion is in the best interests of the Debtor, its estate, its creditors and all other parties in interest; and the Court having found that the legal and

---

[2]     Capitalized terms used but not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A. **Predicates for Relief.** The predicates for relief granted herein are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and L. Rules 6004 and 9014.

B. **Best Interests.** The legal and factual bases set forth in the Motion establish just cause for the relief granted herein. Entry of this Order is in the best interests of the Debtor and its estate, creditors, and all other parties in interest.

C. **Bidding Procedures.** The Bidding Procedures attached hereto as **Exhibit 1**, are fair, reasonable, and appropriate under the circumstances and designed to achieve the highest or otherwise best Bid and to maximize the value to be achieved from the Sale of Debtor's Property for the estate.

D. **Sufficient Notice of the Motion, the Bidding Procedures Hearing, and the Order.** The Trustee's notice of the Motion, hearing and the proposed entry of this Order was adequate and sufficient under the circumstances of this Case, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

E. **Business Justification for Relief.** The Trustee has articulated good and sufficient business reasons for the Court to approve the Bid Procedures, including the scheduling of bid deadlines, auction and sale hearing with respect to the proposed Sale.

F. **Stalking Horse**. The Trustee has demonstrated a sound business justification for the Court to approve (i) ATX Braker SR, LLC as the Stalking Horse Bidder for the Property, and

(ii) the payment of the Expense Reimbursement to ATX Braker SR, LLC on the terms set forth in the Stalking Horse Agreement and the Motion.

G.     **Expense Reimbursement.**   The Expense Reimbursement is fair and reasonable and was negotiated by the parties at arm's length and in good faith.   The Trustee's payment of the Expense Reimbursement to ATX Braker SR, LLC, as set forth in the Stalking Horse Agreement and the Motion, is (a) an actual and necessary cost and expense of preserving the Debtor's bankruptcy estate, within the meaning of section 503(b) of the Bankruptcy Code, (b) of substantial benefit to the Debtor's estate, (c) reasonable and appropriate, including in light of the size and nature of the proposed Sale and the efforts that have been and will be expended even though the proposed sale is subject to higher and better offers, and (d) necessary to ensure that ATX Braker SR, LLC will continue to pursue its proposed acquisition of the Property.

H.     **Notice of Auction and Sale Hearing.**   The Notice of Auction and Sale Hearing, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale, and the Bid Procedures, including, without limitation: (i) the date, time and place of the Auction (if one is held); (ii) the Bid Procedures and the dates and deadlines related thereto; (iii) the objection deadline for the Sale and the date, time and place of the Sale Hearing; (iv) reasonably specific identification of the Property for sale; and (v) representations describing the Sale as being free and clear of liens, claims, interests and other encumbrances, with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the proceeds of the Sale; and no other or further notice of the Sale shall be required.

I.     **Assumption and Assignment Procedures.**   The Motion and the Assumption Notice are reasonably calculated to provide counterparties to the Available Contracts with proper

notice of the intended assumption and assignment of their executory contracts and leases, any Cure Amounts, and the Assumption Procedures (as defined herein), and are appropriate.

J.      No further notice beyond that described in the foregoing paragraphs is required in connection with the Sale or assumption and assignment of Available Contracts.

K.      The entry of this order (the "<u>Bid Procedures Order</u>") is in the best interests of the Debtor, its estate, its creditors, and other parties-in-interest.

L.      **Other Findings.** The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the findings of fact herein constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law herein constitute findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is granted as set forth herein.

2.      All objections to the Motion or the relief provided herein, as they pertain to the entry of this Bid Procedures Order, that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

<u>The Bid Procedures</u>

3.      The Bid Procedures attached hereto as Exhibit 1 are incorporated herein and approved, and shall apply with respect to the Sale. The Trustee is authorized to take all actions reasonable and necessary or appropriate to implement the Bid Procedures.

4.      The failure to specifically include or reference any particular provision, section, or article of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair

the effectiveness of such provision, section, or article, it being the intent of this Court that the Bidding Procedures are authorized in their entirety.

5.      The Trustee is authorized to conduct the Bidding Process (as defined in the Bid Procedures) in accordance with the Bid Procedures and the terms hereof.

6.      ATX Braker SR, LLC shall be deemed a Qualified Bidder (as defined in the Bidding Procedures) for all purposes and the bid as set forth in the Stalking Horse Agreement shall be deemed a Qualified Bid (as defined in the Bidding Procedures). ATX Braker SR, LLC shall have the right to credit bid under section 363(k) of the Bankruptcy Code all or any portion of its claims (inclusive of all interest, fees and expenses) in connection with the Sale, without the need for further order of the Court.

7.      The Expense Reimbursement (up to $125,000.00 for ATX Braker SR, LLC's actual and reasonable out-of-pocket third party expenses incurred in connection with, among other things, preparing the Stalking Horse Agreement, conducting due diligence, and negotiating, finalizing and documenting a Stalking Horse Bid) is approved. Pursuant to the Bidding Procedures, ATX Braker SR, LLC shall be entitled to credit bid the Expense Reimbursement during each round of bidding at the Auction. The Trustee is authorized and directed to pay the Expense Reimbursement as set forth in the Stalking Horse Agreement and the Motion, and the Trustee's obligation to pay the Expense Reimbursement shall constitute administrative expense claims under sections 503(b) and 507(a)(1) of the Bankruptcy Code.

8.      Potential Bidders or Qualified Bidders (other than the Stalking Horse Bidder), shall not be allowed any break-up, termination or similar fee with respect to the Property. Moreover, all Potential Bidders, Qualified Bidders, and the Stalking Horse Bidder (excluding the Expense

Reimbursement) waive any right to seek a claim for substantial contribution pursuant to section 503 of the Bankruptcy Code or the payment of any broker fees or costs.

**Notice Procedures**

9.      Service and publication of the Notice of Auction and Sale Hearing are sufficient to provide effective notice to all interested parties of, *inter alia*, the Bid Procedures, the Auction and the Sale Hearing, in accordance with Bankruptcy Rules 2002 and 6004, as applicable, and are approved.

10.      On or before three (3) business days after entry of this Bid Procedures Order, the Trustee will cause the Notice of Auction and Sale Hearing, substantially in the form attached hereto as **Exhibit 2** to be sent by first-class mail postage prepaid, to the following: (a) counsel to the Debtor, (b) counsel to the Stalking Horse Bidder, (c) the US Trustee, (d) all persons known or reasonably believed to have asserted an interest in the Property; (e) all state and local taxing authorities in the State where the Property is located; (f) the Internal Revenue Service; and (g) all other known creditors of the Debtor.

11.      In addition to the foregoing, on or before five (5) business days after entry of the Bid Procedures Order, the Trustee shall, subject to applicable submission deadlines, publish the Notice of Auction and Sale Hearing once in the national edition of *The New York Times, Wall Street Journal* or other comparable national publication.

12.      Within two business days following conclusion of the Auction, the Trustee shall file a notice on the Court's docket identifying the Successful Bidder for the Property and any applicable Next-Highest Bidder.

## Auction and Sale Hearing

13. **Bid Deadline**. As further described in the Bid Procedures, the deadline for submitting bids for the Property (the "Bid Deadline") is **February 7, 2023 at 5:00 p.m. (prevailing Central Time)**. No bid shall be deemed to be a Qualified Bid unless received by the Bid Deadline and otherwise meets the requirements set forth in the Bid Procedures.

14. **Auction**. The Trustee may sell the Property by conducting an Auction in accordance with the Bid Procedures. If at least one Qualified Bid (other than the Stalking Horse Bid) is received by the Bid Deadline, the Trustee will conduct an Auction in accordance with the Bid Procedures, which Auction shall take place on **February 14, 2023 at 2:00 p.m. (prevailing Central Time)**, at a venue that the Trustee shall announce to all Qualified Bidders. The Trustee reserves the right to conduct the auction live, in-person, or through a virtual platform and to change the location and time of the Auction. If the Trustee receives no Qualified Bids (other than the Stalking Horse Bid), (a) the Trustee shall not hold an Auction; (b) the Stalking Horse Bid will be the Successful Bid; and (c) the Stalking Horse Bidder will be named the Successful Bidder.

15. Each Qualified Bidder participating in the Auction will be required to confirm, in writing or on the record at the Auction, that (a) it has not engaged in any collusion with respect to the Bidding Process, (b) its Qualified Bid is a good faith bona fide offer that it intends to consummate if selected as the Successful Bidder, and (c) the Qualified Bidder agrees to serve as the Next-Highest Bidder if the Qualified Bidder's Qualified Bid is the next highest and best bid after the Successful Bid.

16. The Trustee and her professionals shall direct and preside over the Auction. Other than as expressly set forth in this Order or the Bidding Procedures, the Trustee may conduct the

Auction in the manner she reasonably determines will result in the highest or otherwise best Qualified Bid.

17.     Except as otherwise provided in the Bidding Procedures or this Order, the Trustee reserves the right as she may reasonably determine to be in the best interest of the Debtor's estate and in the exercise of her fiduciary duties to: (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reject any Bid (other than a Qualified Credit Bid by the Stalking Horse Bidder) that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtor and its estate; (e) impose additional terms and conditions with respect to all Potential Bidders (other than the Stalking Horse Bidder); (f) extend the deadlines set forth herein or in the Bidding Procedures; and (g) continue or cancel the Auction and/or Sale Hearing, including by announcement in open court without further notice.

18.     **Sale Hearing**. The Sale Hearing shall be held before the Court on **February 23, 2023 at 10:00 a.m. (prevailing Central Time)** before the Honorable H. Christopher Mott, United States Bankruptcy Judge for the Bankruptcy Court for the Western District of Texas, at Homer J. Thornberry Federal Judicial Bldg., Courtroom 2, 903 San Jacinto Blvd., Suite 326, Austin, Texas 78701.  The Trustee shall file a form of Sale Order no later than 7 days before the Sale Hearing. At the Sale Hearing, the Trustee will seek the entry of the Sale Order approving and authorizing the Sale to the Successful Bidder.  The Sale Hearing (or any portion thereof) may be adjourned by the Court or the Trustee from time to time without further notice other than by announcement in

open court, on the Court's calendar or through the filing of a notice or other document on the Court's docket.

19. **Sale Objection Deadline**. The deadline to object to the relief requested in the Motion, including entry of the proposed Sale Order (a "Sale Objection") is **February 7, 2023, at 4:00 p.m. (prevailing Central Time)** (the "Sale Objection Deadline"). A Sale Objection must be filed with the Court and served in the manner set forth below so *actually received* no later than the Sale Objection Deadline.

20. Objections solely to the identity of the Successful Bidder(s) or Next-Highest Bidder(s) that are not the Stalking Horse Bidder, including Assumed Contract counterparty objections based on inadequate assurance of future performance by a Successful Bidder other than the Stalking Horse Bidder (any such objection, a **"Supplemental Limited Sale Objection"**) must be made by **4:00 p.m. (prevailing Central Time) on February 21, 2023** (the **"Supplemental Limited Sale Objection Deadline"**); *provided*, that such deadlines may be extended by agreement of the Trustee and the affected objecting party.

### Objection Procedures

21. Any party that seeks to object to the relief requested in the Motion pertaining to approval of the Sale shall file a formal written objection that complies with the objection procedures as set forth herein and in the Motion, as applicable.

22. Objections, if any, must be: (i) in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the applicable provisions of the Bankruptcy Rules and the Local Rules; (iv) state with particularity the legal and factual basis for the objection and the specific grounds therefor; (v) be filed with the Court and (vi) served on the following parties (the "Notice Parties"): (a) counsel to the Trustee, Kelly Hart & Hallman LLP, 201 Main Street, Suite

2500, Fort Worth, TX 76102, Attn: Michael McConnell (michael.mcconnell@kellyhart.com) and

Nancy Ribaudo (nancy.ribaudo@kellyhart.com); (b) counsel to the Stalking Horse Bidder,

(i) Polsinelli P.C., 2950 N. Harwood, Suite 2100, Dallas, TX 75201, Attn: Liz Boydston

(lboydston@polsinelli.com); and (ii) Gibson, Dunn & Crutcher LLP, 200 Park Ave. New York,

New York 10166, Attn: Keith R. Martorana (kmartorana@gibsondunn.com) and Matthew

Bouslog (mbouslog@gibsondunn.com); and (c) the U.S. Trustee.

23.     Failure to file a Sale Objection on or before the Sale Objection Deadline (a) shall

forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion,

to entry of the Sale Order, and/or to the consummation and performance of the Sale with the

Successful Bidder, and (b) for purposes of section 363(f)(2) of the Bankruptcy Code, shall be

deemed to be "consent" to entry of the Sale Order and consummation of the Sale and all

transactions related thereto.

### Assumption Procedures

24.     The Assumption and Assignment Procedures, as detailed in the Motion and Bid

Procedures and incorporated herein by reference as if fully set forth in the Order, are approved.

25.     Within three (3) days after the entry of this Order, the Trustee shall (A) file with

the Court the Assumption Notice substantially in the form attached hereto as **Exhibit 3** including

a list of the Available Contracts (the "Available Contracts List"); and (B) serve, via first-class mail,

the Assumption Notice that contains (i) the Available Contracts List, (ii) information necessary

and appropriate to provide notice of the relevant proposed assumption and assignment of Available

Contract(s), (iii) Cure Amounts, if any, and (iv) the procedures for objecting thereto on all

counterparties to the Available Contracts and all parties entitled to such notice pursuant to

Bankruptcy Rule 2002. If no Cure Amount is listed on the Available Contracts List for a particular

Available Contract, the Trustee's asserted Cure Amount for such Available Contract shall be

deemed to be $0.00. Service of such Assumption Notice as set forth herein shall be deemed good and sufficient notice of, among other things, the proposed assumption and assignment of the Available Contracts, the applicable Cure Amounts related thereto, and the procedures for objecting thereto, and no other or further notice is necessary.

26.  Any objection by a counterparty to an Available Contract (a "**<u>Contract Objection</u>**") other than a Supplemental Limited Sale Objection must (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules and Local Bankruptcy Rules; (iii) be filed with the Clerk of Court on or before the Sale Objection Deadline; (iv) be served, so as to be actually received on or before the Sale Objection Deadline, upon the Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the counterparty believes is required to be paid under Bankruptcy Code sections 365(b)(1)(A) and (B) for the applicable Available Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto.

27.  Any time before 5:00 p.m. (prevailing Central Time) on the date that is three (3) business days prior to the Sale Hearing, the Trustee reserves the right, and is authorized but not directed, to add previously omitted Available Contracts as contracts to be assumed and assigned to a Successful Bidder, (ii) remove Available Contract from the list of Available Contracts that a Successful Bidder proposes be assumed and assigned to it in connection with the Sale, or (iii) modify the previously stated Cure Amount associated with any Available Contract.

28.  If, after the mailing of the Assumption Notice, additional executory contracts or unexpired leases of the Debtor are determined to be Available Contracts or the Trustee seeks to modify the previously stated Cure Amount associated with any Available Contract, as soon as

practicable thereafter and in no event later than 5:00 p.m. (prevailing Central Time) on that date that is three (3) business days before the date of the Sale Hearing, the Trustee shall file with the Court and serve, by overnight delivery on the applicable counterparties, any revised Assumption Notice (which shall be deemed to amend and restate the prior Assumption Notice with respect to such Available Contracts and/or Cure Amounts), and such counterparties shall file any Contract Objections not later than (a) the Sale Objection Deadline in the event that such revised Assumption Notice was filed and served at least ten (10) days prior to the Sale Objection Deadline, (b) two (2) days prior to the Sale Hearing in the event that such revised Assumption Notice was filed and served at least seven (7) days prior to the commencement of the Sale Hearing, and (c) seven (7) days from the date such revised Assumption Notice was filed and served, in the event that such revised Assumption Notice was filed and served less than seven (7) days prior to the commencement of the Sale Hearing.

29.     Not later than two business days after the conclusion of the Auction, if any, the Trustee shall file with the Court and serve, by overnight delivery, on the counterparties a notice (the "Post-Auction Notice"), substantially in the form attached as **Exhibit 4** hereto, identifying the Successful Bidder(s), and the counterparties shall file any Supplemental Limited Sale Objections not later than **February 21, 2023 at 4:00 p.m. prevailing Central Tim**e; *provided*, that the deadline for any party who did not receive an Assumption Notice prior to the date that is seven (7) days before the Sale Hearing to assert a Contract Objection shall be seven (7) days after the later of (i) the date of service of such Assumption Notice and (ii) the Post-Auction Notice.

30.     At the Sale Hearing, the Trustee will seek Court approval of the assumption and assignment to the Successful Bidder(s) of only those Available Contracts that have been selected by such Successful Bidder(s) to be assumed and assigned (collectively, the "**Assumed**

**Contracts"**).  The inclusion of an Available Contract on an Assumption Notice will not (i) obligate the Trustee to assume any Available Contract listed thereon nor the Successful Bidder(s) to take assignment of such Available Contract or (ii) constitute any admission or agreement of the Trustee that such Available Contract is an executory contract.  The Trustee and the Debtors' estates reserve any and all rights with respect to any Available Contracts that are not ultimately as Assumed Contracts.

31.     If no Contract Objection is timely received with respect to an Assumed Contract: (i) the counterparty to such Assumed Contract shall be deemed to have consented to the assumption by the Trustee and assignment to the Successful Bidder of the Assumed Contract, and shall be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Successful Bidder); (ii) any and all defaults under the Assumed Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to Bankruptcy Code section 365(b)(1)(A) and (B) upon payment of the Cure Amount set forth in the Assumption Notice for such Assumed Contract; (iii) the Cure Amount set forth in the Assumption Notice for such Assumed Contract shall be controlling, notwithstanding anything to the contrary in such Assumed Contract, or any other related document, and the counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other Claims related to such Assumed Contract against the Debtor and its estate or the Successful Bidder, or the property of any of them, that existed prior to the entry of the order resolving the Contract Objections and the Sale Order; and (iv) the counterparty to such Assumed Contract shall be deemed to have consented to the Sale and to any related relief.

32.     Absent further order of this Court, to the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the cure amount required to be paid to the applicable counterparty under Bankruptcy Code sections 365(b)(1)(A) and (B) (any such dispute, a **"Cure Dispute"**), such Contract Objection will be adjudicated at the Sale Hearing, at such other date and time as may be fixed by the Court, or such other date that may be agreed to by the parties; *provided*, *however*, that if the Contract Objection relates solely to a Cure Dispute, the Assumed Contract may be assumed by the Trustee and assigned to the Successful Bidder provided that the cure amount the counterparty asserts is required to be paid under Bankruptcy Code section 365(b)(1)(A) and (B) (or such lower amount as agreed to by the counterparty) is deposited in a segregated account by the Trustee pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

## Other Relief Granted

33.     The Trustee reserves the right, and is authorized to, modify the above timeline and the Bidding Procedures (the **"Modifications"**) in accordance with the Bidding Procedures.  The U.S. Trustee, and the Stalking Horse Bidder will be given notice of the Modifications.

34.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, the stay provided for in Bankruptcy Rules 6004(h) is waived and this Bid Procedures Order shall be effective immediately and enforceable upon its entry.

35.     In the event of any conflict between this Order and the Bid Procedures, this Order shall govern in all respects.

36.     This Court shall retain exclusive jurisdiction over any matters related to or arising from the implementation of this Order.

### END OF ORDER ###

Prepared By:


*s/ Nancy Ribaudo*
Michael A. McConnell
Texas Bar No. 13447300
Nancy Ribaudo
Texas Bar No. 24026066
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500 Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9777
Email:michael.mcconnell@kellyhart.com nancy.ribaudo@kellyhart.com

**Counsel for Dawn Ragan, Chapter 11 Trustee**

# EXHIBIT 1

**Bid Procedures**

## **BID PROCEDURES**

Set forth below are the bid procedures (the "Bid Procedures") to be used with respect to the sale or disposition (the "Sale") of the Property (as defined below) of WC Braker Portfolio, LLC (the "Debtor," or "Seller"), by the Chapter 11 Trustee  (the "Trustee") appointed by the United States Bankruptcy Court for the Western District of Texas (the "Bankruptcy Court") in the Debtor's bankruptcy proceeding, Case No. 22-10293-TMD.

