**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| WC BRAKER PORTFOLIO, LLC, | CASE NO. 22-10293 (TMD) |
| DEBTOR.[1] | |

**DECLARATION OF DAWN M. RAGAN, CHAPTER 11 TRUSTEE,
IN SUPPORT OF SALE MOTION**

I, Dawn M. Ragan, hereby submit this declaration (the "Declaration") pursuant to 28 U.S.C. § 1746, and declare under penalty of perjury that:

1. My name is Dawn M. Ragan. I am over the age of twenty-one and am competent to make this Declaration. I am a Partner with CR3 Partners, LLC. Since May 31, 2022, I have been serving as the chapter 11 trustee ("Trustee") for WC Braker Portfolio, LLC, the debtor in the above-captioned chapter 11 case (the "Debtor").

2. I make this Declaration in support of the *Chapter 11 Trustee's Motion for entry of an Order Authorizing And Approving The Sale Of Debtor's Property Free And Clear Of Liens, Claims, Rights, Encumbrances, And Other Interests, And (B) Related Relief* ("Sale Motion") filed on November 23, 2022 [Dkt. No. 230] pursuant to §§ 363, and 365, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1] The last four digits of the Debtor's federal employer identification number are 2115. The Debtor's address is 814 Lavaca Street, Austin, Texas 78701.

## I. BACKGROUND

### A. The Chapter 11 Case

3. On May 2, 2022, the Debtor filed a voluntary petition under chapter 11 and began operating as a debtor-in-possession. The next day the Court entered an Order to Show Cause why a chapter 11 trustee should not be appointed. On May 23, 2022, after conducting a hearing, the Court directed the appointment of a chapter 11 trustee. On May 26, 2022, I was appointed as the chapter 11 trustee by the Office of the United States Trustee. By order entered on May 31, 2022, my appointment was approved by this Court. Since then, I have been managing the Debtor and its business affairs. No official committee of creditors or equity interest holders have been established in this case.

4. I spent the first nine years of my career with an investment bank in New York, and an additional 20+ years doing turnaround and restructuring consulting. I have previously served as a financial advisor, a chief restructuring officer, an expert witness, and a chapter 11 trustee across a variety of industries, for both public and private companies. I am knowledgeable of all the salient issues with regard to this Debtor.

### B. Debtor and its Business

5. The Debtor is a Texas limited liability company in the commercial real estate business. Debtor is solely owned by its sole member, WC Braker Portfolio B, LLC ("Braker Portfolio B"). Nate Paul is President of the Debtor's sole member. Braker B filed its own chapter 11 petition, and is subject to an independent chapter 11 trustee.

6. The Debtor's assets consist of 14 parcels of commercial properties located in north, central Austin along Braker Lane, Kramer Lane, and Metric Blvd. Specifically, the properties include: 1836 Kramer Lane; 1908 Kramer Lane; 1901 W Braker Lane; 1909 W Braker

Lane; 1817 W Braker Lane; 11109 Metric Blvd; 11101 Metric Blvd; 11009 Metric Blvd; 11500 Metric Blvd; 1910 W Braker Lane; and 2100 Kramer Lane, all in Austin, Texas (the "Property").

7. The Debtor currently has approximately 38 commercial tenants from which the Debtor generates monthly rent income to pay operating expenses, taxes and debt service. Debtor has no employees. At the time of my appointment, accounting and property management was conducted by affiliates of the Debtor and World Class Holding Company, LLC, an affiliate owned by Mr. Paul. Following my appointment, I replaced both the accountants and property manager with non-Debtor affiliates after application and approval by the Court.

C. **Prepetition Debt**

8. The Debtor's primary secured lender is ATX Braker SR, LLC ("ATX") as a result of a prepetition loan agreement (the "Mortgage Loan") between the Debtor and JPMorgan Chase Bank in the original principal amount of $71 million. In April, 2022, ATX acquired the loan from JPMorgan. The loan is secured by the Property and proceeds, including rents, therefrom. As of the Petition Date, the outstanding amount under the Mortgage loan, including interest and unpaid reasonable fees, costs and expenses was $72,870,133.