### I.    **Description of the Property to be Sold**

The Trustee is seeking to sell (i) the real property commonly known as Braker Portfolio, as more particularly described in Exhibit A hereof, together with all structures and improvements thereon, all fixtures therein or thereto and all privileges, easements, appurtenances, development rights and air rights pertaining thereto, including all of Seller's right, title and interest in and to any adjacent or adjoining streets, alleys, or rights-of-ways and any strips or gores adjacent or adjoining thereto, or used in connection with the beneficial use and enjoyment thereof and all licenses and permits used in connection with the beneficial use and enjoyment thereof (the "Real Property"), (ii) all right, title, and interest of Seller in and to those certain lease agreements affecting the Real Property ("Leases"); (iii) all right, title, and interest of Seller, if any, in and to any fixtures, furniture, equipment, racking, conveyors, appliances, machinery, furniture, furnishings, tools, supplies and other tangible personal property located on the Real Property that is not otherwise owned by the any respective tenant under the Leases; and (iv) all right, title, and interest of Seller, if any, in and to any intangible personal property (including any intellectual property, if any, without representation or warranty, to the extent the foregoing can be assigned or transferred without the joinder or consent of any third party) that is necessary or useful in connection with the ownership, improvement or operation of the Real Property, including permits, plans and specifications, licenses, and certificates of occupancy (clauses (ii), (iii), and (iv)  together with the Real Property, collectively, the "Property" or "Assets").   The Real Property consists of the following:

The "Office Buildings":

| Individual Property | Address |
|---|---|
| Braker A | 1836 Kramer, Austin, Texas  78758 |
| Braker B | 1908 Kramer Lane, Austin, Texas  78758 |
| Braker C | 1901 W Braker Lane, Austin, Texas  78758 |
| Braker D | 1909 W Braker Lane, Austin, Texas  78758 |
| Braker E | 1817 W Braker Lane, Austin, Texas  78758 |
| Braker F | 11109 Metric Blvd, Austin, Texas  78758 |
| Braker G | 11101 Metric Blvd., Austin, Texas  78758 |
| Braker H | 11009 Metric Blvd., Austin, Texas  78758 |
| Braker M1, M2, M3, M4 | 11500 Metric Boulevard, Austin, Texas  78758 |
| Braker One | 2100 Kramer Lane, Austin, Texas  78758 |

The "Retail Building":

| Lonestar Center | 1910 W Braker Lane, Austin, Texas  78758 |
|---|---|

The Sale of the Property shall be subject to a competitive bidding process as set forth herein (the "Bidding Process") and approval by the Bankruptcy Court pursuant to sections 363, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6003, 6004, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Bankr. W.D. Local Rules 6004, 9013 and 9014 (the "Local Rules").  The sale of the Property may be in one lot or in two lots, consisting of (i) the Office Buildings as one combined lot, and (ii) the Retail Building as a separate lot.  A Bid may include or exclude some or all of the Leases or other executory contracts.

**Additional information regarding the Property can be obtained by contacting the Trustee's broker:**

**Keen-Summit Capital Partners LLC**
Telephone (646) 381-9222
Attn:  Matt Bordwin, mbordwin@keen-summit.com;
Harold Bordwin, hbordwin@keen-summit.com; and
Chris Mahoney, cmahoney@keen-summit.com

## II.   Submissions to the Trustee

All submissions to the Trustee required to be made under these Bidding Procedures must be directed to each of the following persons unless otherwise provided (collectively, the "Bid Notice Parties"):

a. **Broker.**  Keen-Summit Capital Partners LLC, 1 Huntington Quadrangle, Suite 2CO4, Melville, NY 11747, Attn:  Matt Bordwin (mbordwin@keen-summit.com; Harold Bordwin hbordwin@keen-summit.com; and Chris Mahoney (cmahoney@keen-summit);

b. **Chapter 11 Trustee.**  Dawn Ragan, CR3 Partners, 13355 Noel Road, Suite 2005, Dallas, TX 75240 (dawn.ragan@cr3partners.com); and

c. **Chapter 11 Trustee's Counsel.**  Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth, TX 76102, Attn: Michael A. McConnell (michael.mcconnell@kellyhart.com) and Nancy Ribaudo (nancy.ribaudo@kellyhart.com).

## III.   Key Dates

a. Key Proposed Auction and Sale-Related Dates (subject to the Court's availability):

| Event | Proposed Date |
|---|---|
| Deadline to file and serve the Sale Notice | Within three days of entry of Bid Procedures Order |

| Event | Proposed Date |
|---|---|
| Sale Objection Deadline (*e.g.*, deadline for objecting to sale to a Stalking Horse Bidder) | February 7, 2023, 4:00 p.m.(Central Time) |
| Bid Deadline | February 7, 2023 at 5:00 p.m.(Central Time) |
| Auction (if necessary) | February 14, 2023 at 2:00 p.m.(Central Time) |
| Deadline to file and serve notice of Successful Bidder and amount of Successful Bid | Within two business days after the Auction is completed |
| Supplemental Limited Sale Objection Deadline (*e.g.*, deadline for objecting to manner in which Auction was conducted and sale to a Successful Bidder that is not a Stalking Horse Bidder) | February 21, 2023 at 4:00 p.m. (Central Time) |
| Sale Hearing | February 23, 2023 at 10:00 a.m. (Central Time) |
| Closing Date | On or before February 28, 2023 |

> **b.** Key Dates Related to Proposed Assumption and Assignment Procedures (subject to the Court's availability):

| Event | Proposed Date |
|---|---|
| Deadline for objecting to assignment to Stalking Horse Bidder and proposed Cure Amounts | February 7, 2023, 4:00 p.m.(Central Time) |
| Deadline for objecting to assignment to Successful Bidder (other than Stalking Horse Bidder) | February 21, 2023 at 4:00 p.m. (Central Time) |
| Sale Hearing | February 23, 2023 at 10:00 a.m. (Central Time) |

## IV.    Stalking Horse Bidder

The Trustee has chosen ATX Braker SR, LLC as the stalking horse bidder for the Property (the "Stalking Horse Bidder").  ATX Braker SR, LLC is the lender under that certain Loan Agreement, dated as of February 28, 2019 (as the same has been amended, restated, supplemented

or otherwise modified from time to time), by and between Debtor and the ATX Braker SR, LLC (as successor to JPMorgan Chase Bank, National Association) (the "Mortgage Loan"), which Mortgage Loan is secured by a first priority lien on the Property.

The Stalking Horse Bidder has committed to purchase the Property pursuant to the terms of the Purchase and Sale Agreement attached to these bid procedures as Exhibit B (the "Stalking Horse Agreement"), and has agreed to pay a purchase price of $75,461,418.00 in the form of a credit bid of the Mortgage Loan (the "Stalking Horse Bid"). The Stalking Horse Bid shall set the floor for all bids for the Property at the Auction (defined below). Recognizing the Stalking Horse Bidder's expenditure of time, energy and resources, and that the Stalking Horse Bid provides a floor bid with respect to the Property, the Trustee has agreed to provide the Stalking Horse Bidder with customary bid protections in the form of reimbursement of expenses in the maximum amount of $125,000.00 (the "Expense Reimbursement").

## V.  Potential Bidders and Due Diligence

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process, each person or entity must enter into (unless previously entered into) with the Trustee, on or before the Bid Deadline (as defined below), an executed confidentiality agreement in form and substance reasonably satisfactory to the Trustee (the "Confidentiality Agreement"). Each person or entity that enters into the Confidentiality Agreement with the Trustee on or before the Bid Deadline is hereinafter referred to as a ("Potential Bidder.")

Up to and including the Bid Deadline (as defined below) (such period, the "Diligence Period"), the Trustee shall afford each Potential Bidder such available due diligence access or additional information as may be reasonably requested in writing by the Potential Bidder that the Trustee, in her business judgment, determines to be reasonable and appropriate under the circumstances. Only those Potential Bidders whose financials, the financials of their equity holder(s), or whose written commitments, as applicable, demonstrate the financial capability to consummate the Sale shall be eligible to receive due diligence information.

The Trustee may designate Keen-Summit Capital Partners LLC ("Keen-Summit") as her representatives to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders. Each Potential Bidder shall be required to acknowledge that it has had an opportunity to conduct any and all due diligence regarding the Property in conjunction with submitting its Bid (as defined below). Notwithstanding the foregoing, the Trustee reserves the right to withhold or limit access to any information that the Trustee determines to be commercially sensitive or otherwise not appropriate to disclose to any Potential Bidder. **No Potential Bidder will be permitted to conduct any due diligence without entering into a Confidentiality Agreement.**

**All due diligence requests must be directed to Keen-Summit Capital Partners LLC.**

**Potential Bidders shall not contact the Debtor or conduct a site inspection without coordinating same with Keen-Summit.**

4

For all Potential Bidders, the due diligence period will end on the Bid Deadline and, subsequent to the Bid Deadline, the Trustee shall have no obligation to furnish any due diligence information.

Neither the Trustee nor the Debtor shall furnish any confidential information relating to the assets, or liabilities of the Debtor, or the Sale to any person except to a Potential Bidder or to such Potential Bidder's duly authorized representatives to the extent provided in the applicable Confidentiality Agreement.  The Trustee and her advisors shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; *provided*, that the Trustee may decline to provide such information to Potential Bidders who, at such time and in the Trustee's reasonable business judgment have not established, or who have raised doubt, that such Potential Bidder intends in good faith to, or has the capacity to, consummate the Sale.  For the avoidance of doubt, the Stalking Horse Bidder shall be granted access to diligence materials.

The Trustee also reserves the right to withhold any diligence materials that the Trustee determines are sensitive or otherwise not appropriate for disclosure to a Potential Bidder who the Trustee determines is a competitor of the Debtor or is affiliated with any competitor of the Debtor. Neither the Trustee, the Debtor nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Potential Bidder that intends in good faith to, or has the capacity to, consummate the Sale.

      **(a)**      **Communications with Potential Bidders.**

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications between and amongst Potential Bidders shall involve the Trustee and the Trustee's advisors, to the extent reasonably practicable.

      **(b)**      **Due Diligence from Potential Bidders.**

Each bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Trustee or her advisors regarding the ability of the Potential Bidder to consummate the Sale or discussions with other Potential Bidders regarding any topic and with any party regarding the Debtor (and/or the Assets).  Failure by a Potential Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Trustee to determine that such bidder is not a Qualified Bidder or that a Bid made by such bidder is not a Qualified Bid.

The Trustee and each of her respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable confidentiality agreement, except as otherwise set forth in these Bidding Procedures.  Each recipient of confidential information agrees to use, and to instruct their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or otherwise in connection with the chapter 11 cases or in accordance with the terms of any applicable confidentiality agreement.

Notwithstanding the foregoing and the provisions contained in any applicable confidentiality agreement, the Trustee and the Trustee's advisors may disclose confidential information: (i) with the prior written consent of such bidder and the Trustee; (ii) to the applicable

bidder; and (iii) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

## VI.    Bid Deadline:  February 7, 2023 at 5:00 p.m. (prevailing Central Time).

A Potential Bidder that desires to make a Bid shall deliver copies of its Bid (defined below) in Microsoft Word format, by email to:

(a) the Trustee, Dawn Ragan, at dawn.ragan@cr3partners.com;

(b) Keen-Summit, Attn: Matthew Bordwin at mbordwin@keen-summit.com, Harold Bordwin at hbordwin@keen-summit.com and Chris Mahoney at cmahoney@keen-summmit.com; and

(c) counsel to the Trustee, Kelly Hart & Hallman LLP, Attn: Michael McConnell at michael.mcconnell@kellyhart.com and Nancy Ribaudo at nancy.ribaudo@kellyhart.com

by no later than **February 7, 2023 at 5:00 p.m.** (prevailing Central Time) (the "Bid Deadline").

## VII.    Bid Requirements

A proposal, solicitation, or offer for a purchase and sale of all or part of the Property (each, a **"Bid"**) by a bidder that is submitted in writing and satisfies at least each of the following requirements (the **"Bid Requirements"**), as determined by the Trustee, in her reasonable business judgment, shall constitute a **"Qualified Bid;"** *provided*, that, if the Trustee receives a Bid before the Bid Deadline that is not a Qualified Bid, the Trustee may provide the bidder with the opportunity to remedy any deficiencies by 5:00 p.m. (prevailing Central Time) on the last business day prior to the Auction in order to render such Bid a Qualified Bid; *provided*, *further*, that for the avoidance of doubt, if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access requested by the Trustee to the satisfaction of the Trustee, the Trustee may disqualify any Qualified Bidder and Qualified Bid and such Qualified Bidder will not be entitled to attend or participate in the Auction; *provided*, *further*, that the Stalking Horse Bid will constitute a Qualified Bid, and the Stalking Horse Bidder will constitute a Qualified Bidder.  The Trustee may also waive or modify any of the above requirements in the exercise of her reasonable business judgment, and with the reasonable consent of the Stalking Horse Bidder. To constitute a Qualified Bid, a Bid must:

a)  Be accompanied by a letter or email:

    i.  stating with specificity the Property (including the specific executory contracts and unexpired leases) such Potential Bidder wishes to bid on and the liabilities and obligations (including applicable cure costs) to be assumed by the Potential Bidder in the Sale (a Bid may include or exclude some or all of the Property, Leases or other executory contracts);

  ii. detailing the following:

    (A) a duly executed purchase agreement (the "<u>Purchase Agreement</u>");

    (B) a redline of the Purchase Agreement marked to reflect any proposed amendments and modifications to the Stalking Horse Agreement and the applicable schedules and exhibits.

  iii. agreeing that the Potential Bidder's offer is **binding and irrevocable** until the later of (i) the Closing Date (as defined herein), or (ii) thirty (30) days after the Sale Hearing (unless selected as the "Next-Highest Bidder" (as defined below) in which case such offer will remain open until the Closing Date);

  iv. providing for a Closing Date that occurs on or before **February 28, 2023**;

  v. offering to pay a price, in cash, equal to $75,836,418.00 or greater, such amount being calculated as the sum of (a) the Stalking Horse Bid, (b) the Expense Reimbursement, and (c) $250,000 (such sum, the "<u>Minimum Bid</u>");

  vi. providing that such Bid is not subject to any due diligence or financing contingency;

  vii. written evidence of a commitment for financing or other evidence of ability to consummate the transaction as the Trustee may request; and

  viii. providing that the Potential Bidder agrees to serve as a backup bidder (the "<u>Next-Highest Bidder</u>") if the Potential Bidder's Qualified Bid (as defined below) is the next highest and best bid after the Successful Bid (as defined below) (the "<u>Next-Highest Bid</u>");

  ix. provide contact information for the Bidder and its legal counsel, including for each their respective company name, mailing address, office phone number, cell phone number, and email address; and

 b) Be accompanied by adequate assurance of future performance information (the "<u>Adequate Assurance Information</u>"), including (i) information about the Potential Bidder's financial condition, such as federal tax returns for two years, a current financial statement, or bank account statements, (ii) information demonstrating (in the Trustee's reasonable business judgment) that the Potential Bidder has the financial capacity to consummate the proposed Sale, (iii) evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid, (iv) the identity and exact name of the Potential Bidder (including any equity holder or other financial backer if the Potential Bidder is an entity formed for the purpose of consummating the proposed Sale), and (v) such additional information regarding the Potential Bidder as the Potential Bidder may elect to include. By submitting a Bid, Potential Bidders agree that the Trustee may disseminate such Adequate Assurance Information to affected lessees, and contract counterparties in the event that the Trustee determines such bid to be a Qualified Bid.

  A Bid must be accompanied by (a) a deposit in the form of a certified check or wire transfer, payable to the order of the Trustee, in the amount of ten percent (10%) of the Bid, which funds will be deposited into an interest bearing escrow account to be identified by the Trustee (a "<u>Good Faith Deposit</u>") and (b) written evidence, documented to the Trustee's satisfaction, that

demonstrates the Potential Bidder has available cash, a commitment for financing if selected as the Successful Bidder (as defined below) with respect to the Property (provided, however, that the closing shall not be contingent in any way on the Successful Bidder's financing) and such other evidence of ability to consummate the transaction(s) as the Trustee may request, including proof that such funding commitments or other financing are not subject to any internal approvals, syndication requirements, diligence or credit committee approvals.

The Trustee will review each Bid received from a Potential Bidder to determine whether it meets the requirements set forth above.  A Bid received from a Potential Bidder that meets the above requirements, and is otherwise satisfactory to the Trustee, will be considered a "Qualified Bid" and each Potential Bidder that submits a Qualified Bid will be considered a "Qualified Bidder."  The Trustee shall inform Qualified Bidders that their Bids have been designated as Qualified Bids no later than 48 hours after the Bid Deadline.  For the avoidance of doubt, the Stalking Horse Agreement will be deemed a Qualified Bid and the Stalking Horse Bidder will be deemed a Qualified Bidder, for all purposes and requirements pursuant to the Bid Procedures, notwithstanding the requirements that a Potential Bidder must satisfy to be a Qualified Bidder.

If Trustee receives a Bid by the Bid Deadline that is not a "Qualified Bid", Trustee reserves the right work with such Potential Bidder and to extend any applicable deadlines in order to help a Potential Bidder to convert a Bid that is not a "Qualified Bid" into a "Qualified Bid" provided that such Bid must be converted into a "Qualified Bid" by no later than the last business day prior to the Auction at 5:00 p.m. (prevailing Central Time).

A Qualified Bid will be valued by the Trustee based upon any and all factors that the Trustee reasonably deems pertinent in its reasonable business judgment, including, among others, (a) the amount of the Qualified Bid, (b) the risks and timing associated with consummating the transaction(s) with the Qualified Bidder, (c) excluded executory contracts or leases, (d) any modifications to the Stalking Horse Agreement, and (e) any other factors that the Trustee may reasonably deem relevant.

The Trustee, in her business judgment, reserves the right to reject any Bid (other than the Stalking Horse Bid) if such Bid, among other things:

(a)     is on terms that are more burdensome or conditional than the terms of the Stalking Horse Agreement;

(b)     requires any indemnification of the Potential Bidder in its Purchase Agreement;

(c)     is not received by the Bid Deadline;

(d)     it is not accompanied by a Good Faith Deposit;

(e)     is submitted by a Potential Bidder who (or who's affiliate) files an objection to the Sale;

(f)     is subject to any contingencies (including representations, warranties, covenants and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the Property;

8

(g)     seeks any bid protections; or

(h)     does not, in the Trustee's determination, include at least the Minimum Bid, or the acceptance of such Bid would not be in the best interests of the Debtor's estate or the Auction; and

(i)     is determined not to be a good faith, bona fide offer to purchase the Property.

Any Bid rejected pursuant to this paragraph shall not be deemed to be a Qualified Bid.  In the event that any Bid is so rejected, the Trustee shall cause the Good Faith Deposit of such Potential Bidder (including all accumulated interest thereon) to be refunded to it within three (3) business days after the Auction.

The Trustee shall deliver all Qualified Bids to counsel to the Stalking Horse Bidder promptly following the designation of such Bid as a Qualified Bid, but in any event no later than 6:00 p.m. (prevailing Central Time) on February 10, 2023.

**VIII.    Credit Bidding**

The Trustee has stipulated that the Stalking Horse Bidder has a perfected security interest in the Property, and is entitled to credit bid some or all of its claims for its collateral (a "Credit Bid") pursuant to section 363(k) of the  Bankruptcy Code.  The Stalking Horse Bidder shall be considered a Qualified Bidder with respect to its right to acquire the Property by Credit Bid.  All other Qualified Bids shall be cash bids.

**IX.      Auction:  February 14, 2023**

Unless otherwise ordered by the Bankruptcy Court for cause shown, only Qualified Bidders are eligible to participate at the Auction (as defined below).  At least three (3) business days prior to the Auction, each Qualified Bidder, other than the Stalking Horse Bidder, must inform the Trustee in writing whether it intends to participate in the Auction.  If the Trustee receives no Qualified Bids (other than the Stalking Horse Bid), then (a) the Trustee may elect to not hold an Auction; (b) may deem the Stalking Horse Bid the Successful Bid and name the Stalking Horse Bidder the Successful Bidder.

If at least one Qualified Bid (other than the Stalking Horse Bid) is received by the Bid Deadline, the Trustee will conduct an auction (the "Auction") and shall determine which Qualified Bid is the highest or otherwise best Qualified Bid for the Property (the "Starting Bid"), which determination will be communicated to Qualified Bidders prior to the commencement of the Auction.  The Auction shall take place at **2:00 p.m. (prevailing Central Time) February 14, 2023**, at a venue that the Trustee shall announce to all Qualified Bidders.  The Trustee reserves the right to conduct the auction live, in-person, or through a virtual platform and to change the location and time of the Auction. Professionals and principals for the Trustee, the Stalking Horse Bidder, each Qualified Bidder, the chapter 11 trustee for WC Braker Portfolio B, LLC, Nate Paul, and the United States Trustee, and their advisors may attend the Auction; any creditor of the Debtor and their counsel upon written request delivered to the Trustee at least three days prior to the Auction and approved by the Trustee; and the Trustee shall be authorized to exclude other parties.

Each Qualified Bidder participating in the Auction will be required to confirm, in writing, and on the record at the Auction, that (a) it has not engaged in any collusion with respect to the Bidding Process, and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

Bidding at the Auction for the Property will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one Subsequent Bid (defined below) is submitted by a Qualified Bidder that (i) improves on such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Trustee reasonably determines that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below). Each Subsequent Bid at the Auction shall provide net value to the estate in an amount of at least $250,000 ("Incremental Overbid") over the Starting Bid or the Leading Bid (as defined below), as the case may be, provided that: (i) if the Leading Bid was made by the Stalking Horse Bidder, such bid shall be deemed to include the Expense Reimbursement, and (ii) any Subsequent Bid made by the Stalking Horse Bidder shall only be required to equal the sum of the amount of (w) the Starting Bid or the Leading Bid, as applicable, and (x) the Incremental Overbid, less the Expense Reimbursement. After the first round of bidding and between each subsequent round of bidding, the Trustee shall announce the bid that the Trustee believes to be the highest or otherwise best offer for the Property (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid. For the avoidance of doubt, a Qualified Bidder must provide written evidence, documented to the Trustee's satisfaction, that demonstrates that the Qualified Bidder has available cash or a commitment for financing to support each Bid submitted at the Auction, and failure to satisfy such obligation shall result in disqualification of the Qualified Bidder and any such Bids.

The bidding at the Auction shall be transcribed or videotaped and the Trustee shall maintain a transcript of all Bids made and announced at the Auction.