D. **Debtor's Operations and Cash Needs**

9. Following my appointment, I reached an initial agreement with ATX for the short term use of cash collateral for the limited purpose of securing insurance and paying utilities, and later to pay a license fee required to access the Debtor's accounting systems. Later, I negotiated terms for the continued use of cash collateral pursuant to a number of stipulations through February 28, 2023.

E. **Sale Alternatives**

10. I considered possible alternatives for the Debtor to exit chapter 11, including a restructuring and refinancing of the existing debt. I discussed the possibility of a refinancing

with a Debtor representative. I also considered debt, referred to as "the mezzanine debt", secured only by the equity interest in the Debtor, and a related pending foreclosure action in New York scheduled to proceed at the end of September 2022. After evaluating these factors and expected outcomes, I determined a sale pursuant to section 363 was the best alternative to maximize value of the Debtor's assets.

F. **Stalking Horse**

11. With this groundwork completed, I turned to developing a plan for resolution of the Debtor's case with the goal of efficiently and effectively maximizing value for creditors through a robust marketing process for sale of the Debtor's Property. I believed maximum value would be best achieved through a competitive bidding and sale process. To this end, I filed an application to employ Keen-Summit as marketing agent and broker ("Keen-Summit" or the "Marketing Agent"), which was approved by the Court on October 31, 2022.

12. Following extensive, arms-length and good-faith negotiations I negotiated a stalking horse sale and purchase agreement with ATX (the "Stalking Horse Agreement"), subject to consideration of other potential bidders. A copy of the Stalking Horse Agreement is attached as Exhibit A to the Sale Motion filed on November 23, 2022 [Docket No. 230]. The Stalking Horse Agreement contemplates the acquisition of all of the Debtor's Property (and assumption and assignment of executory contracts and unexpired leases), and allowed for consideration of other bids in accordance with bidding procedures approved by the Court. Under the Stalking Horse Agreement, ATX as the Stalking Horse Bidder was to acquire all of the Debtor's Property, in exchange for a credit bid pursuant to Bankruptcy Code § 363(k), which was estimated to total $75,461,418 (the "**Credit Bid**") as of the targeted February 28, 2023 closing date, inclusive of $72,870,133 owed as of the Petition Date for principal, interest and reasonable expenses, plus estimated post-petition interest and fees.

13. Consistent with my belief that a full and robust marketing and bidding process with the benefits of the section 363 sale process available to interested bidders would provide the best opportunity to achieve the highest and best value for the Property, I then proposed a market process and procedures to promote participation and active bidding within the timeline set forth in the Stalking Horse Agreement.

14. After conducting a hearing, the Court approved the Bid Procedures on December 21, 2022, and set dates and deadlines related thereto (the "Bid Procedures Order").

15. The Bidding Procedures, among other things, provided procedures for notice, accessing due diligence, submitting bids, the manner in which bids become "qualified," the conduct of an auction, associated deadlines, and also included procedures for the fair and orderly assumption and assignment of executory contracts and unexpired leases in connection with the sale, including notice of assumption and assignment, proposed cure amounts, and opportunity to object. The Bid Procedures set February 7, 2023, as the deadline for receiving bids other than from the Stalking Horse Bidder and provided for an auction on February 14, 2023, in the event qualified bids were received.

## II. MARKETING PROCESS

### A. Notice and Marketing Efforts

16. Immediately after entry of the Bid Procedures Order, I, together with my counsel and Marketing Agent, commenced marketing of the Property pursuant to the approved procedures.

17. As certified by my counsel, *see* Docket No. 252, notice of the auction and sale hearing was sent to all creditors and other required parties on December 22, 2022. Notice of the proposed assumption and assignment of executory contracts and unexpired leases ("Available Contracts") was also sent out at the same time to all contract counterparties (*see* Docket No.