Based upon the terms of the Qualified Bids, the level of interest expressed in the Property and such other information as the Trustee may determine to be relevant, Trustee shall have the right to supplement the procedures set forth herein in her sole and absolute discretion, such rules for the bidding process which she determines will better promote the goals of the bidding process. Among other things, Trustee shall determine, in the exercise of her sole and absolute discretion, acceptable bidding increments, which may be modified by the Trustee during the Auction. Trustee may offer the Property for bidding in successive rounds, may conduct an open Auction, or may otherwise conduct the Auction in the manner that she deems most appropriate for soliciting the highest and best Bids.

Immediately prior to the conclusion of the Auction, the Trustee will: (a) determine, consistent with the Bid Procedures, which bid constitutes the highest or otherwise best bid (the "Successful Bid"); and (b) notify all Qualified Bidders at the Auction, prior to its conclusion, of the name of the maker of the Successful Bid (the "Successful Bidder"), and the amount and other material terms of the Successful Bid. The Trustee may designate the Next-Highest Bid (and the corresponding Next-Highest Bidder) to close in the event that the Successful Bidder does not close the Sale; *provided, however*, that the Next-Highest Bid shall be deemed to be the last Bid provided

by such Next-Highest Bidder at the time when there were two or more Bidders not affiliates of the Debtor still actively bidding at the Auction (and if there are only two Bidders for any lot at the start of the Auction of which only one is a non-affiliate of the Debtor, the Next-Highest Bid will be deemed to be such party's starting Bid). The Trustee shall not consider any Bids or Subsequent Bids submitted after the conclusion of the Auction and any and all such Bids and Subsequent Bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

Within two business days following conclusion of the Auction, the Trustee shall file a notice on the Bankruptcy Court's docket identifying (with specificity) the Successful Bidder and any applicable Next-Highest Bidder. Notwithstanding the selections of the Successful Bidder and the Next-Highest Bidder, all bids are **binding and irrevocable** until the later of (i) the Closing Date, or (ii) thirty (30) days after the Sale Hearing (unless selected as the Next-Highest Bidder, in which case such offer will remain open until the Closing Date).

At the conclusion of the Auction, both the Successful Bidder and the Next Highest Bidder shall modify and re-execute the Purchase and Sale Contract, as appropriate, without varying its terms other than to reflect the terms of the Successful Bid and the terms of the Next Highest Bid, respectively, as publicly announced at the Auction.

## X.    Adequate Assurance Information.

Within twenty-four (24) hours of the filing of the notice of the Successful Bidder and the Next-Highest Bidder, the Successful Bidder and the Next-Highest Bidder will send by overnight delivery to each contract counterparty whose contract is part of such Bid, the financial and other commercial information to demonstrate adequate assurance of future performance under such contract.

## XI.    Jurisdictional Consent

All bidders at the Auction will be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to jury trial in connection with any disputes relating or pertaining to or resulting or arising from the marketing of the Property by Keen-Summit, the Auction, the Sale, the acts or omissions of Trustee and/or Keen-Summit, and the construction and enforcement of the Stalking Horse Agreement and all other agreements entered into in connection with any proposed Sale transaction. The submission of a Bid shall constitute an express consent by the Bidder to the exclusive jurisdiction of the Bankruptcy Court for all such matters. Such consent and waiver shall apply to the extent that it is later determined that the Bankruptcy Court, absent consent, cannot enter final orders or judgments with regard to the foregoing matters consistent with Article III of the United States Constitution..

## XII.    No Fees for Potential Bidders or Qualified Bidders

Potential Bidders or Qualified Bidders, other than the Stalking Horse Bidder, shall not be allowed any break-up, termination or similar fee. Moreover, all Potential Bidders, Qualified Bidders, and the Stalking Horse Bidder (excluding the Expense Reimbursement), by participating in the Bidding Process, will be deemed to have waived any right to seek a claim for substantial contribution pursuant to section 503 of the Bankruptcy Code or the payment of any broker fees or cost.

XIII.    **Sale Hearing**

The Successful Bid and the Next-Highest Bid (or if no Qualified Bid other than that of the Stalking Horse Bidder is received, then the Stalking Horse Bid) will be subject to approval by the Bankruptcy Court.  The hearing to approve the Successful Bid and the Next-Highest Bid (or if no Qualified Bid other than that of the Stalking Horse Bidder is received, then the Stalking Horse Bid) shall take place **on February 23, 2023 at 10:00 a.m.** (prevailing Central Time) (the "Sale Hearing").

At the Sale Hearing, the Trustee will seek entry of an order that, among other things: (i) authorizes and approves the Sale to the Successful Bidder and/or the Next-Highest Bidder, (ii) includes a finding that the Successful Bidder and/or the Next-Highest Bidder is a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code, and (iii) as appropriate, exempts the Sale and conveyance of the Property from any transfer tax, stamp tax or similar tax, or deposit under any applicable bulk sales statute.

The Trustee intends to close the Sale on or before February 28, 2023 unless another time or date, or both, are agreed to in writing by the Trustee and the Successful Bidder (the "Closing Date").

XIV.    **Return of Good Faith Deposit**

The Good Faith Deposits of all Potential Bidders shall be held in escrow by the Trustee, but shall not become property of the Debtor's estate absent further order of the Bankruptcy Court. The Good Faith Deposits of all Potential Bidders shall be retained by the Trustee, notwithstanding Bankruptcy Court approval of the Sale, until three (3) business days after the earlier of (a) the Closing Date, or (b) ten (10) days following the Sale Hearing; provided, however, that the Good Faith Deposit of the Next-Highest Bidder shall be retained until three (3) business days after the applicable Closing Date.  The Trustee shall retain any Good Faith Deposit submitted by each Successful Bidder.  At the closing of a Sale contemplated by a Successful Bid, the applicable Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit.

If the Successful Bidder (or, if the Sale is to be closed with a Next-Highest Bidder, then the Next-Highest Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the Purchase Agreement or the Stalking Horse Agreement, as applicable (and as such agreements may be amended or modified at the Auction), the Trustee, on behalf of the Debtor's estate, shall be entitled to retain the Good Faith Deposit of such Successful Bidder (or, if the Sale is to be closed with the Next-Highest Bidder, then such Next-Highest Bidder) as part of the damages resulting to the Debtor and its estate for such breach or failure to perform.

XV.    **Next-Highest Bidder**

Notwithstanding any of the foregoing, in the event that a Successful Bidder fails to close the Sale prior to such date as specified in the applicable Purchase Agreement, the Trustee, upon written notice to the Next-Highest Bidder, may designate the Next-Highest Bid as the Successful Bid for the Property, the Next-Highest Bidder will be deemed to be the Successful Bidder for the

Property, and the Trustee will be authorized, but not directed, to close the Sale to the Next-Highest Bidder subject to the terms of the Next-Highest Bid without the need for further order of the Bankruptcy Court and without the need for further notice to any interested parties.

### XVI.    Fiduciary Out

Nothing in these Bidding Procedures shall require the Trustee to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent the Trustee determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, would violate applicable law or her fiduciary obligations under applicable law.

### XVII.    Miscellaneous

By participating in this sale process, Bidder acknowledges that, pursuant to, inter alia, 18 U.S.C. Section 371, it is a federal crime to engage in collusive bidding or to chill the bidding and Bidder warrants and represents that it has not and will not engage in such activities.

By participating in this sale process, Bidder warrants and represents that it is a principal acting on its own behalf, and not a broker, finder or agent acting on another's behalf.  Bidder acknowledges that it will not look to the Trustee and/or Keen-Summit and their respective representatives for the payment of any fee or commission. Trustee is compensating Keen-Summit pursuant to a separate Bankruptcy Court approved agreement.  In addition, Bidder agrees to be responsible for the payment of any fee, commission or other compensation payable to any broker, finder or agent who alleges it has dealt with or through Bidder. Bidder hereby agrees to indemnify, defend and hold the Trustee and Keen-Summit and their respective representatives harmless from and against any and all claims, damages, losses and liabilities, costs and expenses (including reasonable attorneys' fees and disbursements) arising out of any claim or claims by any broker, finder or similar agent for commissions, fees or other compensation who allege that they have dealt with Bidder in connection with the Property.  Bidder understands that the Trustee and Keen-Summit and their respective representatives have not agreed to pay any brokerage commissions, finder's fee or other compensation in connection with Bidder's possible purchase. If Bidder is working with a broker or finder other than Keen-Summit, Bidder agrees that Bidder shall be responsible for the payment of any fees, if any, to such broker or finder.

*[The remainder of this page is intentionally left blank.]*

Exhibit A

Real Property Description

| Individual Property | Address |
|---|---|
| Braker A | 1836 Kramer Lane, Austin, Texas  78758 |
| Braker B | 1908 Kramer Lane, Austin, Texas  78758 |
| Braker C | 1901 W Braker Lane, Austin, Texas  78758 |
| Braker D | 1909 W Braker Lane, Austin, Texas  78758 |
| Braker E | 1817 W Braker Lane, Austin, Texas  78758 |
| Braker F | 11109 Metric Blvd., Austin, Texas  78758 |
| Braker G | 11101 Metric Blvd., Austin, Texas  78758 |
| Braker H | 11009 Metric Blvd., Austin, Texas  78758 |
| Braker M1, M2, M3, M4 | 11500 Metric Blvd., Austin, Texas  78758 |
| Lonestar Center | 1910 W Braker Lane, Austin, Texas  78758 |
| Braker One | 2100 Kramer Lane, Austin, Texas  78758 |

Exhibit B

Stalking Horse Agreement

3364546.1 11-23-22

3645456.2-12-1-22

## PURCHASE AND SALE AGREEMENT

## SUBJECT TO BIDDING PROCESS

This Purchase and Sale Agreement Subject to Bidding Process (this "Agreement") is executed as of the 23rd day of November, 2022 (the "Execution Date"), by and among WC Braker Portfolio, LLC (the "Debtor" or "Seller"), and ATX Braker SR, LLC, a Delaware limited liability company ("Purchaser"). Seller and Purchaser are referred to collectively herein as the "Parties" and each a "Party").

## RECITALS

WHEREAS, on May 2, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Western District of Texas (the "Court") as Case No. 22-10293 (TMD) (the "Bankruptcy Case").

WHEREAS, on May 26, 2022, the Office of the United States Trustee for the Western District of Texas appointed Dawn M. Ragan, as chapter 11 trustee of the Debtor ("Trustee"), and, on May 31, 2022, the Bankruptcy Court approved the appointment of the Trustee as chapter 11 trustee of the Debtor;

WHEREAS, Seller seeks to sell (i) the real property commonly known as Braker Portfolio, as more particularly described in Exhibit A hereof, together with all structures and improvements thereon, all fixtures therein or thereto and all privileges, easements, appurtenances, development rights and air rights pertaining thereto, including all of Seller's right, title and interest in and to any adjacent or adjoining streets, alleys, or rights-of-ways and any strips or gores adjacent or adjoining thereto, or used in connection with the beneficial use and enjoyment thereof and all licenses and permits used in connection with the beneficial use and enjoyment thereof (the "Real Property"); (ii) all right, title, and interest of Seller in and to those certain lease agreements affecting the Real Property ("Leases"); (iii) all right, title, and interest of Seller, if any, in and to any fixtures, furniture, equipment, racking, conveyors, appliances, machinery, furniture, furnishings, tools, supplies and other tangible personal property located on the Real Property that is not otherwise owned by the any respective tenant under the Leases; and (iv) all right, title, and interest of Seller, if any, in an to any intangible personal property (including intellectual property (other than the name "World Class"), if any, without representation or warranty, to the extent any such intellectual property can be assigned or transferred without the joinder or consent of any third party) that is necessary or useful in connection with the ownership, improvement or operation of the Real Property, including permits, plans and specifications, licenses, and certificates of occupancy (clauses (ii), (iii), and (iv), together with the Real Property, collectively, the "Property") pursuant to the terms and conditions of the Bidding Procedures subject to approval by the Court in the Bankruptcy Case.

WHEREAS, Seller believes that the Property should be sold through an orderly sale and/or auction process as part of the Bankruptcy Case.

WHEREAS, Seller is willing to sell the Property to Purchaser, and Purchaser is willing to purchase the Property from Seller, on the terms and conditions set forth herein.

WHEREAS, Purchaser is the lender ("Lender") under that certain Loan Agreement, dated as of February 28, 2019, by and between Purchaser (as successor to JPMorgan Chase Bank, National Association) and the Debtor, as borrower, pursuant to which a principal loan balance (the "Loan") of $71,000,000 is outstanding (plus interest, fees and expenses), and Purchaser holds a perfected first-priority lien on substantially all of the Debtor's assets.

NOW, THEREFORE, in consideration of the mutual covenants, agreements, and conditions stated herein, the sufficiency of which is hereby acknowledged by the Parties hereto, Seller and Purchaser hereby agree as follows:

## AGREEMENT

1.  <u>Definitions</u>.  For purposes of this Agreement:

"<u>Affiliate</u>" means, with respect to any specified Person, any other Person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such specified Person, where "control" means the power, directly or indirectly, to direct or cause the direction of the management and policies of another Person, whether through the ownership of voting securities, by Contract, or otherwise.

"<u>Assumed Obligations</u>" has the meaning set forth in <u>Section 19</u>.

"<u>Auction</u>" has the meaning set forth in the Bid Procedures Order (as hereinafter defined) (including the Bidding Procedures attached thereto).

"<u>Bidding Procedures</u>" means the *Bid Procedures*, as approved by the Bid Procedures Order.

"<u>Business Day</u>" means any day, other than a Saturday, Sunday and any day which is a legal holiday under the laws of the State of Texas or is a day on which banking institutions located in the State of Texas are authorized or required by law or other governmental action to close.

"<u>Chapter 11 Plan</u>" means a chapter 11 plan, in form and substance reasonably satisfactory to Purchaser, that provides for the reorganization or liquidation of Seller and WC Braker Portfolio B, LLC.

"<u>Claim</u>" has the meaning under section 101(5) of the Bankruptcy Code.

"<u>Contract</u>" means any written agreement, contract, arrangement, commitment, promise, obligation, right, instrument, document or other similar understanding, including a Lease, which in each case is in writing and signed by parties intending to be bound thereby.

"<u>Credit Bid Amount</u>" means a credit bid pursuant to section 363(k) of the Bankruptcy Code in an amount equal to all principal, interest, default interest, fees and any other amounts outstanding under the Loan as of the Closing Date.

"Cure Costs" means with respect to any Available Contract, the Liabilities that must be paid or otherwise satisfied to cure all monetary defaults under such Available Contract to the extent required by section 365(b) of the Bankruptcy Code.

"Decree" means any judgment, decree, ruling, injunction, assessment, attachment, undertaking, award, charge, writ, executive order, administrative order, or any other order of any Governmental Authority.

"Effective Date" means 12:01 a.m. (Central Prevailing Time) on the date upon which Closing occurs.

Environmental Liability" means any Liability (a) resulting from or attributable to the actual or threatened release of hazardous materials into the environment or resulting from or attributable to exposure to hazardous materials; (b) resulting from or attributable to the generation, manufacture, processing, distribution, use, treatment, storage, release or threatened release, transport or handling of hazardous materials; or (c) otherwise arising under or related to environmental laws or the violation thereof.

"Escrow Agent" means Kurtzman Carson Consultants, LLC in its capacity as escrow agent.

"Governmental Authority" means any federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity.

"Indemnified Party" has the meaning set forth in Section 20.

"Indemnifying Party" has the meaning set forth in Section 20.

"IRC" means the Internal Revenue Code of 1986, as amended.

"Knowledge" shall mean the actual knowledge (without independent investigation or inquiry) of Seller, Trustee, or Purchaser, as applicable.

"Law" means any constitution applicable to, and any statute, treaty, code, rule, regulation, ordinance, or requirement of any kind of, any Governmental Authority.

"Liability" means all indebtedness, losses, Claims, damages, expenses, fines or other penalties, costs, royalties, proceedings, deficiencies, duties, obligations and other liabilities (including those arising out of any litigation, such as any settlement or compromise thereof or judgment or award therein) of a Person (whether absolute, accrued, contingent, fixed, liquidated or unliquidated, or otherwise, or whether known or unknown, or whether due or to become due, and whether in Contract, tort, strict liability or otherwise, and whether or not resulting from third-party claims).

"Lien" means any mortgage, pledge, lien, charge, security interest, option, right of first refusal, right of first offer, servitude, easement, hypothecation, restrictive covenant, encroachment, security agreement, equitable interest, earn-out, conditional sale or other title retention device or arrangement, deed of trust, or other similar encumbrance or restriction of any kind, in each case

whether contingent, fixed or otherwise or whether relating to any property or right or the income or profits therefrom.

"Litigation" means any action, cause of action, arbitration, suit, claim, charge, investigation, audit, demand, hearing or proceeding, whether civil, criminal, administrative, investigative or arbitral, whether at Law or in equity (including actions or proceedings seeking injunctive relief) and whether before any Governmental Authority.

"Material Adverse Effect" means any effect or change that has a material adverse effect on the condition of the Property, taken as a whole, other than any effects or changes arising from or related to: (a) general business or economic conditions in any of the geographical areas in which the Property is located; (b) national or international political or social conditions, including the engagement by any country in hostilities, whether commenced before or after the date hereof and whether or not pursuant to the declaration of a national emergency or war, or the occurrence of any military or terrorist attack; (c) financial, banking, or securities markets (including any disruption thereof or any decline in the price of securities generally or any market or index); (d) the occurrence of any act of god or other calamity or force majeure events (whether or not declared as such), including civil disturbance, embargo, natural disaster, fire, flood, hurricane, tornado, or other weather event; (e) changes in Law or accounting rules; (f) the taking of any action contemplated by this Agreement taken with the consent of the other Party; (g) any effects or changes as a result of the announcement or pendency of this Agreement; (h) the sale of any other assets or stores to any third parties by Seller or any of its Affiliates; (i) any effects or changes arising from or related to the breach of the Agreement by Purchaser; (j) any strike or labor dispute, or (k) any effect resulting from the filing of the Bankruptcy Case.

"OFAC" means the U.S. Treasury Department's Office of Foreign Assets Control.

"Permitted Lien" or "Permitted Liens" means, subject to the terms of the Sale Order, (i) the Liens set forth on Exhibit B attached hereto, (ii) the Leases, to the extent an Assumed Contract, (iii) liens for real estate taxes and special assessments which are not yet due and payable or delinquent, (iv) any matters or encumbrances shown, or would be shown, on an updated survey of the Property, and (v) any title defects, title exceptions, encumbrances, or other matters, in each case, of record and solely to the extent that the Property may not be sold free and clear of such interests or matters under section 363(f) of the Bankruptcy Code.

"Person" means an individual, a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization, or any other entity, including any Governmental Authority or any group of any of the foregoing.

"Prohibited Person" means any of the following: (a) a Person that is listed in the Annex to, or is otherwise subject to the provisions of, Executive Order No. 13224 on Terrorist Financing (effective September 24, 2001) (the "Executive Order"); (b) a Person owned or controlled by, or acting for or on behalf of any Person that is listed in the Annex to, or is otherwise subject to the provisions of, the Executive Order; (c) a Person that is named as a "specially designated national" or "blocked person" on the most current list published OFAC at its official website, http://www.treas.gov/offices/enforcement/ofac; (d) a Person that is otherwise the target of any

4

economic sanctions program currently administered by OFAC; or (e) a Person that is affiliated with any Person identified in clause (a), (b), (c) and/or (d) above.

"Property Tax" means any real estate property Taxes imposed by any Governmental Authority upon the Real Property, and any penalties or interest assessed with respect thereto.

"Qualified Bid" has the meaning set forth in the Bid Procedures Order (including the Bidding Procedures attached thereto).

"Qualified Bidder" has the meaning set forth in the Bid Procedures Order (including the Bidding Procedures attached thereto).

"Representative" means, when used with respect to a Person, the Person's controlled Affiliates and such Person's and any of the foregoing Persons' respective officers, directors, managers, members, shareholders, partners, employees, agents, representatives, and advisors (including financial advisors, bankers, consultants, legal counsel, and accountants).

"Seller Indemnified Parties" means Seller, Trustee, and their agents and representatives.

"Stalking Horse Bidder" has the meaning set forth in the Bid Procedures Order (including the Bidding Procedures attached thereto).

"Successful Bid" has the meaning set forth in the Bid Procedures Order (including the Bidding Procedures attached thereto).

"Successful Bidder" has the meaning set forth in the Bid Procedures Order (including the Bidding Procedures attached thereto).

"Targeted Closing Date" means the date that is three (3) Business Days after the Sale Order is entered.

"Tax" or "Taxes" means any United States federal, state, local or foreign income, gross receipts, license, payroll, employment, excise, stamp, occupation, premium, windfall profits, environmental (including taxes under section 59A of the IRC), customs duties, capital stock, franchise, profits, withholding, social security (or similar), unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated or other tax of any kind whatsoever, whether computed on a separate or consolidated, unitary or combined basis or in any other manner, including any interest, penalty or addition thereto, whether disputed or not.

"Tax Return" means any return, declaration, report, claim for refund or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

"Title Company" means Republic Title of Texas, Inc., or one or more nationally recognized title insurance company(ies) selected by Purchaser.

"Third Party" means any Person other than a Party to this Agreement or an Affiliate of a Party to this Agreement.

All capitalized terms not defined herein shall have the respective meanings set forth in the Bid Procedures Order (including the Bidding Procedures attached thereto).