253). A revised assumption and assignment notice was mailed out on February 3, 2023, in accordance with the Bid Procedures Order (*see* Docket No. 281).

18. In accordance with the Bid Procedures Order, notice of the auction and sale hearing was published in the *Wall Street Journal.* On December 29, 2022. Notices were also published and circulated through several real estate industry publications, a press release, and e-commerce industry websites by Keen-Summit.

19. A virtual data room was set up and remained open for potential bidders signing non-disclosure agreements (the "NDAs") beginning December 6, 2022. I, along with the Marketing Agent, fielded many inquiries from potential bidders and conducted numerous on-site visits at the Property. A total of 263 interested parties visited the data room after executing NDAs. In addition, 15 on-site visits were conducted either by me or Keen-Summit with 13 interested parties.

B. **Bids Received**

20. As a result of these marketing efforts, I received a total of eight (8) bids from potential bidders consistent with the Bid Procedures, including the Stalking Horse Bid and bid from Braker Metric Business Parks, LLC ("Metric Business Parks").

21. Together with my advisors, I determined each of the eight (8) bids to be Qualified Bids, based on financing commitments and other evidence of ability to fund a sale and close, and receipt of good faith deposits in accordance with the Bid Procedures Order. Two of the Qualified Bids were for the retail portion of the Property only; while the remaining Qualified Bids were for all of the Property. No bids received were deemed not to be Qualified Bids. I notified each Potential Bidder that they were Qualified on February 9, 2023.

### C. The Auction

22. In accordance with the Bid Procedures Order, I conducted the auction on February 14, 2023, at the offices of my counsel, Kelly Hart & Hallman, in Fort Worth, Texas. The auction was conducted live via Zoom and in person. A court reporter was also present. Based on the Qualified Bids prior to the auction, I determined the Starting Bid to be $80,000,000. Six of the Qualified Bidders participated in the auction, while the two Qualified Bidders for the retail only portion of the Property did not participate after indicating that they would not increase their bid price during the auction. At the request of several bidders, and to promote a fair and robust bidding process, all bids at the auction were made anonymously by bidder number assigned to each bidder.

23. At the conclusion of the auction, and after more than 85 bids, I selected Metric Business Parks as having made the highest and best bid for the Property with a purchase price of $102,250,000, and its Purchase and Sale Agreement as the Successful Bid. I selected ATX as the "Next-Highest" or "Back-Up Bidder" with a purchase price of $102,000,000 and its Purchase and Sale Agreement as the Next-Highest or Back Up Bid. Based on financial information supplied to me by both Metric Business Parks and ATX prior to the auction, I am satisfied that both have sufficient financial means to close the sale.

24. On February 16, 2023, notice of the successful bidder was served by my counsel to all creditors and other required parties in accordance with the Bid Procedures Order (*see* Docket No. 293).

### III. THE PURCHASE AGREEMENT

25. Following the auction, both Metric Business Parks, as the Successful Bidder, and ATX, as the Back-Up Bidder, executed their respective Purchase and Sale Agreements, copies of

which are designated as Exhibits 1 and 3. A redline showing changes from the original Stalking Horse Agreement are designated as Exhibits 2 and 4, respectively.

26. Both Purchase Agreements contemplate the sale of the Property to the respective "Buyer" free and clear of all liens, claims, and encumbrances, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, except for "Assumed Obligations" and "Permitted Liens" as specifically defined and set forth therein. The Purchase Agreements also contemplate the assumption and assignment of executory contracts and unexpired leases (the "Assumed Contracts") designated by the Buyer, pursuant to Bankruptcy Code section 365.

27. The Purchase Agreement with Metric Business Parks, reflects the purchase price of $102,250,000.00 as bid at auction, and includes payment of "Cure Amounts" by the Buyer, and a "Targeted Closing Date" as soon as possible after entry of the Sale Order. The Purchase Agreement includes an amendment that provides for a reconciliation post-Closing, rather than at Closing, for taxes, rents and other pro-rations, along with an estimated pro-ration amount for Buyer.