2.      Purchase and Sale.

A.      Sale of Property.  On the terms and conditions set forth in this Agreement, Seller agrees to sell, assign, convey, and transfer to the Purchaser, and the Purchaser agrees to purchase from the Debtor, all rights, title, and interests held by the Debtor in the Property.

B.      Assignment of Contracts, Leases and Rights.

(i)      Set forth on Exhibit F is a list of all Contracts to which the Debtor is a party and that is included as part of the Property (the "Available Contracts"), which Exhibit F may be updated by Seller from time to time to add or remove any Contracts inadvertently included or excluded from such schedule.  Until the Closing Date, Purchaser, in its sole discretion by written notice to Seller, shall designate in writing which Available Contracts that Purchaser wishes Seller to assume and assign to Purchaser (the "Assumed Contracts") and subject to the right of Purchaser, at any time prior to the Closing Date, to determine that any Available Contracts previously designated as a Assumed Contract shall not be an Assumed Contract (as defined below) but instead shall be an Excluded Contract (as defined below).  Subject to Section 19(E), all Available Contracts that Purchaser does not designate in writing for assumption and assignment or which otherwise cannot be assumed and assigned to Purchaser shall not be considered Assumed Contracts or Property and shall automatically be deemed "Excluded Contracts."  Upon Purchaser's reasonable request, Seller shall provide additional information as to the Liabilities under the Contracts sufficient for Purchaser to make an informed assessment whether to accept an assignment and assumption of such Contract hereunder.

(ii)      In the event of a dispute as of the Closing Date regarding assumption and assignment of, or the proposed Cure Cost to be paid in respect of, any Contract proposed to be an Assumed Contract as set forth in Section 2(B)(i), Purchaser shall have the right to designate any Assumed Contract as an Excluded Contract at any time following the Closing Date in the event any such dispute is not resolved to Purchaser's satisfaction by entry of an order by the Court (or upon the consensual resolution of such dispute as may be agreed by Purchaser and such counterparty); provided, however, if the only such dispute is in respect of the proposed Cure Cost, then Purchaser may determine that such Contract shall be an Assumed Contract on the Closing Date, and Purchaser shall pay any applicable Cure Cost upon entry of an order by the Court resolving such dispute.  Upon an election by Purchaser to designate such previously Assumed Contract as an Excluded Contract in accordance with this Section 2(B)(ii), subject to Section 19(E), Purchaser shall have no liability or other obligation whatsoever to the counterparty to such Contract that may arise prior to or after the Closing Date.

(iii)      Seller shall use commercially reasonable efforts to assign, or cause to be assigned, the Assumed Contracts to Purchaser, including taking all actions required by the Court to obtain an order containing a finding that the proposed assumption and assignment of the

Assumed Contracts to Purchaser satisfies all applicable requirements of section 365 of the Bankruptcy Code.

(iv)     Except as to Assumed Contracts assigned pursuant to section 365 of the Bankruptcy Code, this Agreement shall not constitute an agreement to assign any Contract or any right thereunder if an attempted assignment, without the consent of a third party or Governmental Authority (each, a "Transfer Consent"), would constitute a breach or in any way adversely affect the rights of Purchaser or Seller thereunder.  If such Transfer Consent is not obtained or such assignment is not attainable pursuant to section 365 of the Bankruptcy Code, to the extent permitted and subject to any approval of the Court that may be required, Seller and Purchaser will cooperate in a mutually agreeable arrangement (at Purchaser's cost and expense) under which Purchaser would obtain the benefits and assume the obligations thereunder in accordance with this Agreement.

(v)     At Closing, (i) Seller shall, pursuant to the Sale Order and the Assignment and Assumption Agreement, assume and assign, or cause to be assigned, to Purchaser (the consideration for which is included in the Purchase Price) each of the Assumed Contracts that is capable of being assumed and assigned, (ii) subject to Section 2(B)(ii), Purchaser shall promptly pay all Cure Costs (if any) in connection with such assumption and assignment, and (iii) Purchaser shall assume and perform and discharge the Liabilities (if any) under the Assumed Contracts, pursuant to the Sale Order and the Assignment and Assumption Agreement.

3.     Purchase Price.

A.     The consideration for the transfer of the Property and the transactions contemplated hereby shall be (a) the assumption of the Assumed Obligations and (b) the Credit Bid Amount, which the Parties estimate to total $75,461,418 as of the Targeted Closing Date (the "Purchase Price" and together with (a) the "Consideration").

B.     The Purchase Price for the Property (subject to closing adjustments and allocation of costs as provided for herein) shall be paid in the following manner:

(i)     An initial deposit in the amount of 10% of the Purchase Price for any Qualified Bidder (the "Initial Deposit" or "Deposit") is due when Purchaser signs and submits this Agreement and is payable in immediately available funds and shall be delivered to the Escrow Agent who shall hold such Initial Deposit in trust for the Purchaser and not as property of the Seller's estate in a segregated, non-interest bearing account (the "Escrow Account"); provided, however, that if the Lender is Purchaser, then Purchaser shall not be required to pay such Deposit.  The money in the Escrow Account (the amount of which, the "Escrow Amount") shall be released by the Escrow Agent and delivered to either Purchaser or Seller, in accordance with the provisions of this Agreement and that certain Escrow Agreement, the form of which is attached hereto as Exhibit D (the "Escrow Agreement"). Pursuant to the Escrow Agreement, the Escrow Amount (together with all accrued investment income thereon, if any) shall be distributed as follows:

(1)     if the Closing (as hereinafter defined) shall occur, the Escrow Amount shall be paid to Seller and applied towards the Purchase

Price payable by Purchaser to Seller and all accrued investment income thereon, if any, shall be delivered to Seller at the Closing;

(2)     if this Agreement is terminated by Seller pursuant to Section 21(C)(ii), the Escrow Amount, together with all accrued investment income thereon, if any, shall be delivered to Seller; or

(3)     if this Agreement is terminated for any reason other than by Seller pursuant to Section 21(C)(ii), the Escrow Amount, together with all accrued investment income thereon, shall in each case be returned to Purchaser.

(ii)     The balance of the Purchase Price, exclusive of closing adjustments and costs (the "Balance"), is due at the closing of the sale of the Property as contemplated hereunder (the "Closing") and is payable in immediately available funds and shall be delivered to the Escrow Agent, who shall hold the Balance in the Escrow Account. The provisions of this Section 3(B) shall survive the Closing or sooner termination of this Agreement.

C.     The acceptance by Purchaser of the delivery of the Deed (as hereinafter defined) at Closing shall be deemed to be full performance and discharge of every agreement and obligation (either express or implied) on the part of the Seller to be performed pursuant to this Agreement and no representation, warranty or agreement, express or implied, of Seller shall survive the Closing except those which are herein specifically stated to survive the Closing.

4.     Bankruptcy Court Approval and Sale Order. The Parties' obligations to proceed to Closing and otherwise perform as set forth in this Agreement are expressly subject to approval by the Court pursuant to an order (the "Sale Order") in form and substance reasonably satisfactory to Purchaser.

5.     Bid Procedures Order. The Purchaser's right to purchase the Property is subject to entry of, and governed exclusively by an order entered by the Court (the "Bid Procedures Order"), a copy of which is attached hereto as Exhibit C. If there are any other Qualified Bids for the Property, the Seller will conduct an Auction at which Purchaser shall be a Qualified Bidder based on the offer set forth herein and the Seller shall select the highest or otherwise best Qualified Bid as the Successful Bid. If Purchaser is selected as the Successful Bidder, Seller shall take all steps to close and otherwise perform and consummate its obligations under this Agreement.

6.     Representations of Purchaser. Purchaser covenants, represents, and warrants to Seller that, as of the Effective Date:

A.     Organization of Purchaser; Good Standing. Purchaser is a limited liability company duly organized, validly existing, and in good standing under the Laws of the State of Delaware and has all requisite corporate or similar power and authority to own, lease, and operate its assets and to carry on its business as now being conducted.

B.     Authorization of Transaction. Purchaser has full power and authority (including full corporate or other entity power and authority) to execute and deliver this Agreement and all other agreements contemplated hereby to which it is a party and to perform its obligations

hereunder and thereunder. The execution, delivery, and performance of this Agreement and all other agreements contemplated hereby to which Purchaser is a party have been duly authorized by Purchaser. This Agreement (assuming due authorization and delivery by Seller) constitutes the valid and legally binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms and conditions, subject to applicable bankruptcy, insolvency, moratorium, or other similar Laws relating to creditors' rights and general principles of equity.

C.    Noncontravention.  Neither the execution and delivery of this Agreement, nor the consummation of the transactions contemplated hereby (including the assignments and assumptions referred to in Section 2(B)), will (a) conflict with or result in a breach of the organizational documents of Purchaser, (b) violate any Law or Decree to which Purchaser is subject in respect of the Property, or (c) result in a breach of, constitute a material default under, result in the acceleration of, create in any party the right to accelerate, terminate, modify or cancel, or require any notice under any Contract to which Purchaser is a party or to which it is bound, Purchaser is not required to give any notice to, make any filing with, or obtain any authorization, consent or approval of any Governmental Authority in order for the Parties to consummate the transactions contemplated by this Agreement, except where the failure to give notice, file or obtain such authorization, consent or approval would not, individually or in the aggregate, reasonably be expected to prevent, or materially impair or delay, Purchaser's ability to consummate the transactions contemplated hereby or perform its obligations hereunder on a timely basis.

D.    Litigation; Decrees.  There is no Litigation pending or, to Purchaser's Knowledge, threatened that challenges the validity or enforceability of this Agreement or seeks to enjoin or prohibit consummation of the transactions contemplated hereby. Purchaser is not subject to any outstanding Decree that would prevent or materially impair or delay Purchaser's ability to consummate the transactions contemplated hereby or perform its obligations hereunder on a timely basis.

E.    No Prohibited Person.  Neither Purchaser nor any of its brokers or other agents acting in any capacity in connection with the transactions contemplated by this Agreement is or will be (a) conducting any business or engaging in any transaction or dealing with any person appearing on the OFAC list of restrictions and Prohibited Person, including the making or receiving of any contribution of funds, goods or services to or for the benefit of any Prohibited Person; (b) dealing in, or otherwise engaging in any transaction relating to, any property or interests in property blocked pursuant to Executive Order No. 13224 dated September 24, 2001, relating to "Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism"; or (c) engaging in or conspiring to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempting to violate, any of the prohibitions set forth in any U.S. anti-money laundering law.

7.    Representations and Covenants of Seller.  Seller covenants, represents, and warrants to Purchaser that, as of the Effective Date and as of the Closing Date, the statements contained in this Section 7 are true and correct with respect to Seller and the Debtor, to the best of Trustee's Knowledge:

A.    <u>Organization of Debtor; Good Standing</u>.  The Debtor is a limited liability company, duly organized, validly existing and in good standing under the laws of Delaware.  Seller has, subject to the necessary authority from the Court, all requisite corporate or other organizational power and authority to own, lease and operate its assets and to carry on its business as now being conducted.

B.    <u>Authorization of Transaction</u>.  Subject to the Court's entry of the Sale Order and any other necessary order by the Court to close the sale of the Property, Seller has full power and authority (including full corporate or other organizational power and authority) to execute and deliver this Agreement and all other agreements contemplated hereby to which Seller is a party and to perform its obligations hereunder and thereunder.  The execution, delivery, and performance of this Agreement and all other agreements contemplated hereby to which Seller is a party have been duly authorized by the Trustee on behalf of the Seller.  Upon due execution hereof by the Trustee, this Agreement (assuming due authorization and delivery by Purchaser) shall constitute, subject to the Court's entry of the Sale Order and any other necessary order to close the sale of the Property, the valid and legally binding obligation of Seller, enforceable against Seller in accordance with its terms and conditions, subject to applicable bankruptcy, insolvency, moratorium, or other similar laws relating to creditors' rights and general principles of equity.

C.    <u>Noncontravention; Government Filings</u>.  To Trustee's Knowledge, neither the execution and delivery of this Agreement, nor the consummation of the transactions contemplated hereby (including the assignments and assumptions referred to in <u>Section 2(B)</u>), will (a) conflict with or result in a breach of the organizational documents of Seller, (b) subject to the entry of the Sale Order and any other necessary order to close the sale of the Property, materially violate any Law or Decree to which Seller is subject in respect of the Property, or (c) subject to the entry of the Sale Order and any other necessary order to close the sale of the Property, result in a material breach of, constitute a material default under, result in the acceleration of, create in any party the right to accelerate, terminate, modify or cancel, or require any notice under any material Contract to which Seller is a party or to which the Property is subject.  Except as required or pursuant to the Bankruptcy Code, the Sale Order and any other necessary order of the Court to close the sale of the Property (which Seller reasonably anticipates receiving on or prior to the Outside Date (as hereinafter defined)), to Trustee's Knowledge, Seller is not required to give any notice to, make any filing with, or obtain any authorization, consent or approval of any Governmental Authority in order for the Parties to consummate the transactions contemplated by this Agreement, except where the failure to give notice, file or obtain such authorization, consent or approval would not, individually or in the aggregate, reasonably be expected to prevent, or materially impair or delay, Seller's ability to consummate the transactions contemplated hereby or perform its obligations hereunder on a timely basis.

D.    <u>Litigation; Decrees</u>.  Other than the Bankruptcy Case to Trustee's Knowledge, there is no Litigation pending or threatened, that challenges the validity or enforceability of this Agreement or seeks to enjoin or prohibit consummation of the transactions contemplated hereby; and other than the Bankruptcy Case, Seller is not subject to any outstanding Decree that would prevent or materially delay Seller's ability to consummate the transactions contemplated hereby or perform in any material respect its obligations hereunder.

E.    Taxes. Seller is not a foreign person within the meaning of section 1445 of the IRC.

F.    No Prohibited Person.  Neither the Trustee, nor to Trustee's Knowledge, Seller nor any of their brokers or other agents acting in any capacity in connection with the transactions contemplated by this Agreement is or will be (a) conducting any business or engaging in any transaction or dealing with any person appearing on the OFAC list of restrictions and Prohibited Person, including the making or receiving of any contribution of funds, goods or services to or for the benefit of any Prohibited Person; (b) dealing in, or otherwise engaging in any transaction relating to, any property or interests in property blocked pursuant to Executive Order No. 13224 dated September 24, 2001, relating to "Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism"; or (c) engaging in or conspiring to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempting to violate, any of the prohibitions set forth in any U.S. anti-money laundering law.

G.    No Plan Assets.  To Trustee's Knowledge, Seller does not hold "plan assets" within the meaning of the Department of Labor regulations located at 29 C.F.R. section 2510.3-101, as modified by section 3(42) of the Employee Retirement Income Security Act of 1974, as amended.

8.    Pre-Closing Covenants.  Upon the terms and subject to the conditions set forth in this Agreement, Seller shall use (except as otherwise expressly set forth herein) commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, and to assist and cooperate with the other Parties in doing, all things necessary, proper, or advisable to consummate and make effective, in the most expeditious manner practicable, the transactions contemplated hereby (including by giving, or causing to be given, any notices to, making any filings with, and using commercially reasonable efforts to obtain any consents of Governmental Authorities, as applicable, as are necessary and appropriate to consummate the transactions contemplated hereby).

9.    Other Covenants.

A.    Further Assurances.  In case at any time after the Closing any further action is necessary to carry out the purposes of this Agreement, each of the Parties will, at the requesting Party's sole cost and expense, take such further action (including the execution and delivery of such other reasonable instruments of sale, transfer, conveyance, assignment, assumption and confirmation, providing materials and information) as the other Party may reasonably request which actions shall be reasonably necessary to transfer, convey or assign to Purchaser the Property free and clear of all Liens (other than any Permitted Liens), Claims and interests.

B.    Certain Tax Matters.

(i)    Transfer Taxes.  Purchaser shall pay any stamp, documentary, filing, recording, registration, sales, use, transfer, added-value or other non-income Tax, fee or governmental charge (a "Transfer Tax") imposed under applicable law in connection with the transactions contemplated hereby, if any.  The Parties hereto shall cooperate in making, in a timely manner, all Tax Returns, filings, reports, forms and other documentation as are necessary or appropriate to comply with all applicable Laws in connection with the

payment of Transfer Taxes and shall cooperate in good faith to minimize, to the fullest extent possible under such Laws, the amount of any such Transfer Taxes.

(ii)     Property Tax Adjustment.  All ad valorem and other real estate taxes with respect to the Property (collectively, the "Taxes") shall be prorated as of 12:01 a.m. on the Closing Date.  If the Closing shall occur before the tax rate is fixed for the then current year, the apportionment of the Taxes shall be made upon the basis of the tax rate for the immediately preceding tax year applied to the latest assessed valuation of the Property, and such apportionment.  Purchaser shall pay when due, all assessments and/or taxes for a change in the use of the Property after the Closing Date and shall further indemnify, defend and hold Seller harmless from any claim, expense or liability relating to or arising out of such change in use of the Property.  All such proration of Taxes shall be final as of the Closing Date.  All rights to credits, refunds and reimbursements of Taxes for any time period prior to the Closing Date shall be the property of Seller, and Purchaser shall have no rights to such credit, refund, or reimbursement or any right to offset or deduction to the Purchase Price regarding any credit, refund, or reimbursement of Taxes due to Seller.

(iii)     Property Tax Refunds.  Seller shall be entitled to receive all refunds (or credits for overpayments) of Property Taxes, including any interest paid thereon (collectively "Refunds") attributable to any fiscal tax period ending prior to the Closing Date, net of any costs, fees, expenses or Taxes incurred in obtaining such Refunds.  Purchaser shall be entitled to receive all Refunds attributable to any fiscal tax period commencing after the Closing Date. Any Refunds received by Purchaser or Seller attributable to the Closing Date, net of any costs, fees, expenses or Taxes incurred in obtaining such Refunds, shall be apportioned to Seller.  Purchaser and Seller each shall execute all documents, take reasonable additional actions and otherwise reasonably cooperate as may be necessary to obtain the Refunds contemplated by this Section 9(B)(iii), and shall promptly pay any such Refund it receives which belongs to the other party under the terms hereof after receiving such Refund. This Section 9(B)(iii) shall survive Closing.

C.     Cure Notice.  Seller shall serve on all non-Debtor counterparties to all of their Contracts a notice specifically stating that Seller is or may be seeking the assumption and assignment of such Contracts and shall notify such non-Debtor counterparties of the deadline for objecting to the Cure Costs pursuant to the Bid Procedures Order.

D.     Property Information.  Purchaser acknowledges that all information, documents, and materials regarding the Property provided by Seller or Trustee (the "Property Information") is proprietary and confidential prior to the Closing and has been delivered to Purchaser to assist Purchaser in determining the feasibility of purchasing the Property, obtaining financing and/or investors for the acquisition of the Property through a private offering or otherwise.  Prior to the Closing, Purchaser shall not use the Property Information for any purpose other than as set forth in the preceding sentence.  Purchaser shall not disclose the Property Information to any person other than to those persons who are responsible for determining the feasibility of Purchaser's acquisition of the Property, which includes without limitation Purchaser's professional advisors and any lenders and investors who have agreed to preserve the confidentiality of such information as required hereby; provided, however, Purchaser's obligation to keep such information confidential shall not apply to the extent necessary or required under any applicable law or in

12

connection with any judicial process regarding any legal action, suit, or proceeding arising out of or relating to this Agreement. Notwithstanding anything herein to the contrary, all Property Information is made available without representation by Seller, or Trustee, or recourse to Seller, or Trustee, and Purchaser relies on such information at its own risk. Without limiting the generality of the foregoing, Seller, nor Trustee, makes no representation or warranty (express or implied) as to the truth or accuracy of the Property Information except as expressly set forth herein, and Purchaser will rely solely on its own investigation as to the matters contained therein. If Purchaser and Seller enter into that certain Confidentially and Non-Disclosure Agreement prior to entering into this Agreement (the "NDA"), then to the extent there is any direct conflict between the terms of this Section 9(D) and the NDA, the terms of the NDA shall control.

E. <u>Employees</u>. Seller shall retain all liability with respect to its employees and Purchaser will not assume, and has not assumed, any employees, any union contracts or any obligations relating to any of the foregoing. This Section 9(E) shall survive closing

10. <u>Conditions to Obligation to Close.</u>

A. <u>Conditions to Purchaser's Obligations</u>. Purchaser's obligation to consummate the transactions contemplated hereby in connection with the Closing is subject to satisfaction or waiver prior to Closing of the following conditions:

(i) the representations and warranties set forth in Section 7 shall have been true and correct on the Execution Date and as of the Closing Date, except where the failure of such representations and warranties to be so true and correct has not resulted in a Material Adverse Effect;

(ii) Seller shall have performed and complied with its covenants and agreements hereunder through the Closing in all material respects;

(iii) the Court shall have entered the Sale Order approving the Sale to the Purchaser and no order staying, reversing, modifying, or amending the Sale Order shall be in effect on the Closing Date,

(iv) if the Stalking Horse Bidder is the Successful Bidder then the Chapter 11 Plan shall have been consummated (or shall be consummated concurrently with the Closing);

(v) no material Decree shall be in effect that prohibits consummation of the transactions contemplated by this Agreement; and

(vi) each delivery contemplated by Section 11(A) to be delivered to Purchaser or Escrow Agent shall have been delivered.