28. In the event Metric Business Parks is unable to consummate the sale on the Closing Date, the Bidding Procedures provide that I may, upon written notice, designate the Next-Highest Bidder as the Successful Bidder for the Property, subject to the terms of the Next-Highest Bid, without need for further order of the Court or other notice to interested parties.

29. With the goal of quickly resolving Debtor's bankruptcy case following a sale, I filed a *Joint Plan of Liquidation* ("Plan") and supporting *Disclosure Statement* on January 19, 2023, together with the chapter 11 trustee for Braker Portfolio B. The proposed Plan contemplates that the proceeds from the sale of the Property, together with available cash from the Debtor's estate will be used to satisfy payments of all allowed claims of the Debtor, with any

remaining amounts paid to the trustee for the Braker Portfolio B case, as the sole equity interest holder of the Debtor.

30. On January 30, 2023, the Court approved the Disclosure Statement. The confirmation hearing is currently scheduled for March 9, 2023.

**IV. BANKRUPTCY CODE SECTION 363 REQUIREMENTS SATISFIED**

31. I believe a fair and reasonable opportunity to object to, and be heard with respect to, the Sale Motion and the proposed sale has been given to all persons entitled to notice pursuant to applicable law and the Bid Procedures Order. With the exception of two objections filed by two tenants, Airship Syndicate Entertainment, Inc. and Smith & Nephew, Inc., regarding cure claim amounts, which have been resolved, no timely objections to the Sale Motion or auction have been filed.

32. My professionals and I have complied in all respects with the Bid Procedures Order and the Bidding Procedures in good faith. I believe the marketing process was fair, robust, open and complete. It was conducted with the intent of generating a fair market value buyer, and in my judgment, produced a buyer for fair market value of the Property.

33. The sale process, auction and the Bidding Procedures were conducted pursuant to the Bid Procedures Order and the Bidding Procedures, were non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any person or entity to make an offer to purchase the Property.

34. In my business judgment, the auction and sale process has resulted in the highest and best value for the Property for the Debtor and its estate, and there was no other transaction available or presented that would have yielded as favorable an economic result for the Property.

35. The Purchase Agreements were negotiated, proposed, and entered into in good faith, without collusion, and from arm's-length bargaining positions.

36. In my business judgment, the consideration to be paid by Metric Business Parks, as the Successful Bidder, constitutes the highest or otherwise best bid for the Property, is fair and reasonable consideration, and represents fair value for the assets. No other person or entity has offered to purchase the Property that was a Qualified Bidder consistent with the Bid Procedures Order and for an amount that would provide greater value to the Debtor's estate than Metric Business Parks.

37. In my business judgment, the consideration to be paid by ATX as Back-Up Bidder under its Purchase Agreement, is the next highest and best bid for the Property and provides for fair and reasonable consideration for such Property.

38. To the best of my knowledge, neither Metric Business Parks, nor any of its affiliates, is an affiliate of the Debtor, Nate Paul, or any their affiliates.

39. I believe the Buyer has proceeded in good faith in all respects, has complied with the provisions of the Bid Procedures Order and all consideration to be provided by Buyer in connection with the sale is set forth in the Purchase Agreement.

40. I believe that the sale free and clear of all liens, claims and encumbrances is appropriate under section 363(f)(1)-(5) of the Bankruptcy Code. The Buyer would not have entered into the Purchase Agreement and would not consummate the sale if the sale of the Property was not free and clear of all encumbrances and other interests, and this Court expressly orders so. Furthermore, I believe, a sale of the Property, other than one free and clear of all liens, claims and encumbrances, would yield substantially less value for the Debtor's estate.

41. I believe that the assumption and assignment of the Available Contracts designated by the Buyer is necessary to sell the Property to Buyer and is an integral part of the Property being purchased by the Buyer, and, further avoids rejection of such Assumed Contracts thereby limiting potential losses to non-Debtor counterparties and increased claims against the estate.