B. <u>Conditions to Seller's Obligations</u>. Seller's obligations to consummate the transactions contemplated hereby in connection with the Closing are subject to satisfaction or waiver prior to Closing of the following conditions:

13

(i)        the representations and warranties set forth in <u>Section 6</u> shall have been true and correct in all material respects on the Effective Date and as of the Closing Date;

(ii)        Purchaser shall have performed and complied with its covenants and agreements hereunder through the Closing in all material respects;

(iii)        the Court shall have entered the Sale Order approving the Sale to Purchaser and no order staying, reversing, modifying, or amending the Sale Order shall be in effect on the Closing Date.

(iv)        no material Decree shall be in effect that prohibits consummation of any of the transactions contemplated by this Agreement; and

(v)        each payment contemplated by <u>Section 3(B)</u> to be made to Escrow Agent shall have been made, and each delivery contemplated by <u>Section 11(B)</u> to be delivered to Purchaser shall have been delivered.

C.        <u>No Frustration of Closing Conditions</u>.  Neither Purchaser nor Seller may rely on the failure of any condition to their respective obligations to consummate the transactions contemplated hereby set forth in <u>Section 11(A)</u> or <u>Section 11(B)</u>, as the case may be, to be satisfied if such failure was caused by such Party's or its Affiliates' failure to use its commercially reasonable efforts to satisfy the conditions to the consummation of the transactions contemplated hereby or by any other breach of a representation, warranty, or covenant hereunder; provided, however, Seller's and Purchaser's obligations to consummate the transaction shall at all times be subject to the Bankruptcy Case and any order or ruling by the Court.

11.        <u>Closing Deliveries</u>.

A.        At Closing, Seller shall deliver to Purchaser each of the following, executed and acknowledged, as appropriate: (a) the Sale Order; (b) a duly executed Deed substantially in the form attached hereto as <u>Exhibit E</u> (individually and/or collectively as the context may require, the "<u>Deed</u>"); (c) one or more assignment and assumption agreements, in the form attached hereto as <u>Exhibit G</u> (the "<u>Assignment and Assumption Agreements</u>") (d) a settlement sheet; (e) a bill of sale for all personal property to be sold pursuant to this Agreement, if any, duly executed by Seller; (f) a sworn statement provided by Seller that it is not a foreign person and containing such other information as may be required by section 1445 of the IRC and regulations thereunder; (g) copies of all property records and other applicable documents in Seller's possession with respect to the Property; and (h) such other documents reasonably requested by Title Company and which are consistent with this Agreement to effectuate the conveyance of real property.

B.        At Closing, Purchaser shall deliver to Seller each of the following, executed and acknowledged, as appropriate: (a) a settlement sheet; (b) all transfer tax documentation which are legally required in connection with the payment of all state or local real property Transfer Taxes that are payable or arise as a result of the consummation of the transactions contemplated by this Agreement, at Closing; and (c) such other documents reasonably requested by Title Company and which are consistent with this Agreement to effectuate the conveyance of real property.  At Closing, Purchaser shall also deliver the Balance of the Purchase Price in accordance with <u>Section 3</u> hereof.

14

12.     <u>Closing Date and Office</u>.

A.     The Closing shall take place in escrow through the Title Company on the Targeted Closing Date or as soon as reasonably practicable thereafter, subject to the terms of this Agreement (the date upon which the Closing actually occurs hereunder is referred to as the "<u>Closing Date</u>"). For purposes of this Agreement and the transactions contemplated hereby, the Closing will be deemed to occur and be effective, and title to and risk of loss associated with the Property, shall be deemed to occur at 12:01 a.m., Central Standard time, on the Closing Date.

B.     In the event the Court has not entered the Sale Order by the Outside Date for any reason other than a default by a Party hereto, the Parties may agree, in writing, to extend the Closing Date or terminate this Agreement, with no consequences to the Seller and/or the Debtor's estate. In the event of such termination, the Seller shall immediately refund the Deposit to the Purchaser and neither Party shall have any further obligation hereunder other than any obligations that expressly survive termination of this Agreement. In the event the Court rejects Purchaser's offer as set forth herein, the rights and remedies of the Parties shall be as set forth in the Bid Procedures Order (including the Bidding Procedures attached thereto). Time is of the essence with respect to Closing and this Agreement.

13.     <u>Subject to Provisions</u>. At Closing, Seller shall convey title to the Property free and clear of all Liens (other than any Permitted Liens), Claims and interests.

14.     <u>Survey and Title</u>. Purchaser may order a survey of the Real Property, at its sole cost and expense. Purchaser shall pay all insurance premiums for any Owner's Policy of Title Insurance or update to any previous policy, if Purchaser elects to obtain the same.

15.     <u>Destruction, Damage, or Taking Before Closing</u>. If, before the Closing Date, all or any material part of the Property is destroyed or damaged, or becomes subject to condemnation or eminent domain proceedings, then Seller shall promptly notify Purchaser thereof (a "<u>Seller's Notice</u>"). Purchaser may elect to proceed with the Closing (subject to the other provisions of this Agreement) by delivering notice thereof to Seller within ten (10) Business Days after receipt of a Seller's Notice, but Purchaser shall be entitled to all insurance proceeds  or assignment of the condemnation awards, if any, payable as a result of such damage or taking and, to the extent the same may be necessary or appropriate, Seller shall assign to Purchaser at Closing Seller's rights, if any, to such proceeds or awards. If, within five (5) Business Days after Purchaser's receipt of a Seller's Notice, Purchaser delivers to Seller written notice of Purchaser's termination of this Agreement, then the Initial Deposit then on deposit shall be immediately returned to Purchaser and the parties hereto shall have no further rights or obligations, other than those that by their terms survive the termination of this Agreement. If, within five (5) Business Days after Purchaser's receipt of a Seller's Notice, Purchaser does not deliver written notice of Purchaser's termination of this Agreement, Purchaser shall have waived its right to terminate this Agreement under this <u>Section 15</u>. If, before the Closing Date, less than a material part of the Property is destroyed or damaged, or becomes subject to condemnation or eminent domain proceedings, then Seller shall notify Purchaser thereof, Purchaser shall have no right to terminate this Agreement, and in such case (or if Purchaser is deemed to have waived its right to terminate this Agreement under this <u>Section 15</u> as provided in the preceding sentence), the parties shall proceed with the Closing, but Purchaser shall be entitled to all insurance proceeds (together with a credit for all applicable

insurance deductibles) or condemnation awards, if any, payable as a result of such damage or taking and, to the extent the same may be necessary or appropriate, Seller shall assign to Purchaser at Closing Seller's rights to such proceeds or awards.  For the purposes of this <u>Section 15</u>, damage or a taking shall be considered to be "<u>material</u>" if the value of the portion of the Property damaged or taken exceeds five percent (5%) of the Purchase Price.

16.     <u>Acceptance of State and Municipal Department Violations and Orders</u>.  Purchaser accepts the Property subject to all notes or notices of violations, known or unknown, of law or municipal ordinances, orders or requirements noted in or issued by any governmental department having authority as to lands, housing, buildings, fire and health and labor conditions affecting the Property.  This provision shall survive Closing.

17.     <u>Closing Adjustments and Costs</u>.

      A.     Purchaser shall pay the cost of all recordation taxes, title searches, title commitments, title policies, survey(s), investigations, tests and closing costs of the Title Company.

      B.     If any amounts are payable in installments or any assessments are or may become payable in installments, all such installments due through the Closing together with the accrued but unpaid portion of any other installments not yet due as of the Closing shall be prorated based on the periods of time covered by such installments occurring before and after the Closing Date.

      C.     All current rents, additional rents, operating expenses, common area charges, real estate taxes, and other sums actually paid under the Leases for the month of Closing will be prorated as of 12:01 a.m. on the Closing Date.  Subsequent to the Closing, all rents and other income actually received by Purchaser, shall first be applied to current rents and other amounts due to Purchaser from tenants or Seller, then to any post-Closing delinquent rent or additional rent, with the balance paid by Purchaser to Seller, within thirty (30) days following Purchaser's receipt thereof, to the extent, and only to the extent of any rental delinquencies owed by any such tenant to Seller. For the avoidance of doubt, Purchaser will have no obligation to institute any litigation or other remedies under the Lease or applicable law or to threaten the same in order to collect delinquent rents or other amounts owed to Seller, and Purchaser shall not retain any amounts to which the Seller is entitled. If, subsequent to the Closing, any rents or other income relating to the Property for the post-Closing period are received by Seller, Seller shall immediately remit the same, or Purchaser's pro rata share thereof calculated as aforesaid, to Purchaser.  If pass-throughs or percentage allocations to tenants of space under any Leases for operating costs, taxes, insurance or any other expense or cost, or amounts are determined under such Leases based upon Seller, or other, estimates, and such Leases further provide for a periodic accounting and adjustment based upon actual operating costs, taxes, insurance or other expenses or costs, and the Closing shall occur before the accounting and adjustment of such items for the then current year has occurred, the proration of such items hereunder shall be upon the basis of the estimates then being used by Seller.  All prorations shall be made based on the number of calendar days in such year or month, as the case may be, and all prorations shall be final, without any adjustment or true-up, as of the Closing Date.

D.      Seller will pay to Purchaser, in cash at Closing or as a credit against the Purchase Price (or if in the case of a security deposit in the form of a letter of credit, assign such letter of credit), the amount of any security deposits held by Seller pursuant to the Leases on the Closing Date.

18.     [Intentionally Deleted.]

19.     <u>Assumption by Purchaser</u>.  At Closing, Purchaser shall assume and hereby agrees to fulfill, perform, pay and discharge (or cause to be fulfilled, performed, paid or discharged) the following obligations and Liabilities (and only the following obligations and Liabilities) (collectively, the "<u>Assumed Obligations</u>"):

A.      all of the Seller's Liabilities (including Environmental Liabilities) under the Property that are attached to or run with the Property to the extent such Liabilities that result from acts or omissions first arising from and after the Closing;

B.      all of the Seller's obligations or Liabilities under the Assumed Contracts to the extent attributable to periods from and after the Closing;

C.      all continuing obligations with respect to any Cure Costs required to be paid by the Seller in accordance with <u>Section 2(B)</u> in respect to any Assumed Contracts;

D.      all Taxes, Property Taxes and Transfer Taxes that are the responsibility of Purchaser pursuant to <u>Section 9</u>; and

E.      all damages, if any, pursuant to section 365(h) of the Bankruptcy Code in respect of any Lease which is designated by Purchaser as an Excluded Contract.

The assumption by Purchaser of the Assumed Obligations shall not, in any way, enlarge the rights of any Third Parties relating thereto.

20.     <u>Indemnification; Survival</u>.

A.      <u>Indemnities of Purchaser</u>.  From and after the Closing, subject to the provisions and limitations set forth in <u>Sections 20(D)</u> through <u>20(H)</u> (inclusive), Purchaser shall defend, indemnify and hold harmless Seller, Trustee, and their agents and representatives (collectively, "<u>Seller Indemnified Parties</u>") from and against any and all Liabilities, whether or not relating to Third Party Claims or incurred, directly or indirectly, in the investigation or defense of any of the same or in asserting, presenting or enforcing any of their respective rights hereunder resulting from:

(i)      any breach by Purchaser of its representations or warranties contained in <u>Section 6</u> or in any certificate furnished by or on behalf of Purchaser in connection with this Agreement;

(ii)     any breach by Purchaser of its covenants, obligations or agreements under this Agreement (including, for the avoidance of doubt, any other indemnity obligations of Purchaser and its Affiliates contained in this Agreement, including pursuant to <u>Section 23D</u>); and

17

(iii)     the Assumed Obligations.

B.     <u>Express Negligence</u>.  THE INDEMNIFICATION PROVIDED FOR IN THIS AGREEMENT SHALL BE APPLICABLE WHETHER OR NOT THE LIABILITIES, LOSSES, COSTS, EXPENSES AND DAMAGES IN QUESTION AROSE OR RESULTED SOLELY OR IN PART FROM THE SOLE, ACTIVE, PASSIVE, CONCURRENT OR COMPARATIVE NEGLIGENCE, STRICT LIABILITY OR OTHER FAULT OR VIOLATION OF LAW OF OR BY ANY SELLER INDEMNIFIED PARTY; PROVIDED, HOWEVER, SUCH PROVISIONS SHALL NOT APPLY TO LIABILITIES, LOSSES, COSTS, EXPENSES AND DAMAGES TO THE EXTENT ARISING OUT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE SELLER INDEMNIFIED PARTIES.  PURCHASER AND THE SELLER ACKNOWLEDGE THAT THIS STATEMENT COMPLIES WITH THE EXPRESS NEGLIGENCE RULE AND IS CONSPICUOUS.

C.     <u>Release</u>.  PURCHASER, ITS SUCCESSORS AND ASSIGNS, UPON CLOSING, SHALL BE DEEMED TO HAVE WAIVED, RELINQUISHED AND RELEASED, SELLER (AND SELLER'S OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES AND AGENTS AND SELLER INDEMNIFIED PARTIES) FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, CAUSES OF ACTION, LOSSES, DAMAGES, LIABILITIES, COSTS, AND EXPENSES (INCLUDING ATTORNEYS' FEES AND COURT COSTS) OF ANY AND EVERY KIND OR CHARACTER, KNOWN OR UNKNOWN, WHICH PURCHASER MIGHT HAVE ASSERTED OR ALLEGED AGAINST SELLER (OR SELLER'S AFFILIATES) AT ANY TIME BY REASON OF OR ARISING OUT OF ANY LATENT OR PATENT CONSTRUCTION DEFECTS OR PHYSICAL CONDITIONS, VIOLATIONS OF ANY APPLICABLE LAWS (INCLUDING ANY ENVIRONMENTAL LAWS) AND ANY AND ALL OTHER ACTS, OMISSIONS, EVENTS, CIRCUMSTANCES, OR MATTERS REGARDING THE PHYSICAL CONDITION OF THE PROPERTY.

D.     <u>Indemnification Procedures</u>.  All claims for indemnification under <u>Section 23(D)</u>, and <u>Section 20(A)</u> shall be asserted and resolved as follows:

(i)     For purposes of this Agreement, the term "Indemnifying Party" means Purchaser, and the term "Indemnified Party" when used in connection with particular Liabilities shall mean Seller or the Person(s) having the right to be indemnified with respect to such Liabilities by Purchaser pursuant to <u>Section 20(A)</u> or <u>Section 23(D)</u>.

(ii)     To make claim for indemnification under <u>Section 20(A)</u> or <u>Section 23(D)</u>, an Indemnified Party shall notify the Indemnifying Party of its claim under this <u>Section 20(D)</u> including the specific details of and specific basis under this Agreement for its claim (the "<u>Claim Notice</u>").  In the event that the claim for indemnification is based upon a claim by a Third Party against the Indemnified Party (a "<u>Third Party Claim</u>"), the Indemnified Party shall provide its Claim Notice promptly after the Indemnified Party has Knowledge of the Third Party Claim and shall enclose a copy of all papers (if any) served with respect to the Third Party Claim; provided, that the failure of any Indemnified Party to give notice of a Third Party Claim as provided in this Section shall not relieve the Indemnifying Party of its obligations under <u>Section 20(A)</u> or <u>Section 23(D)</u> (as applicable) except to the extent such failure results in insufficient time being available to permit the Indemnifying Party to effectively defend against the Third Party Claim or

18

otherwise materially prejudices the Indemnifying Party's ability to defend against the Third Party Claim.  In the event that the claim for indemnification is based upon an inaccuracy or breach of a representation, warranty, covenant, obligations or agreement, the Claim Notice shall specify the representation, warranty, covenant, obligation or agreement that was inaccurate or breached.

      (iii)     In the case of a claim for indemnification based upon a Third Party Claim, the Indemnifying Party shall have 30 days from its receipt of the Claim Notice to notify the Indemnified Party whether it admits or denies its liability to defend the Indemnified Party against such Third Party Claim at the sole cost and expense of the Indemnifying Party.  The Indemnified Party is authorized, prior to and during such 30 day period, at the expense of the Indemnifying Party, to file any motion, answer or other pleading that it shall deem necessary or appropriate to protect its interests or those of the Indemnifying Party and that is not prejudicial to the Indemnifying Party.

      (iv)     If the Indemnifying Party admits its liability to defend the Indemnified Party against a Third Party Claim, it shall have the right and obligation to diligently defend, at its sole cost and expense, such Third Party Claim.  The Indemnifying Party shall have full control of such defense and proceedings, including any compromise or settlement thereof.  If requested by the Indemnifying Party, the Indemnified Party shall cooperate in contesting any Third Party Claim that the Indemnifying Party elects to contest.  The Indemnified Party may participate in, at its own expense, but subject to the Indemnifying Party's full control of, any defense or settlement of any Third Party Claim controlled by the Indemnifying Party pursuant to this Section); provided, however, that the Indemnified Party shall not be required to bring any counterclaim or cross complaint against any Person.  An Indemnifying Party shall not, without the prior written consent of the Indemnified Party, (i) settle any Third Party Claim or consent to the entry of any judgment or order with respect thereto which does not result in a final resolution of the Indemnified Party's Liability in respect of such Third Party Claim (including, in the case of a settlement, an unconditional written release of the Indemnified Party from all Liability in respect of such Third Party Claim), or (ii) settle any Third Party Claim or consent to the entry of any judgment or order with respect thereto in any manner that may materially and adversely affect the Indemnified Party (other than as a result of money damages covered by the indemnity).

      (v)     If the Indemnifying Party does not admit its liability to defend the Indemnified Party against the Third Party Claim, but fails to diligently prosecute or settle such Third Party Claim, then the Indemnified Party shall have the right to defend against the Third Party Claim at the sole cost and expense of the Indemnifying Party, with counsel of its choosing, subject to the right of the Indemnifying Party to admit its liability and assume the defense of the Third Party Claim at any time prior to settlement or final determination thereof.  If the Indemnifying Party has not yet admitted its liability to defend the Indemnified Party against the Third Party Claim, the Indemnified Party shall send written notice to the Indemnifying Party of any proposed settlement, unless the proposed settlement is solely for money damages and results in a final resolution, and the Indemnifying Party shall have the option for ten days following receipt of such notice to (i) admit in writing its liability to indemnify the Indemnified Party from and against the liability and consent to such settlement, (ii) if liability is so admitted, reject, in its reasonable judgment, the proposed settlement, or (iii) deny liability. Any failure to respond to such notice by the Indemnified Party within such ten day-period shall be deemed to be an election under subsection (iii) above.

(vi)     In the case of a claim for indemnification not based upon a Third Party Claim, the Indemnifying Party shall have 30 days from its receipt of the Claim Notice to (i) cure the Liabilities complained of, (ii) admit its liability for such Liability or (iii) dispute the claim for such Liabilities. If the Indemnifying Party does not notify the Indemnified Party within such 30 day period that it has cured the Liabilities or that it disputes the claim for such Liabilities, the amount of such Liabilities shall conclusively be deemed a liability of the Indemnifying Party hereunder.

E.     <u>Survival</u>.

(i)     The representations and warranties of the Seller in <u>Section 7</u> shall terminate at the Closing.  All covenants, obligations and agreements of the Seller in this Agreement shall terminate at Closing unless otherwise provided herein.

(ii)     Subject to <u>Section 20(E)(i)</u> and except as set forth in <u>Section 20(E)(iii)</u>), the remainder of this Agreement shall survive the Closing.  Representations, warranties, covenants, obligations and agreements shall be of no further force and effect after the date of their expiration as set forth in this Section; provided, that there shall be no termination of any bona fide claim asserted pursuant to this Agreement with respect to such a representation, warranty, covenant, obligation or agreement prior to its expiration date.

(iii)     The indemnities in <u>Section 20(A)(i)</u> and <u>Section 20(A)(ii)</u> shall terminate as of the termination date of each respective representation, warranty, covenant or agreement that is subject to indemnification.  Purchaser's indemnities set forth in <u>Section 20(A)(iii)</u>) shall survive the Closing without time limit.  Notwithstanding the foregoing, there shall be no termination of any bona fide claim asserted pursuant to the indemnities in <u>Section 20(A)</u> prior to the date of termination for such indemnity.

F.     <u>Non-Compensatory Damages</u>.     NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, NEITHER THE PURCHASER NOR THE SELLER INDEMNIFIED PARTIES SHALL BE ENTITLED TO RECOVER FROM THE OTHER PARTY OR SUCH OTHER PARTY'S AFFILIATES ANY INDIRECT, CONSEQUENTIAL, SPECIAL, PUNITIVE, INCIDENTAL, SPECULATIVE OR EXEMPLARY DAMAGES OR DAMAGES FOR LOST PROFITS OR LOSS OF BUSINESS OPPORTUNITY OF ANY KIND ARISING UNDER, RELATED TO OR IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY, EXCEPT TO THE EXTENT ANY SUCH PERSON SUFFERS SUCH DAMAGES (INCLUDING COSTS OF DEFENSE AND REASONABLE ATTORNEYS' FEES INCURRED IN CONNECTION WITH THE DEFENSE OF SUCH DAMAGES) TO A THIRD PARTY, WHICH DAMAGES (INCLUDING COSTS OF DEFENSE AND REASONABLE ATTORNEYS' FEES INCURRED IN CONNECTION WITH THE DEFENSE OF SUCH DAMAGES) SHALL NOT BE EXCLUDED BY THIS PROVISION AS TO RECOVERY HEREUNDER. SUBJECT TO THE PRECEDING SENTENCE, AND NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, EACH OF SELLER, ON BEHALF OF ITSELF AND THE SELLER INDEMNIFIED PARTIES, AND PURCHASER, ON BEHALF OF ITSELF AND THE PURCHASER GROUP, WAIVES ANY RIGHT TO RECOVER INDIRECT, CONSEQUENTIAL, SPECIAL, PUNITIVE, INCIDENTAL, SPECULATIVE AND EXEMPLARY DAMAGES, INCLUDING DAMAGES

FOR LOST PROFITS OR LOSS OF BUSINESS OPPORTUNITY OF ANY KIND, ARISING IN CONNECTION WITH OR WITH RESPECT TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.  THIS SECTION SHALL NOT RESTRICT ANY PARTY'S RIGHT TO OBTAIN SPECIFIC PERFORMANCE OR ANY INJUNCTION IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THIS AGREEMENT.