42. In my business judgment, the proposed sale and assumption and assignment of designated Available Contracts to Metric Business Parks as the Successful Bidder and Buyer, and alternatively to ATX as the Next-Highest Bidder and alternative Buyer, is reasonable, and best serves to maximize value of the Debtor's Property for the benefit of the Debtor, the estate, all creditors and other stakeholders.

43. In my business judgment, the Buyer is able to consummate closing, and provide adequate assurance of performance to tenants. Braker Metric is an affiliate of the MIG Real Estate Fund I, LLC (the "Fund"), which owns over $3.5 billion in commercial and multifamily real estate investments throughout the United States, and has provided me with sufficient information regarding their financial wherewithal. The Fund currently owns the neighboring buildings in Austin known as Braker 6, 7 and 11 located at 11212 Metric Blvd, and has extensive experience in managing and operating commercial real estate properties.

44. The parties intend to close the sale as soon as reasonably practicable pursuant to the terms of the Purchase Agreement. A prompt sale of the Property (including the assumption and assignment of Assumed Contracts) is desired to preserve and maximize value of the Property for the estate. Therefore, time is of the essence in consummating the sale.

45. I request authority to pay ATX from the sale proceeds following Closing with Metric Business Parks, any and all amounts due to ATX as prepetition lender to the Debtor

pursuant to the prepetition Mortgage Loan. Specifically, I request authority to pay $75,533,240 to ATX at Closing, which amount is comprised of $72,870,133 due under the Mortgage Loan as of the Petition Date, plus $2,563,107 in accrued and unpaid post-petition interest and $100,000 in accrued and unpaid servicer fees with any additional amounts due, if any, to be paid pursuant to a confirmed Plan.

46. For these reasons, I request approval of the sale of the Property to Metric Business Parks as the Successful Bidder pursuant to its Purchase Agreement; and in the event Metric Business Parks is unable to close, then to ATX as the Back-Up Bidder pursuant to its Purchase Agreement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dallas, Texas, this 22nd day of February 2023

_____
Dawn M. Ragan, Chapter 11 Trustee for
W.C. Braker Portfolio, LLC, Debtor

3689395.8

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2023, a true and correct copy of the foregoing document was electronically filed with the Court and served through the CM-ECF system to all counsel of record registered to receive a Notice of Electronic Filing for this case as indicated below:

VIA ECF
DEBTOR'S COUNSEL
Todd Brice Headden theadden@haywardfirm.com
Ron Satija rjatija@haywardfirm.com

ATX BRAKER SR, LLC'S COUNSEL
Elizabeth Boydston lboydston@polsinelli.com
Keith R. Martorana KMartorana@gibsondunn.com
Matthew G. Bouslog MBouslog@gibsondunn.com

UNITED STATES TRUSTEE
John C. Roy casey.roy@usdoj.gov

ADDITIONAL ECF PARTIES
Stephen J. Humeniuk, Counsel for Airship Syndicate Entertainment, Inc.
stephen.humeniuk@lockelord.com
Stephen Lemmon, Counsel for Alliance Transportation Group, Inc. lemon@slollp.com,
Seth E. Meisel, Counsel for Caffrey & Company, LLC smeisel@dbcllp.com,
Kimberly A. Walsh, Counsel for Texas Comptroller of Public, Accounts, Revenue Accounting Division bk-kwalsh@oag.texas.gov
Richard Grant, Counsel for Seth Kretzer rgrant@cm.law
Lynnette Warman, Counsel for Seth Kretzer lwarman@cm.law
Jason A. Starks, Counsel for Travis County, bkecf@traviscountytx.gov
Ivo Keller, Counsel for Owlchemistry Labs, Inc. ivo@ssllawfirm.com
John Patrick Lowe, pat.lowe.law@gmail.com
Brian Talbot Cumings, bcumings@gdhm.com
Michael Deitch, Counsel for Endeavor Real Estate Group, Ltd. mike@deitchlaw.com

                                                  */s/ Nancy Ribaudo*
                                                  Nancy Ribaudo