H.    <u>Insurance</u>.  The amount of any Liabilities for which any Indemnified Party is entitled to indemnification under this Agreement or in connection with or with respect to the transactions contemplated by this Agreement shall be reduced by any corresponding insurance proceeds, from insurance policies carried by such Indemnified Party or its Affiliates, that are actually realized by such Indemnified Party from Third Party insurers with respect to such Liabilities.

21.    <u>Events of Default</u>.

A.    Purchaser shall be in default under this Agreement if: (i) Purchaser fails to pay the balance of the Purchase Price on or before the Closing Date provided that Seller has satisfied all conditions to Closing set forth in <u>Section 10(A)</u>; or (ii) Purchaser fails cure such breach of any term, condition, or covenant of this Agreement within 5 days after receiving notice from Seller of such breach.

B.    Seller shall be in default under this Agreement if Seller fails to deliver the Property at the Closing provided that Purchaser has satisfied all conditions to Closing set forth in <u>Section 10(B)</u>.

C.    If any payment or any other covenant of this Agreement hereof is not made, tendered or performed by either Seller or Purchaser (as and to the extent provided in <u>Section 21(A)</u>), and the non-defaulting party has complied with all terms, covenants, and conditions set forth in this Agreement.

(i)    In the event of such default by Seller, Purchaser shall have the right, as its sole remedy, to elect to (a) treat this Agreement as terminated, in which event the Deposit shall be returned to Purchaser and Seller shall be released from any and all liability hereunder, or (b) continue this Agreement and seek the equitable remedy of specific performance.  Purchaser expressly waives its right to seek damages in the event of Seller's default hereunder, and Purchaser waives all claims for consequential, punitive or exemplary damages it may have against Seller.

(ii)    In the event of such default by Purchaser, Seller shall have the right, as its sole remedy, to elect to (a) treat this Agreement as terminated, in which event the Deposit shall be released to Seller as liquidated damages and Purchaser shall be released from any and all liability hereunder, or (b) continue this Agreement and seek the equitable remedy of specific performance.  Seller expressly waives its right to seek damages in the event of Purchaser's default hereunder, and Seller waives all claims for consequential, punitive or exemplary damages it may have against Purchaser.

22.  <u>Termination of Agreement.</u>

    A.    This Agreement may be terminated prior to the Closing Date only as follows:

        (i)    at any time prior to the Closing Date by the joint written consent of Seller and Purchaser;

        (ii)    by either Party if any court of competent jurisdiction or other competent Governmental Authority shall have enacted or issued a Law or Decree or taken any other action permanently restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated by this Agreement and such Law or Decree or other action shall have become final and non-appealable;

        (iii)    by either Party, unless otherwise agreed in writing by the Parties, the Closing shall not have occurred prior to the date that is 30 calendar days after entry of the Sale Order (each, as applicable the "<u>Outside Date</u>"); <u>provided</u> that if the Closing shall not have occurred on or before the Outside Date due to a material breach of any representations, warranties, covenants or agreements contained in this Agreement by the Party seeking to terminate this Agreement pursuant to this <u>Section 22(A)(iii)</u>;

        (iv)    by either Party if an order of the Bankruptcy Court is entered denying approval of the Bid Procedures Order or Sale Order;

        (v)    by either Party if any court of competent jurisdiction enters a final, non-appealable judgment or order declaring this Agreement to be unenforceable;

        (vi)    by either Party if a permanent injunction or other permanent judgment issued by a court of competent jurisdiction shall have become final and nonappealable, preventing the consummation of the transactions contemplated hereby;

        (vii)    by either Party if following its entry, the Sale Order shall fail to be in full force and effect or shall have been stayed, reversed, modified or amended in any material respect without the prior written consent of Purchaser and Seller;

        (viii)    by Purchaser, or, prior to the entry of the Sale Order, by Seller, if (a) Seller (x) selects any party other than Purchaser as the winning bidder at the Auction and (y) does not designate Purchaser as the Next-Highest Bidder, (b) the Court enters an order approving a sale to a Successful Bidder that is not Purchaser, or (c) the Court enters an order that otherwise precludes the consummation of the transactions on the terms and conditions set forth in this Agreement;

        (ix)    by Purchaser, prior to the Sale Hearing (as defined therein), if any material deadline provided for in the Bidding Procedures Order (including the Bidding Procedures attached thereto) has not been or shall become incapable of being met, unless otherwise agreed by Purchaser;

        (x)    by Purchaser, if the Bankruptcy Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code for any reason prior to Closing;

(xi)    by Purchaser, if the Bidding Procedures Order is modified in any manner materially adverse to Purchaser, without the prior written consent of Purchaser (which consent may be withheld in Purchaser's sole discretion); and

(xii)    by Purchaser, if any secured creditor of Seller obtains relief from the stay to foreclose on any of the Property.

B.      No termination of this Agreement pursuant to this Section 22 shall be effective until notice thereof is given to the non-terminating party specifying the provision hereof pursuant to which such termination is made.

(i)    In the event that this Agreement is validly terminated as provided herein, this Agreement shall become wholly void and of no further force and effect without liability to Purchaser or Seller, or any of their respective Representatives, and each shall be fully released and discharged from any Liability or obligation after the date of such termination (except as set forth in Section 3(B)(i)(3) and this Section 22) and such termination shall be without liability to Purchaser or Seller; provided, however, that (i) the obligations of the Parties hereunder which are herein specifically stated to survive the Closing shall survive any such termination and shall be enforceable hereunder, and (ii) nothing contained in this Section 22(B) shall relieve any Party from Liability for any breach occurring prior to any such termination set forth in this Agreement.

(ii)    Seller has selected Purchaser as Stalking Horse Bidder pursuant to the terms of the Bidding Procedures Order, and Purchaser is entitled to all benefits permitted thereby. In the event this Agreement is properly terminated by Seller pursuant to Section 22(A)(viii), Seller shall pay to Purchaser, by wire transfer of immediately available funds upon the closing of the sale to a Third Party, an amount equal to the amount necessary for reimbursement of all reasonable and documented out-of-pocket expenses incurred by Purchaser in connection with the transactions contemplated under this Agreement in an amount not to exceed ONE HUNDRED TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($125,000.00) in the aggregate.

C.      The provisions of this Section 22 shall survive the Closing or sooner termination of this Agreement.

23.    Access.

A.      From and after the Execution Date and up to and including the Closing Date (or earlier termination of this Agreement) but subject to (i) the other provisions of this Section 23, and (ii) obtaining any consents or waivers from Third Parties that are required pursuant to the terms of the Leases, easements and Applicable Contracts (with respect to which such consents or waivers the Seller shall use commercially reasonable efforts to obtain without any obligation to incur any out-of-pocket cost or expense or provide any other consideration), the Seller shall make reasonable efforts to afford to Purchaser and its respective officers, employees, agents, accountants, attorneys, investment bankers, consultants and other authorized representatives (the "Purchaser Representatives"), upon prior reasonable notice, reasonable access, during normal business hours, to the Property.

B.     From and after the Execution Date to the Closing Date (or earlier termination of this Agreement), subject to (i) the other provisions of this Section 23, and (ii) obtaining any consents or waivers from Third Parties that are required pursuant to the terms of the Leases, easements and Applicable Contracts (with respect to which such consents or waivers the Seller shall use commercially reasonable efforts to obtain without any obligation to incur any out-of-pocket cost or expense or provide any other consideration), Purchaser shall have inspection rights to conduct Phase I Environmental Site Assessments (as defined in the applicable ASTM International Standards) with respect to the Environmental Condition of the Property.

C.     All investigations and due diligence conducted by Purchaser pursuant to Section 23 above, shall be conducted at Purchaser's sole cost, risk and expense, and any conclusions made from any examination done by Purchaser shall result from Purchaser's own independent review and judgment.  Purchaser shall coordinate its access rights and physical inspections of the Property with the Seller and any Third Party operators of the Property so as not to unreasonably interfere with the conduct of business by the Seller, or Third Parties, and the Seller shall have the right to accompany Purchaser in connection with any physical inspection of the Property. Purchaser shall, and shall cause all Purchaser representatives to, abide by all Laws and all of the Seller's  and any Third Party operator's safety rules, regulations, and operating policies while conducting Purchaser's due diligence evaluation of the Property, including any environmental or other inspection or assessment of the Property, and to the extent required by any Third Party operator, execute and deliver any required access agreement required by such Third Party operator.

D.     Purchaser hereby releases, indemnifies, defends and holds harmless each Seller Indemnified Party from and against any and all Liabilities (including any personal injury, death, loss or damage arising out of such entry that may occur to Purchaser or any Purchaser representative), arising out of, resulting from or relating to any office visit, field visit, environmental property assessment or other due diligence activity conducted by Purchaser or any Purchaser representative with respect to the Property, **EVEN IF SUCH LIABILITIES ARISE OUT OF OR RESULT FROM, IN WHOLE OR IN PART, THE SOLE, ACTIVE, PASSIVE, CONCURRENT OR COMPARATIVE NEGLIGENCE, STRICT LIABILITY OR OTHER FAULT OF A MEMBER OF THE SELLER INDEMNIFIED PARTIES, OR THE MERE DISCOVERY OF A PRE-EXISTING CONDITION BY PURCHASER OR PURCHASER'S REPRESENTATIVE**.

E.     Upon completion of Purchaser's due diligence, Purchaser shall remove all equipment, tools or other property brought onto the Property in connection with Purchaser's (or any Purchaser representative's) due diligence investigation and to the extent there exists after such due diligence investigation any damage upon the Property, the Purchaser  shall (i) repair all damage done to the Property (including the real property and other assets associated therewith) in connection with Purchaser's (or any Purchaser representative's) due diligence investigation, and (ii) restore the Property (including the real property and other assets associated therewith) to at least the approximate same condition that they were in prior to commencement of Purchaser's (or any Purchaser representative's) due diligence investigation at Purchaser sole cost and expense and without any cost or expense to the Seller.

24.     <u>No Representation; Purchaser's Duty to Review</u>.

A.     IT IS UNDERSTOOD AND AGREED THAT, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN <u>SECTION 7</u> OR THE DEED, SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT TO THE PROPERTY INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OR REPRESENTATIONS AS TO HABITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, ZONING, TAX CONSEQUENCES, LATENT OR PATENT PHYSICAL OR ENVIRONMENTAL CONDITION, UTILITIES, OPERATING HISTORY OR PROJECTIONS, VALUATION, GOVERNMENTAL APPROVALS, THE COMPLIANCE OF THE PROPERTY WITH GOVERNMENTAL LAWS (INCLUDING, WITHOUT LIMITATION, ACCESSIBILITY FOR HANDICAPPED PERSONS), THE TRUTH, ACCURACY OR COMPLETENESS OF ANY PROPERTY DOCUMENTS OR ANY OTHER INFORMATION PROVIDED BY OR ON BEHALF OF SELLER TO PURCHASER, OR ANY OTHER MATTER OR THING REGARDING THE PROPERTY.  PURCHASER ACKNOWLEDGES AND AGREES THAT UPON CLOSING SELLER SHALL SELL AND TRANSFER TO PURCHASER AND PURCHASER SHALL ACCEPT THE PROPERTY "AS IS, WHERE IS, WITH ALL FAULTS", EXCEPT TO THE EXTENT EXPRESSLY PROVIDED OTHERWISE IN THIS AGREEMENT OR THE DEED.  PURCHASER HAS NOT RELIED AND WILL NOT RELY ON, AND SELLER IS NOT LIABLE FOR OR BOUND BY, ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTIES, STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE PROPERTY OR RELATING THERETO (INCLUDING SPECIFICALLY, WITHOUT LIMITATION, PROPERTY INFORMATION PACKAGES DISTRIBUTED WITH RESPECT TO THE PROPERTY) MADE OR FURNISHED BY THE SELLER OR ANY REAL ESTATE BROKER OR AGENT REPRESENTING OR PURPORTING TO REPRESENT SELLER, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY OR IN WRITING, UNLESS SPECIFICALLY SET FORTH IN THIS AGREEMENT OR THE DEED.  PURCHASER REPRESENTS TO SELLER THAT PURCHASER HAS CONDUCTED, OR WILL CONDUCT PRIOR TO CLOSING, SUCH INVESTIGATIONS OF THE PROPERTY, INCLUDING, BUT NOT LIMITED TO, THE PHYSICAL AND ENVIRONMENTAL CONDITIONS THEREOF, AS PURCHASER DEEMS NECESSARY TO SATISFY ITSELF AS TO THE CONDITION OF THE PROPERTY AND THE EXISTENCE OR NONEXISTENCE OR CURATIVE ACTION TO BE TAKEN WITH RESPECT TO ANY HAZARDOUS OR TOXIC SUBSTANCES ON OR DISCHARGED FROM THE PROPERTY, AND WILL RELY SOLELY UPON SAME AND NOT UPON ANY INFORMATION PROVIDED BY OR ON BEHALF OF SELLER OR ITS AGENTS OR EMPLOYEES WITH RESPECT THERETO, OTHER THAN SUCH REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER AS ARE EXPRESSLY SET FORTH IN THIS AGREEMENT AND THE DEED. PURCHASER, ITS SUCCESSORS AND ASSIGNS, UPON CLOSING, SHALL BE DEEMED TO HAVE WAIVED, RELINQUISHED AND RELEASED, SELLER (AND SELLER'S OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES AND AGENTS) FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, CAUSES OF ACTION, LOSSES, DAMAGES, LIABILITIES, COSTS, AND EXPENSES (INCLUDING ATTORNEYS' FEES AND COURT COSTS) OF ANY AND EVERY KIND OR CHARACTER, KNOWN OR

UNKNOWN, WHICH PURCHASER MIGHT HAVE ASSERTED OR ALLEGED AGAINST SELLER (OR SELLER'S AFFILIATES) AT ANY TIME BY REASON OF OR ARISING OUT OF ANY LATENT OR PATENT CONSTRUCTION DEFECTS OR PHYSICAL CONDITIONS, VIOLATIONS OF ANY APPLICABLE LAWS (INCLUDING ANY ENVIRONMENTAL LAWS) AND ANY AND ALL OTHER ACTS, OMISSIONS, EVENTS, CIRCUMSTANCES, OR MATTERS REGARDING THE PHYSICAL CONDITION OF THE PROPERTY. THE PROVISIONS OF THIS PARAGRAPH SHALL SURVIVE THE CLOSING.

B.      Seller and Purchaser agree that, to the extent required by applicable Law to be effective, the disclaimers of certain representations and warranties contained in this Section 24 are conspicuous disclaimers for the purpose of any applicable Law.

25.    General Disclaimer of Title Warranties and Representations/Exclusive Remedy.  Except for the limited Special Warranty in the Instruments of Conveyance, Seller makes no warranty or representation, express, implied, statutory or otherwise, with respect to the Seller's title to any of the Property, and from and after Closing, except for the limited Special Warranty in the Instruments of Conveyance, Purchaser hereby expressly waives any and all other rights or remedies with respect thereto.

26.    [Intentionally Deleted.]

27.    Broker's Commission.  Seller has retained Keen Summit Capital Partners, LLC ("Broker") as a broker in connection with the transactions contemplated under this Agreement and no other broker, and any fees or commissions of Broker shall be the sole responsibility of Seller.  Purchaser warrants and represents that it is a principal acting on its own behalf, and not as a broker, finder or agent acting on another's behalf.  Any commission or fee of any type due and payable to any broker acting on behalf of Purchaser as a result of this Agreement or related to the sale of the Property shall be paid solely by Purchaser. Purchaser understands that the Seller and Broker, and their respective representatives, have not agreed to pay any brokerage commissions, finder's fees or other compensation in connection with Purchaser's purchase. Seller shall have no obligation to fund or cause the funding of any such commission or fee due to any such broker, other than Broker, acting on behalf of Purchaser.  This paragraph shall survive Closing or sooner termination of this Agreement.

28.    Notices.  Any notice pursuant to this Agreement shall be given in writing by (a) personal delivery, or (b) reputable overnight delivery service with proof of delivery, or (c) United States Mail, postage prepaid, registered or certified mail, return receipt requested, or (d) email, or to such other address or to the attention of such other person as the addressee shall have designated by written notice sent in accordance herewith, and shall be deemed to have been given either at the time of personal delivery, or, in the case of expedited delivery service or mail, as of the date of first attempted delivery at the address and in the manner provided herein, or, in the case of email transmission, as of the date of the email transmission provided that an original of such email is also sent to the intended addressee by means described in clauses (a), (b) or (c) above.  Unless changed in accordance with the preceding sentence, the addressees for notices given pursuant to this Agreement shall be as follows:

|              |                                           |
|--------------|-------------------------------------------|
| If to Seller: | Dawn Ragan, Chapter 11 Trustee<br>CR3 Partners<br>13355 Noel Road, Suite 2005<br>Dallas, TX  75240<br>Phone: (971) 376-2981<br>Email:  dawn.ragan@cr3partners.com |
| With a copy to: | Michael McConnell, Esq.<br>Nancy Ribaudo, Esq.<br>Kelly Hart & Hallman LLP<br>201 Main Street, Suite 2500<br>Fort Worth, TX 76102<br>Phone:  (817) 878-2500<br>Email: michael.mcconnell@kellyhart.com<br>        nancy.ribaudo@kellyhart.com |
| If to Purchaser: | c/o Karlin Real Estate, LLC<br>Attn: Matthew Schwab<br>11755 Wilshire Blvd, Suite 16<br>Los Angeles, CA  90025<br>Phone: (310) 806-9740<br>Email: matt@karlinre.com |
| With a copy to: | Gibson, Dunn & Crutcher LLP<br>Attn: Jesse Shapiro<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>Phone: 213-229-7070<br>Email: JShapiro@gibsondunn.com |

29.    Additional Provisions.

    A.    This Agreement shall be governed and construed in accordance with the laws of the State of Texas without regard to conflicts of laws principles, except to the extent the Laws of such state are superseded by the Bankruptcy Code.

    B.    The Parties agree that neither this contract nor any memorandum thereof shall be recorded or filed in any government office charged with the obligation to accept documents for recording or filing, and such office is instructed to refuse to accept same for recordation or filing.

30.    Strict Compliance.  Any delay or failure by either Party to insist upon strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, irrespective of the number of violations or breaches that may occur, and each Party, notwithstanding any such failure, shall have the right thereafter to insist upon strict performance by the other of any and all of the provisions of this Agreement. No waiver by any Party of any default, misrepresentation or breach of warranty or covenant hereunder, whether intentional or not, shall be valid unless the same shall be in writing and signed by the Party making

such waiver, nor shall such waiver be deemed to extend to any prior or subsequent default, misrepresentation or breach of warranty or covenant hereunder or affect in any way any rights arising by virtue of any prior or subsequent default, misrepresentation or breach of warranty or covenant.

31.    Waiver of Jury Trial.  EXCEPT AS PROHIBITED BY LAW, THE PARTIES SHALL, AND THEY HEREBY DO, EXPRESSLY WAIVE TRIAL BY JURY IN ANY LITIGATION ARISING OUT OF, CONNECTED WITH, OR RELATING TO THIS AGREEMENT, OR THE RELATIONSHIP CREATED HEREBY.  With respect to any matter for which a jury trial cannot be waived, the Parties agree not to assert any such claim as a counterclaim in, nor move to consolidate such claim with, any action or proceeding in which a jury trial is waived.  The Parties submit to the exclusive jurisdiction and venue of the Court with respect to any dispute, claim, or issue arising out of this Agreement.

32.    Entire Agreement.  All prior understandings and agreements between Seller and Purchaser related to the subject matter hereof are merged in this Agreement.  This Agreement completely expresses their full agreement with respect to the subject matter hereof; neither Party is relying upon any statements in relation hereto made by anyone else that are not set forth in this Agreement.

33.    Singular Also Means Plural.  Any singular word or term herein shall also be read as in the plural whenever the sense of this Agreement may require it.

34.    Gender.  A reference in this Agreement to any one gender, masculine, feminine or neuter, includes the other two, and the singular includes the plural, and vice versa, unless the context requires otherwise.

35.    Certain References.  The term "herein," "hereof" or "hereunder" or similar terms used in this Agreement shall refer to this entire Agreement and not to the particular provision in which the term is used.  Unless otherwise stated, all references herein to exhibits, paragraphs, subparagraphs or other provisions are references to exhibits, paragraph, subparagraphs, or other provisions of this Agreement.

36.    Construction of Agreement.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties. Unless otherwise indicated herein to the contrary:

    A.    The Exhibits to this Agreement are incorporated herein by reference and made a part hereof.

    B.    The words "include," "includes" or "including" and other words or phrases of similar import, when used in this Agreement, shall be deemed to be followed by the words "without limitation."

C.    The word "if" and other words of similar import shall be deemed, in each case, to be followed by the phrase "and only if."

D.    The use of "or" herein is not intended to be exclusive.

E.    All terms defined in this Agreement have their defined meanings when used in any certificate or other document made or delivered pursuant hereto, unless otherwise defined therein.

F.    References to any statute shall be deemed to refer to such statute as amended from time to time and to any rules or regulations promulgated thereunder.  References to any Contract are to that Contract as amended, modified or supplemented from time to time in accordance with the terms hereof and thereof.  References herein to a Person are also to its successors and permitted assigns.  Any reference herein to a Governmental Authority shall be deemed to include reference to any successor thereto.  References from or through any date means, unless otherwise specified, from and including or through and including such date, respectively.

G.    Any reference herein to "Dollars" or "$" shall mean United States dollars.

H.    References in this Agreement to materials or information "provided to" or "made available to" Purchaser and other phrases of similar import include all materials or information made available to Purchaser or its Representatives in the data room prepared by Seller or provided to Purchaser or its Representatives in response to requests for materials or information.

I.    Unless the context otherwise requires, the word "extent" in the phrase "to the extent" means the degree to which a subject or other thing extends, and such phrase does not mean simply "if."

The provisions of this Section 36 shall survive the Closing or sooner termination of this Agreement.

37.    No Oral Changes.  This Agreement cannot be amended, changed or any provision waived orally.  ANY AMENDMENT, CHANGES OR ADDITIONAL PROVISIONS OR WAIVERS MUST BE SET FORTH IN A RIDER ATTACHED HERETO OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY THE PARTIES. No conditions, course of dealing or performance, understanding or agreement purporting to modify, vary, explain, or supplement the terms or conditions of this Agreement shall be binding unless this Agreement is amended or modified in writing pursuant to the second sentence of this Section 37 except as expressly provided herein.

38.    Date of Performance.  If any date for performance hereunder falls on a Saturday, Sunday or other day which is not a Business Day, including a federal holiday or holiday under the laws of the state where the Property is located, the date for such performance shall be the next succeeding Business Day.

39.    Severability.  Except as set forth herein, if any clause or provision of this Agreement is held to be invalid or unenforceable by any court of competent jurisdiction as against any person or under any circumstances, the remainder of this Agreement and the applicability of any such clause or provision to other persons or circumstances shall not be affected thereby; provided, however, the Parties agree that the conditions for Court approval and issuance of a Sale Order is a non-

negotiable condition precedent to the validity and enforcement of this Agreement against the Trustee. Any other clauses or provisions of this Agreement, not found invalid and unenforceable, shall be and remain valid and enforceable.

40.     Counterparts. This Agreement may be executed in multiple counterparts all of which when taken together shall constitute an Agreement for the sale of real estate under the laws of the State of Texas. It is binding upon and inures to the benefit of the Parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be canceled, modified or amended only by a written instrument executed by both the Seller and the Purchaser.

41.     Electronic Execution. For the purposes of executing this Agreement, a document signed and transmitted by facsimile machine or electronic (PDF) mail shall be treated as an original document. The signature of any Party thereon shall be considered as an original signature, and the document transmitted shall be considered to have the same binding legal effect as an original signature on an original document. At the request of either Party, any facsimile or electronic (PDF) mail document shall be re-executed by both Parties in original form. No Party hereto may raise the use of a facsimile machine or electronic (PDF) mail or the fact that any signature was transmitted through the use of a facsimile machine or electronic (PDF) mail as a defense to the enforcement of this Agreement or any amendment executed in compliance with this paragraph. This paragraph does not supersede the requirements of Section 28 hereof.

42.     Assignment. Purchaser shall not assign this Agreement without the prior written consent of the Seller, such consent to be given in Seller's sole discretion; provided, however, Seller shall not unreasonably withhold, condition or delay its consent to any assignment by Purchaser of this Agreement, in whole or part, to one or more Affiliates of Purchaser. Any purported assignment by Purchaser in violation of this Agreement shall be voidable at the option of the Seller. The refusal of any such person to consent to an assignment shall not entitle Purchaser to cancel this Agreement nor give rise to any claim for damages against the Seller. Any assignment by Purchaser, even if consented to by Seller, shall not act to limit, reduce or impact in any way any of Purchaser's obligations to perform all of its obligations under this Agreement including, without limitation, its obligation to pay the Purchase Price.

43.     No Assumption of Liability. Except as expressly provided otherwise herein, Purchaser shall not assume, and shall be deemed not to have assumed, any Liabilities except those expressly set forth in this Agreement. For the avoidance of doubt, and subject to the "AS IS" provisions of Section 24(A), Purchaser shall not assume, and shall be deemed not to have assumed, any Environmental Liabilities accrued prior to the Closing Date or any obligations to any employees of Seller or any Affiliate of Seller or under any collectively bargaining agreement with respect to such employees. Purchaser shall not be a successor to Seller or any of Seller's Affiliates for any purpose and the Sale Order shall expressly provide that Purchaser is not a successor to Seller or any of Seller's Affiliates for any purpose.

44.     Expenses. Except as otherwise expressly set forth herein, each Party will bear its own costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby, including all fees of law firms, commercial banks, investment banks, accountants, public relations firms, experts and consultants. For the avoidance of doubt, Purchaser shall pay all recording fees arising from the transfer of the Property.

45. <u>Submission to Jurisdiction; Service of Process</u>. Each of the Parties irrevocably and unconditionally submits to the exclusive jurisdiction of the Court in any Litigation arising out of or relating to this Agreement or the transactions contemplated hereby or thereby and agrees that all claims in respect of such Litigation may be heard and determined in any such court. Each Party also agrees not to (a) attempt to deny or defeat such exclusive jurisdiction by motion or other request for leave from the Court or (b) bring any action or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby or thereby in any other court. Each of the Parties irrevocably and unconditionally waives any objection to the laying of venue in, and any defense of inconvenient forum to the maintenance of, any Litigation so brought and waives any bond, surety or other security that might be required of any other Party with respect thereto. Any Party may make service on any other Party by sending or delivering a copy of the process to the Party to be served at the address and in the manner provided for the giving of notices in <u>Section 28</u>; <u>provided</u>, <u>however</u>, that nothing in this <u>Section 45</u> shall affect the right of any Party to serve legal process in any other manner permitted by law or in equity. Each Party agrees that a final judgment in any Litigation so brought shall be conclusive and may be enforced by Litigation or in any other manner provided by law or in equity. The Parties intend that all foreign jurisdictions will enforce any Decree of the Court in any Litigation arising out of or relating to this Agreement or the transactions contemplated hereby or thereby.

46. <u>Headings; Table of Contents</u>. The section headings and the table of contents contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

47. <u>No Third Party Beneficiaries</u>. Except as provided in <u>Section 47</u>, this Agreement shall not confer any rights or remedies upon any Person other than Purchaser, Seller, and their respective successors and permitted assigns.

48. <u>Independent Consideration</u>. At any time Purchaser is entitled to a return of the Deposit hereunder, the entire Deposit will be returned to Purchaser except for One Hundred Dollars ($100) thereof (the "<u>Independent Consideration</u>"), which will be paid to Seller as independent consideration to support Seller's obligations under this Agreement. In addition, Seller acknowledges that (a) in performing its due diligence investigation of the Property, Purchaser will incur expenses, and such expenses also constitute good, valuable and sufficient consideration for this Agreement, and (b) Purchaser would not have entered into this Agreement without having the opportunity to perform such investigations and without having the right to terminate this Agreement in accordance with the provisions hereof. Accordingly, in addition to the Independent Consideration referenced above, separate consideration exists to support Seller's obligations hereunder notwithstanding Purchaser's right to terminate this Agreement as provided herein. The Independent Consideration will not be applicable to the Purchase Price or treated as consideration given by Purchaser for any purpose other than as provided herein.

49. <u>Intentionally Omitted</u>.

50. <u>Capacity of Trustee</u>. **TRUSTEE EXECUTES THIS AGREEMENT SOLELY IN HER CAPACITY AS CHAPTER 11 TRUSTEE OF THE SELLER AND REPRESENTATIVE OF THE ESTATE PURSUANT TO THE ORDER, AND NOT**

31

**INDIVIDUALLY, AND TRUSTEE SHALL HAVE NO PERSONAL LIABILITY BY HER EXECUTION HEREOF.**

[*Signatures appear on following page*]

IN WITNESS HEREOF, Purchaser and Seller agree that the date of this Agreement shall be the date Seller executes this Agreement.

**PURCHASER**:

**ATX Braker SR, LLC**,
a Delaware limited liability company

By: _____

Name:  Matthew Schwab

Title:  Authorized Agent

**SELLER**:

**W.C. Braker Portfolio, LLC,**
a Delaware limited liability company

By: _____
Name:  Dawn M. Ragan
Title:  Chapter 11 Trustee

<u>Exhibit A</u>

Legal Description of Real Property

[See attached]

Legal Description

TRACT ONE:

Lot Eleven (11), in Block B, of KRAMER LANE 65 SECTION ONE, a subdivision in Travis County, Texas, according to the map or plat thereof recorded in Volume 80, Pages 242-243 of the Plat Records of Travis County, Texas.

TRACT TWO:

A Twenty Five (25) foot wide perpetual non-exclusive ingress and egress easement for pedestrian and motor vehicular use as set forth by instrument recorded in Volume 7509, Page 416, of the Deed Records of Travis County, Texas, and as shown by plat recorded in Volume 99, Pages 382-383, of the Plat Records of Travis County, Texas.


Property Address:
2100 Kramer Lane, Austin, TX

[LEGAL DESCRIPTION CONTINUES ON NEXT PAGE]

TRACT THREE:

Lots Two (2), Three (3), Four (4), Five (5), Six (6), Seven (7), Eight (8), and Nine (9), in Block B, RESUBDIVISION OF BLOCK B, KRAMER LANE 65 SECTION THREE, a subdivision in Travis County, Texas, according to the map or plat thereof recorded in Volume 85, Pages 95C-95D, of the Plat Records of Travis County, Texas.

TRACT FOUR:

An access easement Fifty (50) feet wide as set forth by plat recorded in Volume 85, Pages 95C-95D, of the Plat Records of Travis County, Texas.


Property Addresses:
1908 Kramer Lane (Lot 2)
1836 Kramer Lane (Lot 3)
11009 Metric Blvd. (Lot 4)
11101 Metric Blvd. (Lot 5)
11109 Metric Blvd. (Lot 6)
1817 W Braker Lane (Lot 7)
1909 W Braker Lane (Lot 8)
1901 W Braker Lane (Lot 9)

[LEGAL DESCRIPTION CONTINUES ON NEXT PAGE]

TRACT FIVE:

Lot Two (2), of AMENDED PLAT OF STONEHOLLOW SECTION FIVE, a subdivision in Travis County, Texas, according to the map or plat thereof recorded in Volume 87, Pages 62A-62B, of the Plat Records of Travis County, Texas.

TRACT SIX:

Joint Use Easement for vehicular and pedestrian access as set forth by instrument recorded in Volume 9903, Page 232, of the Real Property Records of Travis County, Texas, and as shown by plat recorded in Volume 87, Pages 62A-62B, of the Plat Records of Travis County, Texas.

Property Address: 11500 Metric Blvd., Austin, TX

[LEGAL DESCRIPTION CONTINUES ON NEXT PAGE]

TRACT SEVEN:

Lot One (1), of GRACY RETAIL CENTER SUBDIVISION, a subdivision in Travis County, Texas, according to the map or plat thereof recorded in Document No. 200100038, of the Official Public Records of Travis County, Texas.

TRACT EIGHT:

Non-exclusive ingress and egress easement for vehicular and pedestrian traffic as set forth by Reciprocal Easement Agreement filed for record under Travis County Clerk's File No. 2001026934.

Property Address:  1910 W. Braker Lane, Austin, TX

[LEGAL DESCRIPTION ENDS]

<u>Exhibit B</u>

List of Permitted Liens

None

<u>Exhibit C</u>

Bid Procedures Order

[See attached]

<u>Exhibit D</u>

Form of Escrow Agreement

[To be attached]

Exhibit E

Form of Deed

**SPECIAL WARRANTY DEED**

**NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | |
| | § | **KNOW ALL MEN BY THESE PRESENTS:** |
| **COUNTY OF HARRIS** | § | |

THAT [_____] ("**Grantor**"), solely in her capacity as chapter 11 trustee of WC Braker Portfolio, LLC (the "**Debtor**"), for and in consideration of the sum of Ten and No/100 Dollars ($10.00) cash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, paid by [_____], having an address of [_____] (the "**Grantee**"), subject to the provisions set forth herein and pursuant to Order Approving the Sale of Real Property Free and Clear of liens, Claims, Encumbrances and Interests Pursuant to Bankruptcy Code Sections 105, 363 entered by the United States Bankruptcy Court for the Western District of Texas in Case Number 22-10293 (TMD) (the "**Order**"), HAS GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents DOES GRANT, BARGAIN, SELL and CONVEY unto Grantee all of that certain tract or tracts of land (the "**Land**") described on **Exhibit A** which is attached hereto and incorporated herein by reference for all purposes, and all improvements and fixtures thereon and thereto, together with all of Grantor's right, title and interest in and to any easements, interests, benefits, privileges, rights and appurtenances pertaining to such Land (said Land and improvements being herein, collectively, referred to as the "**Property**").

**THE PROPERTY IS SOLD FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO THE ORDER, SUBJECT, HOWEVER TO THE MATTERS SET FORTH ON <u>EXHIBIT B</u> ATTACHED HERETO AND INCORPORATED HEREIN BY THIS REFERENCE FOR ALL PURPOSES (THE "<u>PERMITTED EXCEPTIONS</u>").**

TO HAVE AND TO HOLD the Property, together with Grantor's right, title and interest in and to any and all and singular the rights and appurtenances thereto belonging in any way to the Property, unto Grantee, and Grantee's successors and assigns forever, and Grantor does hereby bind Grantor, and Grantor's successors and assigns, to WARRANT and FOREVER DEFEND, all and singular the Property unto Grantee and Grantee's successors and assigns, against every person

whomsoever lawfully claiming or to claim the same or any part thereof, by, through or under Grantor, but not otherwise, and subject, however, to the Permitted Exceptions.

Real property ad valorem taxes and assessments having been prorated to the date hereof, Grantee, by its acceptance hereof, does further assume and agree to pay any and all ad valorem taxes relating to the Property for calendar year 2022 and thereafter.

For the same consideration, Grantor grants, sells, and conveys unto Grantee, without warranty, express or implied, all right, title and interest of Grantor, if any, in and to adjacent streets, roads, alleys, rights-of-way, and strips and gores of land lying adjacent to the Land.

**GRANTOR EXECUTES THIS DEED SOLELY IN ITS CAPACITY AS CHAPTER 11 TRUSTEE OF THE DEBTOR AND REPRESENTATIVE OF THE ESTATE PURSUANT TO THE ORDER, AND NOT INDIVIDUALLY, AND GRANTOR SHALL HAVE NO PERSONAL LIABILITY BY ITS EXECUTION HEREOF.**

**NEITHER THIS DEED, NOR THE TRANSFER OF THE PROPERTY, IS SUBJECT TO THE TEXAS DOCUMENTARY STAMP TAX OR THE SURTAX PURSUANT TO 11 USC § 1146 (A).**

**[SIGNATURE PAGE FOLLOWS]**

        IN WITNESS WHEREOF, Grantor has executed this Special Warranty Deed as of day and year first above written.

    Signed, sealed and delivered
    in the presence of:


    Sign Name:_____          [_____]¹

    Print Name: _____


    Sign Name:_____

    Print Name: _____

                                              Address:



STATE OF _____            )
_____                     )SS.:
COUNTY OF _____              )

        The foregoing Trustee's Deed was acknowledged before me this ____ day of _____, by _____, as _____ on behalf of the Bankruptcy Court for the Western District of Texas Case Number 22-10293 (TMD).  He personally appear before me and is personally know to me, and did not take an oath.



                                    _____
___                                 Notary Public


After Recording Return To:

[_____]
[_____]
[_____]
Attention: [_____]

_____
¹  Debtor information to be added.

Exhibit A to Exhibit E

[To be attached]

Exhibit B to Exhibit E

[To be attached]

<u>Exhibit F</u>

Available Contracts

[To be attached]

Exhibit G

Form of Assignment and Assumption Agreement

[To be attached]

105773296.12

## **EXHIBIT 2**

**Notice of Auction and Sale Hearing**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| **WC BRAKER PORTFOLIO, LLC,** | CASE NO. 22-10293 (TMD) |
| **DEBTOR.**[1] | |

**NOTICE OF PROPOSED SALE,
BID PROCEDURES, AUCTION, AND SALE HEARING**

 **PLEASE TAKE NOTICE** that the above-captioned debtor (the "Debtor") filed a voluntary petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") on May 2, 2022, thereby commencing the above-captioned chapter 11 case (the "Case").

 **PLEASE TAKE FURTHER NOTICE** that, on November 23, 2022, Dawn Ragan, the court-appointed chapter 11 trustee for the Debtor (the "Chapter 11 Trustee"), filed a motion (the "Motion")[2] with the United States Bankruptcy Court for the Western District Texas (the "Court") seeking, among other things, entry of an order (the "Bid Procedures Order"): (i) approving proposed bidding procedures (the "Bid Procedures") by which the Chapter 11 Trustee will solicit and select the highest or otherwise best offer for the sale ("Sale") of the Debtor's assets (the "Property"); (ii) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures"); (iii) authorizing and approving the Chapter 11 Trustee's selection of a stalking horse bidder (the "Stalking Horse Bidder"); (iv) scheduling (a) a date for an auction if the Chapter 11 Trustee receives one or more timely and acceptable Qualified Bids (the "Auction") and (b) a final hearing (the "Sale Hearing") to approve one or more Sale transactions; (v) approving the form and manner of notices; and (vi) granting related relief.

 **PLEASE TAKE FURTHER NOTICE** that, on December __, 2022, the Court entered the Bid Procedures Order [Docket No. _____.

 **PLEASE TAKE FURTHER NOTICE that any party that wishes to take part in the sale process contemplated by the Bid Procedures Order and submit a Bid for the Property must submit its Bid in accordance with the terms and conditions of the Bid Procedures,**

---

[1] The last four digits of the Debtor's federal employer identification number are 2115. The Debtor's address is 814 Lavaca Street, Austin, Texas 78701.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bid Procedures Order. Any summary of the Bid Procedures Order or the Bid Procedures contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

including the requirements for submitting a Qualified Bid, by 5:00 p.m. (prevailing Central Time) on February 7, 2023 (the "Bid Deadline"), except as otherwise provided in the Bid Procedures with respect to the Stalking Horse Bidder.

PLEASE TAKE FURTHER NOTICE that pursuant to the Bid Procedures Order, if the Chapter 11 Trustee receives more than one timely and acceptable Qualified Bid, the Chapter 11 Trustee will conduct the **Auction on February 14, 2023 at 2:00 p.m. (prevailing Central Time)**, or at such later date and time as selected by the Chapter 11 Trustee at a venue that the Trustee shall announce to all Qualified Bidders. The Trustee reserves the right to conduct the auction live, in-person, or through a virtual platform and to change the location and time of the Auction. Professionals and principals for the Trustee, the Stalking Horse Bidder, each Qualified Bidder, the chapter 11 trustee for WC Braker Portfolio B, LLC, Nate Paul, and the United States Trustee, and their advisors may attend the Auction; any creditor of the Debtor and their counsel may also attend upon written request delivered to the Trustee at least three days prior to the Auction and approval by the Trustee; and the Trustee shall be authorized to exclude other parties **All interested or potentially affected parties should carefully read the Bid Procedures and the Bid Procedures Order.**

PLEASE TAKE FURTHER NOTICE that the Chapter 11 Trustee has the right, to adjourn or cancel the Auction at or prior to the Auction.

PLEASE TAKE FURTHER NOTICE that the Chapter 11 Trustee's selection of Stalking Horse Bidder and entry into that certain purchase agreement by and between the Chapter 11 Trustee on behalf of the Debtor and the Stalking Horse Bidder, dated November 23, 2022 (the "Purchase Agreement"), was authorized pursuant to the Bid Procedures Order.

PLEASE TAKE FURTHER NOTICE that the **Sale Hearing to consider approval of the Sale of Debtor's Property free and clear of all liens, claims, interests, and encumbrances in accordance with Bankruptcy Code section 363(f) will be held before the Honorable H. Christopher Mott of the United States Bankruptcy Court for the Western District of Texas, at the Homer J. Thornberry Federal Judicial Building, Courtroom 2, 903 San Jacinto Blvd., Austin, TX 78701 on February 23, 2023, at 10:00 a.m. (prevailing Central Time).** The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in this Case.

PLEASE TAKE FURTHER NOTICE that any objections to the Sale (each, a **"Sale Objection"**) must be filed and served so as to be actually received by the Trustee and her counsel and the other objection recipients listed below no later than **February 7, 2023 at 4:00 p.m. (prevailing Central Time)** (the **"Sale Objection Deadline"**). The objection recipients are (i) counsel to the Trustee, Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth, TX 76102, Attn: Michael McConnell (michael.mcconnell@kellyhart.com) and Nancy Ribaudo (nancy.ribaudo@kellyhart.com); (b) counsel to the Stalking Horse Bidder, (i) Polsinelli P.C., 2950 N. Harwood, Suite 2100, Dallas, TX 75201, Attn: Liz Boydston (lboydston@polsinelli.com); and (ii) Gibson Dunn & Crutcher LLP, 3161 Michelson Drive, Irvine, CA 92612-4412, Attn: Matthew Bouslog (mbouslog@gibsondunn.com); and (c) the U.S. Trustee. (collectively, the **"Notice Parties"**).

## <u>CONSEQUENCES OF FAILING TO TIMELY ASSERT A SALE OBJECTION</u>

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE A SALE OBJECTION ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE ENTERED BID PROCEDURES ORDER WILL BE FOREVER BARRED FROM ASSERTING ANY SALE OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE TRANSFERRED ASSETS OF THE DEBTOR'S ESTATE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS EFFECTED THEREUNDER.**

**PLEASE TAKE FURTHER NOTICE** that this Notice is subject to the terms and conditions of the Motion, the Bid Procedures and the Bid Procedures Order, with such Bid Procedures Order controlling in the event of any conflict, and the Chapter 11 Trustee encourages parties in interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of the Property and/or copies of any related document, including the Motion or the Bid Procedures Order, may make a written request to: counsel to the Chapter 11 Trustee, Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth, TX 76102, Attn: Nancy Ribaudo (nancy.ribaudo@kellyhart.com).

Dated: December __, 2022

Respectfully Submitted:

*/s/ Nancy Ribaudo*
Michael McConnell
Texas Bar No. 13447300
Nancy Ribaudo
Texas Bar No. 24026066
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9777
Email: nancy.ribaudo@kellyhart.com

**Counsel for Dawn Ragan, Chapter 11 Trustee**

# **EXHIBIT 3**

**Assumption and Assignment Notice**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| WC BRAKER PORTFOLIO, LLC, | CASE NO. 22-10293 (TMD) |
| DEBTOR.[1] | |

**NOTICE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED IN CONNECTION WITH THE SALE OF THE DEBTOR'S PROPERTY AND THE PROPOSED CURE AMOUNTS WITH RESPECT THERETO**

---

**YOU ARE RECEIVING THIS NOTICE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED IN CONNECTION WITH THE SALE OF THE DEBTOR'S PROPERTY AND THE PROPOSED CURE AMOUNT WITH RESPECT THERETO (THE "ASSUMPTION NOTICE") BECAUSE YOU MAY BE A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH THE DEBTOR. PLEASE READ THIS NOTICE CAREFULLY AS YOUR RIGHTS MAY BE AFFECTED BY THE TRANSACTIONS DESCRIBED HEREIN.**

---

**PLEASE TAKE NOTICE** that the above-captioned debtor (the **"Debtor"**) filed a voluntary petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the **"Bankruptcy Code"**) on May 2, 2022, thereby commencing the above-captioned chapter 11 case (the **"Case"**).

**PLEASE TAKE FURTHER NOTICE** that, on November 23, 2022, Dawn Ragan, the court-appointed chapter 11 trustee for the Debtor (the **"Chapter 11 Trustee"**) filed a motion (the **"Motion"**)[2] with the United States Bankruptcy Court for the Western District Texas (the **"Court"**) seeking, among other things, entry of an order (the **"Bid Procedures Order"**): (i) approving proposed bidding procedures (the **"Bid Procedures"**) by which the Chapter 11 Trustee will solicit and select the highest or otherwise best offer for the sale (**"Sale"**) of Debtor's assets (the **"Property"**); (ii) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the

---

[1]     The last four digits of the Debtor's federal employer identification number are 2115.  The Debtor's address is 814 Lavaca Street, Austin, Texas 78701.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bid Procedures Order.  Any summary of the Bid Procedures Order or the Bid Procedures contained herein is qualified in its entirety by the actual terms and conditions thereof.  To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

"**Assumption and Assignment Procedures**"); (iii) authorizing and approving the Chapter 11 Trustee's selection of a stalking horse bidder (the "**Stalking Horse Bidder**"); (iv) scheduling (a) a date for an auction if the Chapter 11 Trustee receives one or more timely and acceptable Qualified Bids (the "**Auction**") and (b) a final hearing (the "**Sale Hearing**") to approve the Sale as necessary; (v) approving the form and manner of notices; and (vi) granting related relief.

PLEASE TAKE FURTHER NOTICE that, on December __, 2022, the Court entered the Bid Procedures Order [Docket No._____].

PLEASE TAKE FURTHER NOTICE that the Bid Procedures Order, among other things, established procedures for the assumption and assignment of certain executory contracts and unexpired leases that the Chapter 11 Trustee may seek to assume and assign on the Debtor's behalf in connection with the Sale (collectively, the "**Available Contracts**") to a purchaser and the determination of related Cure Amounts (as defined below). The Debtor is a party to numerous Available Contracts and, in accordance with the Bid Procedures Order, hereby files and delivers this notice ("**Assumption Notice**") identifying (i) the Available Contracts, which may be assumed and assigned to the Stalking Horse Bidder or such other Successful Bidder(s) in connection with the Sale(s), and (ii) the proposed amounts, if any, the Chapter 11 Trustee believes are owed to the counterparties to the Available Contracts to cure any defaults or arrears existing under the Available Contracts (the "**Cure Amounts**"), both as set forth on **Exhibit 1** attached hereto. Other than the Cure Amounts listed on Exhibit 1, the Chapter 11 Trustee is not aware of any amounts due and owing under the Available Contracts listed therein.

**PLEASE TAKE FURTHER NOTICE that the Sale Hearing to consider approval of a Sale(s) and the transfer of the Property free and clear of all liens, claims, interests, and encumbrances in accordance with Bankruptcy Code section 363(f) will be held before the Honorable H. Christopher Mott of the United States Bankruptcy Court for the Western District of Texas, at the Homer J. Thornberry Federal Judicial Building, Courtroom 2, 903 San Jacinto Blvd., Suite 326, Austin, TX 78701 on February 23, 2023 at 10:00 a.m. (prevailing Central Time).** At the Sale Hearing, only those Available Contracts (and the corresponding Cure Amounts) listed on Exhibit 1 that have been selected to be assumed by the Successful Bidder(s) at the Auction (as may be amended in accordance with the terms of the applicable definitive documents, the "**Assumed Contracts**") will be subject to approval by the Court, and the Debtor's rights with respect to all other contracts are fully reserved. All objections to the Chapter 11 Trustee's proposed Cure Amounts will be heard at the Sale Hearing or at a later hearing, as determined by the Chapter 11 Trustee. The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in these Cases.

PLEASE TAKE FURTHER NOTICE that the listing of an Available Contract on Exhibit 1 does not constitute an admission that the Available Contract is an executory contract or unexpired lease as contemplated by Bankruptcy Code section 365(a), that the Debtor has any liability thereunder or that any such Available Contract shall be chosen by the Successful Bidder(s) to be assumed, and the Chapter 11 Trustee expressly reserves all rights, claims, causes of action, and defenses of the Chapter 11 Trustee and the Debtor with respect to the Available Contracts listed on Exhibit 1.

PLEASE TAKE FURTHER NOTICE that to the extent a counterparty to an Available Contract listed on Exhibit 1 to this Assumption Notice objects to the proposed assumption and assignment of the applicable Available Contract (other than a Supplemental Limited Sale Objection (as defined below)) to the ability of the Stalking Horse Bidder to provide adequate assurance of future performance, or the proposed Cure Amount, if any, such counterparty must file and serve an objection (a **"Contract Objection"**). All Contract Objections must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Bankruptcy Rules, (iii) be filed with the Clerk of Court no later than **February 7, 2023 at 4:00 p.m. (prevailing Central Time)** (the **"Sale Objection Deadline"**), (iv) be served on the Notice Parties (as defined below) so as to actually be received on or before the Sale Objection Deadline, except as set forth below, and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the counterparty believes is required to be paid under Bankruptcy Code sections 365(b)(1)(A) and (B) for the applicable Available Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto.

PLEASE TAKE FURTHER NOTICE that the Notice Parties are: (i) the Chapter 11 Trustee, Dawn Ragan, CR3 Partners, 13355 Noel Road, Suite 2005, Dallas, TX  (ii) counsel to the Chapter 11 Trustee, Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth, TX 76102, Attn: Michael McConnell and Nancy Ribaudo; and (iii) counsel to the Stalking Horse Bidder: (A) Polsinelli PC, 2950 N. Harwood St., Suite 2100, Dallas, TX 75201, Attn: Liz Boydston, and (B) Gibson Dunn & Crutcher LLP, 3161 Michelson Drive, Irvine, CA 92612-4412, Attn: Matthew Bouslog (collectively, the **"Objection Recipients" and "Notice Parties"**).

**PLEASE TAKE FURTHER NOTICE THAT IF A COUNTERPARTY TO AN AVAILABLE CONTRACT FILES A CONTRACT OBJECTION IN A MANNER THAT IS CONSISTENT WITH THE REQUIREMENTS SET FORTH ABOVE, AND THE PARTIES ARE UNABLE TO CONSENSUALLY RESOLVE THE DISPUTE PRIOR TO THE SALE HEARING, THE AMOUNT TO BE PAID OR RESERVED WITH RESPECT TO SUCH OBJECTION WILL BE DETERMINED AT THE SALE HEARING, OR SUCH LATER HEARING DATE THAT THE CHAPTER 11 TRUSTEE DETERMINES IN HER DISCRETION, OR SUCH OTHER DATE DETERMINED BY THE COURT. ALL OTHER OBJECTIONS TO THE PROPOSED ASSUMPTION AND ASSIGNMENT OF THE DEBTOR'S RIGHT, TITLE, AND INTEREST IN, TO, AND UNDER THE AVAILABLE CONTRACTS WILL BE HEARD AT THE SALE HEARING.**

PLEASE TAKE FURTHER NOTICE that any objections to the ability of the Successful Bidder or Next-Highest Bidder (other than the Stalking Horse Bidder) to provide adequate assurance of future performance (each, a **"Supplemental Limited Sale Objection"**) must be filed with the Court no later than **February 21, 2023 at 4:00 p.m. (prevailing Central Time)** (the **"Supplemental Limited Sale Objection Deadline"**). The identity of the Successful Bidder and Next-Highest Bidder (if any) shall be disclosed in a subsequent notice to be delivered to counterparties to the applicable Available Contracts following the Auction (the **"Post-Auction Notice"**).

**PLEASE TAKE FURTHER NOTICE** that if the counterparty to an Available Contract does not timely file and serve a Contract Objection that is consistent with the requirements set forth above by the Contract Objection Deadline (with respect to all objections other than Supplemental Limited Sale Objections) (i) such counterparty will be deemed to have consented to the assumption and assignment of the Available Contract to a Successful Bidder, notwithstanding any anti-alienation provision or other restriction on assumption or assignment in the Available Contract, and shall be forever barred from asserting any objection with regard to such assumption and assignment, including, without limitation, with respect to adequate assurance of future performance by the Successful Bidder; (ii) any and all defaults under such Available Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to Bankruptcy Code section 365(b)(1)(A) and (B) upon payment of the Cure Amounts set forth in the Assumption Notice for such Assumed Contract, and such counterparty shall be forever barred from asserting any objection with regard thereto; (iii) the Cure Amount set forth in the Assumption Notice for such Available Contract shall be controlling, notwithstanding anything to the contrary in such Available Contract, or any other related document, and such counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other Claims related to such Assumed Contract against the Debtor and its estate or the Successful Bidder, or the property of any of them, that existed prior to the entry of the order resolving the Contract Objections and the Sale Order; and (iv) such counterparty shall be deemed to have consented to the Sale and to any related relief.

**PLEASE TAKE FURTHER NOTICE** that although the Chapter 11 Trustee has made a good-faith effort to identify all Available Contracts that might be assumed and assigned in connection with a Sale, the Chapter 11 Trustee may discover certain contracts inadvertently omitted from the Available Contract list or Successful Bidder(s) may identify other executory contracts or unexpired leases that they desire to assume and assign in connection with the Sale. Accordingly, the Chapter 11 Trustee has reserved the right, at any time after the service of this Assumption Notice and before 5:00 p.m. (prevailing Central Time) on the date that is three (3) business days before the date of the Sale Hearing, to (i) supplement the list of Available Contracts on this Assumption Notice with previously omitted Available Contracts in accordance with the definitive agreement for a Sale, (ii) remove an Available Contract from the list of contracts ultimately selected as the Assumed Contracts that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale, and/or (iii) modify the previously stated Cure Amount associated with any Assumed Contract.

**PLEASE TAKE FURTHER NOTICE** that in the event that the Chapter 11 Trustee supplements the list of Available Contracts or modifies the previously stated Cure Amount for a particular Available Contract, the Chapter 11 Trustee will promptly file and serve a revised Assumption Notice on each counterparty affected. Such counterparties shall file any Contract Objections with respect to the revised Assumption Notice not later than (a) the Sale Objection Deadline, in the event that such revised Assumption Notice was filed and served at least ten (10) days prior to the Sale Objection Deadline, (b) two (2) days prior to the Sale Hearing in the event that such revised Assumption Notice was filed and served at least seven (7) days prior to the commencement of the Sale Hearing, and (c) seven (7) days after the later of the date of service of the revised Assumption Notice and the Post-Auction Notice, in the event that such revised Assumption Notice was filed and served less than seven (7) days prior to the commencement of the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that this Assumption Notice is subject to the terms and conditions of the Motion and the Bid Procedures Order, with such Bid Procedures Order controlling in the event of any conflict, and the Chapter 11 Trustee encourages parties in interest to review such documents in their entirety.  Parties with questions regarding the Assumption and Assignment Procedures contained herein should contact the Chapter 11 Trustee's counsel at Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth, TX 76102, Attn: Nancy Ribaudo (email: nancy.ribaudo@kellyhart.com).

**PLEASE TAKE FURTHER NOTICE** that the inclusion of an Available Contract on this Assumption Notice (or a revised Assumption Notice) will not obligate the Chapter 11 Trustee to assume any Available Contract listed thereon or the Successful Bidder(s) to take assignment of such Available Contract and, as set forth above, the Chapter 11 Trustee reserves the right to modify the list of Available Contracts in accordance with the Bid Procedures Order, including to remove executory contracts or unexpired leases from such list.  Only those Available Contracts that are included on a schedule of assumed and assigned executory contracts and unexpired leases attached to the final Purchase Agreement with the Successful Bidder(s) will be assumed and assigned to the Successful Bidder(s) as Assumed Contracts, and the Chapter 11 Trustee's assumption and assignment of a Assumed Contract is subject to approval by the Court and consummation of the Sale(s).  Absent consummation of the Sale(s) and entry of a Sale Order approving the assumption and assignment of a Assumed Contract, such contract will be deemed neither assumed nor assigned, and will in all respects be subject to subsequent assumption or rejection by the Chapter 11 Trustee.

Dated:  December __, 2022                          Respectfully Submitted:

                                                   */s/ Nancy Ribaudo*
                                                   Michael McConnell
                                                   Texas Bar No. 13447300
                                                   Nancy Ribaudo
                                                   Texas Bar No. 24026066
                                                   KELLY HART & HALLMAN LLP
                                                   201 Main Street, Suite 2500
                                                   Fort Worth, Texas 76102
                                                   Telephone: (817) 332-2500
                                                   Facsimile: (817) 878-9777
                                                   Email: nancy.ribaudo@kellyhart.com

                                                   ***Counsel for Dawn Ragan, Chapter 11 Trustee***

**Exhibit 1**

| Contract Counterparty | Contract | Counterparties Address | Cure Amount | Notes |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

# **EXHIBIT 4**

## **Post Auction Notice**

3644804.3

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| **WC BRAKER PORTFOLIO, LLC,** | **CASE NO. 22-10293 (TMD)** |
| **DEBTOR.**[1] | |

**NOTICE OF SUCCESSFUL [AND NEXT-HIGHEST] BIDDER
WITH RESPECT TO THE AUCTION OF THE DEBTORS' ASSETS**

**PLEASE TAKE NOTICE** that, on December [ ● ], 2022, the United States Bankruptcy Court for the Western District of Texas (the "Court") entered an order [Docket No. [ ● ]] (the "Bidding Procedures Order"):[2] (i) approving proposed bidding procedures (the "Bidding Procedures") by which Dawn R. Ragan, the Court-appointed chapter 11 trustee (the "Chapter 11 Trustee") for the above-captioned debtor (the "Debtor"), was to solicit and select the highest or otherwise best offer for the sale of Debtor's assets (the "Property"); (ii) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures"); (iii) approving the procedures governing the Chapter 11 Trustee's selection of a stalking horse bidder (the "Stalking Horse Bidder"); (iv) scheduling (a) a date for an auction if the Chapter 11 Trustee receives one or more timely and acceptable Qualified Bids (the "Auction") and (b) a final hearing (the "Sale Hearing") to approve one or more Sale transactions; (v) approving the form and manner of notices; and (vi) granting related relief.

**PLEASE TAKE FURTHER NOTICE** that, on February 14, 2023, at 2:00 p.m. (prevailing Central Time), pursuant to the Bidding Procedures Order, the Chapter 11 Trustee conducted the Auction with respect to the Property. // **PLEASE TAKE FURTHER NOTICE** that, as of February 7, 2023, at 5:00 p.m. (prevailing Central Time), the deadline for receipt of Bids by the Bid Notice Parties under the provisions of the Bidding Procedures, the Chapter 11 Trustee had not received any Qualified Bids aside from the Stalking Horse Bid, and the Stalking Horse Bidder has therefore been deemed the Successful Bidder in accordance with the Bidding Procedures.]

---

[1] The last four digits of the Debtor's federal employer identification number are 2115.  The Debtor's address is 814 Lavaca Street, Austin, Texas 78701.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that, at the conclusion of the Auction, the Chapter 11 Trustee, in consultation with her professionals, selected [ ● ] as the Successful Bidder(s) [and [ ● ] as the Next Highest Bidder(s)] with respect to the Property.

**PLEASE TAKE FURTHER NOTICE** that the **Sale Hearing** to consider approval of the Sale of Debtor's Property, and assignment, of Assigned Contracts (as defined in the Stalking Horse Agreement, to the Successful Bidder(s) [and Next-Highest Bidder(s)], free and clear of all liens, claims, interests, and encumbrances in accordance with Bankruptcy Code section 363(f), **will be held before the Honorable H. Christopher Mott of the United States Bankruptcy Court for the Western District of Texas, at the Homer J. Thornberry Federal Judicial Building, Courtroom 2, 903 San Jacinto Blvd., Austin, TX  78701 on February 23, 2023, at 10:00 a.m. (prevailing Central Time).** The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in this Case.

**PLEASE TAKE FURTHER NOTICE** that any objections (a) to the manner in which the Auction was conducted, (b) to the identity of the Successful Bidder [or Next-Highest Bidder(s)], other than the Stalking Horse Bidder, and/or (c) based on the ability of the Successful Bidder [or Next-Highest Bidder(s)], other than the Stalking Horse Bidder, to provide adequate assurance of future performance to counterparties to executory contracts and unexpired leases contemplated to be assumed and assigned to the Successful Bidder [or Next-Highest Bidder(s)] must be filed with the Court no later than **February 21, 2023 at 4:00 p.m. (prevailing Central Time);** *provided*, that any contract counterparty that did not receive an Assumption Notice or received a revised Assumption Notice within seven (7) days prior to the Sale Hearing shall have until 5:00 p.m. (prevailing Central Time) on the date that is seven (7) days after the later of the date of service of this notice and service of the Assumption Notice to file a Contract Objection. Attached as Exhibit 1 to a notice previously filed with the Court [Docket No. _____] was a list of the contracts and leases proposed to be assumed and assigned to the Successful Bidder and/or Next-Highest Bidder (the "Available Contracts List").

**PLEASE TAKE FURTHER NOTICE** that, at the Sale Hearing, the Chapter 11 Trustee will seek Court approval of the Successful Bid [and the Next-Highest Bid], and the assumption and assignment of Assumed Contracts to the Successful Bidder [and/or Next-Highest Bidder(s) (as applicable)]. Unless the Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the Sale and there will be no further bidding at the Sale Hearing. In the event that the Successful Bidder cannot or refuses to consummate the Sale because of the breach or failure on the part of the Successful Bidder, the Next-Highest Bidder(s) will be deemed the new Successful Bidder and the Chapter 11 Trustee shall be authorized, but not required, to close with the Next-Highest Bidder(s) on the Next-Highest Bid (which Bid shall be calculated in accordance with the terms of the Bid Procedures) without further order of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that this Notice is subject to the terms and conditions of the Motion, the Bidding Procedures and the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict, and the Chapter 11 Trustee encourages parties in interest to review such documents in their entirety. Parties with questions regarding this Notice should contact the Chapter 11 Trustee's counsel at Kelly Hart & Hallman

LLP, 201 Main Street, Suite 2500, Fort Worth, TX 76102, Attn: Nancy Ribaudo (email: nancy.ribaudo@kellyhart.com).

Dated:  February [ ⬤ ], 2023                     Respectfully Submitted,

/s/ Nancy Ribaudo
Michael McConnell
Texas Bar No. 13447300
Nancy Ribaudo
Texas Bar No. 24026066
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9777
Email: nancy.ribaudo@kellyhart.com

**Counsel for Dawn Ragan, Chapter 11 Trustee**